UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PEARLINE O. LIBURD,

                              Plaintiff,

            -against-

BRONX LEBANON HOSPITAL CENTER,
ANDREAS EVDOKAS individually and as
Administrative Director, RAYMOND ESTEVES
individually and as Assistant Vice President of
Clinical Services,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**ORIGINAL**

Docket No.

07 CV 11316 (HB)


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' RULE 12(b) (6) MOTION TO DISMISS


RESPECTFULLY SUBMITTED,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants
BRONX LEBANON HOSPITAL
CENTER, ANDREAS EVDOKAS, &
RAYMOND ESTEVES
150 East 42nd Street
New York, New York 10017- 5639
(212) 490-3000
File No. 08981.00035


COUNSEL:     RICKI E. ROER
             NANCY V. WRIGHT

3124538.1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

STANDARD OF REVIEW ............................................................................. 2

ARGUMENT ............................................................................................... 4

POINT I

PLAINTIFF'S TITLE VII AND ADEA CLAIMS ARISING BEFORE
DECEMBER 21, 2005 ARE TIME BARRED .............................................. 4

POINT II

PLAINTIFF'S DISCRIMINATION CLAIMS FAIL BECAUSE HER
CONCLUSORY ALLEGATIONS ARE INSUFFICIENT TO STATE A
LEGALLY COGNIZABLE CLAIM ............................................................ 6

A.  Plaintiff's Wrongful Termination Claim Is Precluded By Her Pleading
Admissions And Pleading Deficiencies ................................................ 6

B.  Plaintiff's Non-Termination Claims Are Insufficient As a Matter of
Law ...................................................................................................... 9

POINT III

PLAINTIFF CANNOT PLEAD A VIABLE CONSTITUTIONAL OR § 1983
CLAIM BECAUSE NONE OF THE DEFENDANTS ARE STATE
ACTORS ............................................................................................... 14

CONCLUSION ........................................................................................... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

Allen v. St. Cabrini Nursing Home, Inc.,
  198 F. Supp. 2d 442 (S.D.N.Y. 2002)........................................................8

Archer v. Economic Opportunity Commission of Nassau County, Inc.,
  30 F. Supp. 2d 600 (E.D.N.Y. 1998) ......................................................15

Blum v. Yaretsky,
  457 U.S. 991, 73 L. Ed. 2d 534, 102 S. Ct. 2777 (1982)............................15

Briones v. Runyon,
  101 F.3d 287 (2d Cir. 1996).....................................................................5

Brooks v. Hevesi,
  1998 U.S. Dist. LEXIS 730, 1998 WL. 32712 (S.D.N.Y. Jan. 29, 1998) ..................6

Brightman v. Prison Health Service, Inc.,
  2007 U.S. Dist. LEXIS 23724 (E.D.N.Y. Mar. 30, 2007) ................................13

Bryant v. Begin Manage Program,
  281 F. Supp. 2d 561 (E.D.N.Y. 2003) ....................................................13

Byrne v. CNA Insurance Cos.,
  2001 U.S. Dist. LEXIS 12975 (N.D.N.Y., Aug. 29, 2001) ..........................12

Carey v. Reed Elsevier, Inc,
  998 U.S. Dist. LEXIS 6834 (S.D.N.Y. 1998)..............................................6

Carr v. WestLB,
  71 F. Supp. 2d 302 (S.D.N.Y. 2001)..........................................................9

Chan v. NYU Downtown Hospital,
  2005 U.S. Dist. LEXIS 40243 (S.D.N.Y. Feb. 14, 2006)..............................6

Cicotto v. LCOR,
  2001 U.S. Dist. LEXIS 1125 (S.D.N.Y. Jan. 31, 2001)....................................9

Cohen v. Koenig,
  25 F.3d 1168 (2d Cir. 1994)......................................................................2

Cohen v. Litt,
  906 F. Supp. 957 (S.D.N.Y. 1995) ...........................................................2

ii

Contes v. City of New York,
  1999 U.S. Dist. LEXIS 10634 (S.D.N.Y. July 13, 1999) ..............................................5

Cortec Industries v. Sum Holding, L.P.,
  949 F.2d 42 (2d Cir. 1991)...........................................................................................2

Elmennayer v. ABF Freight System,
  318 F.3d 130 (2d Cir. 2003)..........................................................................................5

Faragher v. City of Boca Raton,
  524 U.S. 775, 118 S. Ct. 2275 (1998).........................................................................13

Figueroa v. The City of New York, Department of Sanitation,
  198 F. Supp. 2d 555 (S.D.N.Y. 2002)..........................................................................5

Flagg Brothers Inc. v. Brooks,
  436 U.S. 149, 56 L. Ed. 2d 185, 98 S. Ct. 1729 (1978)..............................................14

Flynn v. Goldman Sachs & Co.,
  836 F. Supp. 152 (S.D.N.Y. 1993) ..............................................................................11

George v. New York City Health and Hospital Corp.,
  2003 U.S. Dist. LEXIS 1927 (S.D.N.Y. Feb. 11, 2003)
  reconsideration den'd, 2003 U.S. Dist. LEXIS 9817
  (S.D.N.Y. June 11, 2003)...............................................................................................3

Goodman v. New York Off-Track Betting Corporation,
  1999 U.S. Dist. LEXIS 6291 (S.D.N.Y. Apr. 30, 1999)...................................12

Gregory v. Daly,
  243 F.3d 687 (2d Cir. 2001).........................................................................................12

Gueye v. Air Afrique,
  917 F. Supp. 1024 (S.D.N.Y. 1996)..............................................................................5

Haghpassand v. Reuters Consulting Group,
  2004 U.S. Dist. LEXIS 4799 (S.D.N.Y. Mar. 24, 2004), aff'd 120 Fed. Appx.
  859 (2d Cir. Jan. 28, 2005) ...........................................................................................2

Harris v. Forklift System, Inc.,
  510 U.S. 17, 114 S. Ct. 367 (1993)..............................................................................13

Hauptman v. Concord Fabrics, Inc.,
  1999 WL. 527970 (S.D.N.Y., July 22, 1999), aff'd, 210 F.3d 354 (2d Cir.
  2000) .............................................................................................................................12

iii

Jane Doe v. Harrison,
    NYLJ (April 1, 2003) ................................................................. 14

Jenkins v. NYDOCS,
    2002 U.S. Dist. LEXIS 1997 (S.D.N.Y. Feb. 8, 2002) .................................... 10

Johnson v. The Reuben H. Donnelly Corp.,
    1997 U.S. Dist. LEXIS 13972 (S.D.N.Y. Sept. 16, 1997).............................. 10

Katz v. Beth Israel Medical Ctr.,
    2001 U.S. Dist. LEXIS 29 (S.D.N.Y. 2001)).......................................... 10-11

Khan v. Abercrombie & Fitch Inc.,
    2003 U.S. Dist. LEXIS 16329 (S.D.N.Y. Sept. 17, 2003)............................... 11

Kia P. v. McIntyre,
    235 F.3d 749 (2d Cir. 2000)........................................................... 14

Kotcher v. Rosa and Sullivan Appliance Center, Inc.,
    957 F.2d 59 (2d Cir. 1992)............................................................ 13

Ledbetter v. Goodyear Tire & Rubber Co.,
    127 S. Ct. 2162 (U.S. 2007)............................................................ 5

Lediju v. New York City Department of Sanitation,
    173 F.R.D. 105 (S.D.N.Y. 1997) ....................................................... 10

Legnani v. Alitalia Linee Aeree Italinae,
    1997 U.S. Dist. LEXIS 16151 (S.D.N.Y. Oct. 14, 1997)............................... 13

Lugar v. Edmondson Oil Co.,
    457 U.S. 922, 73 L. Ed. 2d 484, 102 S. Ct. 2744...................................... 14

Luxenberg v. Guardian Life Insurance Co.,
    2004 U.S. Dist. LEXIS 3121 (S.D.N.Y. Mar. 2, 2004) ................................ 13

Marshall v. National Associate of Letter Carriers,
    2003 U.S. Dist. LEXIS 19918 (S.D.N.Y. Nov. 7, 2003)................................ 4

Mathurin v. Consilvio,
    2002 U.S. Dist. LEXIS 26441 (S.D.N.Y. Nov. 25, 2002).............................. 9

Mei-Lin Chen v. N.Y. City Transit Authority,
    2003 U.S. Dist. LEXIS 16016 (E.D.N.Y. Sept. 15, 2003)............................... 5

Meritor Sav. Bank, FSB v. Vinson,
    477 U.S. 57 (1986)................................................................................11

Morrissey v. Symbol Technologies, Inc.,
    910 F. Supp. 117 (E.D.N.Y. 1996) ..................................................9

National Railroad Passenger Corp. v. Morgan,
    536 U.S. 101 (2002)............................................................................5

Ngwu v. Salvation Army,
    1998 U.S. Dist. LEXIS 20367, 1999 WL. 2873 (S.D.N.Y. Jan. 4, 1999) ....................6

Noyer v. Viacom, Inc.,
    1998 WL. 774606 (S.D.N.Y. 1998),..................................................9

Okunieff v. Rosenberg,
    996 F. Supp. 343 (S.D.N.Y. 1998) ...................................................15

Ortega v. New York City Off-Track Betting Corp.,
    1998 U.S. Dist. LEXIS 9727 (S.D.N.Y. 1998)................................9

Pagan v. New York State Division of Parole,
    2001 U.S. Dist. LEXIS 2629 (S.D.N.Y. Mar. 13, 2001) ............................ 10-11

Prince v. Cablevision Systems Corporation,
    2005 U.S. Dist. LEXIS 8147 (S.D.N.Y. May 6, 2005)........................................9

Rendell-Baker v. Kohn,
    457 U.S. 830, 73 L. Ed. 2d 418, 102 S. Ct. 2764 (1982)..............................................14

Rowe Entertainment, Inc. v. William Morris Agency, Inc.,
    2005 U.S. Dist. LEXIS 75 (S.D.N.Y. Jan. 4, 2005).......................................8

Santos v. Costco Wholesale, Inc.,
    271 F. Supp. 2d 565 (S.D.N.Y. 2003)..................................................9

Seres v. Liberty Chevrolet, Inc.,
    1999 U.S. Dist. LEXIS 128, 1999 WL. 11779 (S.D.N.Y. Jan. 12, 1999) ....................6

Shumway v. UPS,
    118 F.3d 60 (2d Cir. 1997)..................................................8

Speigler v. Israel Discount Bank of N.Y.
    2003 U.S. Dist. LEXIS 10854 (S.D.N.Y., June 24, 2003)..................................... 11-12

3136407.1

Straker v. Metropolitan Transit Auth.,
    333F. Supp. 2d 91 (E.D.N.Y. 2005) ............................................................3

Stern v. Columbia University,
    131 F.3d 305 (2d Cir. 1997)..................................................................10

Stork v. Suffolk County Department of Social Services,
    62 F. Supp. 2d 927 (E.D.N.Y. 1999) ......................................................15

Swierkiewicz v. Sorema, N.A.,
    534 U.S. 506, 122 S. Ct. 992 (2002)...................................................... 2-3

Tewksbury v. Ottaway Newspapers, Inc.,
    192 F.3d 322 (2d Cir. 1999)...................................................................5

Thomas-Charlton v. The Brookdale University Hospital and Medical Center,
    2004 U.S. Dist. LEXIS 29544 (E.D.N.Y. Nov. 12, 2004)....................... 2-3

Thomas v. Beth Israel Hospital, Inc.,
    710 F. Supp. 935 (S.D.N.Y. 1985) ..................................................... 14-15

Thomas v. N.Y. City Health & Hospitals Corp.,
    2004 U.S. Dist. LEXIS 17694 (S.D.N.Y. Sept. 2, 2004)...........................11

Tomka v. Seiler Corp.,
    66 F.3d 1295 (2d Cir. 1995)...................................................................6

Valle v. Bally Total Fitness,
    2003 U.S. Dist. LEXIS 17093 (S.D.N.Y. Sept. 30, 2003)....................... 3-4

Walter v. Westdeutscher Rundfunk
    2004 WL. 1052776 (S.D.N.Y. 2004).........................................................8

Whyte v. Contemporary Guidance Services,
    2004 U.S. Dist. LEXIS 12447 (S.D.N.Y. June 30, 2004)...........................4

Wynder v. McMahon,
    360 F.3d 73 (2d. Cir. 2004)........................................................... 2-3, 10

York v. Association of the Bar of the City of New York,
    286 F.3d 122 (2d Cir. 2002).....................................................................3

Young, et al. v. Halle Housing Associates, et al.,
    2001 U.S. Dist. LEXIS 5820 (S.D.N.Y. 2001)............................................................15

Zerilli-Edelglass v. N.Y. City Transit Authority,
    333 F.3d 74 (2d Cir. 2003)..........................................................................................5

vii

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of the defendants' **BRONX LEBANON HOSPITAL CENTER, ANDREAS EVDOKAS, & RAYMOND ESTEVES'** (collectively, the "Hospital") Rule 12(b)(6) motion to dismiss plaintiff's complaint in its entirety.

Plaintiff attempts to claim that the Hospital's decision to fire her and three other employees for unauthorized long distance telephone calls constitutes employment discrimination.    Plaintiff is wrong.    Dismissal is warranted at this juncture because plaintiff's complaint fails to meet even the most minimal pleading requirements of a discrimination claim, and her allegations are directly rebutted by her pleading admissions and the documentary evidence incorporated by reference into her complaint. (Annexed hereto as Exhibit "A" is a copy of plaintiff's complaint and as Exhibit "B" are the documents incorporated therein, plaintiff's Equal Employment Opportunity Commission Charge, the Hospital's position statement in response thereto, and the EEOC's determination finding no statutory violations).

The EEOC has already dismissed this claim on its merits.  The plaintiff, along with three other employees, were terminated for clear misconduct; i.e., plaintiff incurred over $3,000.00 in unauthorized long distance charges in direct violation of the Hospital's telephone policy.    It is respectfully submitted that plaintiff's seven causes of action alleging: race and color discrimination under Title VII (Count I); age discrimination under the Age Discrimination in Employment Act ("ADEA") (Count II); hostile work environment under Title VII (Count III); violation of 42 U.S.C. § 1983 and plaintiff's constitutional and statutory rights (Count IV); sex discrimination under Title VII (Count

1

V); color and race discrimination under § 1981 (Count VI); and, racially hostile work environment under § 1981 (Count VII) are deficient and should be dismissed at this juncture because:

1.  plaintiff's Title VII and ADEA discrimination claims arising before December 21, 2005 are time barred;
2.  plaintiff's wrongful termination claim is precluded by her pleading admissions and pleading deficiencies;
3.  plaintiff's non-termination claims are insufficient as a matter of law; and,
4.  plaintiff cannot plead a viable constitutional or § 1983 claim because none of the defendants are state actors.

## STANDARD OF REVIEW

In judging the legal sufficiency of a complaint against a Rule 12(b)(6) challenge, although the Court must accept all bona fide factual allegations in the complaint as true, it need not accept the complaint's legal conclusions and unwarranted factual contentions. Cohen v. Litt, 906 F. Supp. 957, 961 (S.D.N.Y. 1995); Cohen v. Koenig, 25 F.3d 1168, 1171-72 (2d Cir. 1994); Haghpassand v. Reuters Consulting Group, 2004 U.S. Dist. LEXIS 4799, at *1-2 (S.D.N.Y. Mar. 24, 2004), aff'd 120 Fed. Appx. 859 (2d Cir. Jan. 28, 2005); Cortec Industries v. Sum Holding, L.P., 949 F.2d 42, 48 (2d Cir. 1991) (complaint should be dismissed pre-answer where insufficient facts are alleged to support a claim).

The New York Courts have made it clear that "consistent with Second Circuit precedent in Swierkiewicz, a plaintiff alleging employment discrimination must offer some facts in the complaint to support [her] claim." Thomas-Charlton v. The Brookdale University Hospital and Medical Center, 2004 U.S. Dist. LEXIS 29544 (E.D.N.Y. Nov. 12, 2004); Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 122 S. Ct. 992 (2002); Wynder

v. McMahon, 360 F.3d 73, 80 (2d. Cir. 2004); York v. Ass'n of the Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002) (in Title VII case, "[t]o survive a motion to dismiss...the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action"). As the Thomas-Charlton Court held, "there is a distinction to be drawn between 'fair notice of what the plaintiff's claim is' and 'the grounds upon which it rests'; conclusory allegations cannot satisfy the latter." Thomas-Charlton, 2004 U.S. Dist. LEXIS 29544, at * 6 (citing Straker v. Metropolitan Transit Auth., 333 F. Supp. 2d 91 (E.D.N.Y. 2005) (quoting Swierkiewicz, 534 U.S. at 512)).

Here, plaintiff has failed to specifically identify how any similarly situated male, younger, or non-black employees were treated differently than she was. This failure is fatal to her claim. Plaintiff has failed to set forth any factual allegations showing that any actions taken by the Hospital were because of her race, color, age, or sex. Plaintiff's utterly conclusory allegation that her termination (for incurring over $3000 in unauthorized long distance calls) was discriminatory simply because her race, color, age, or sex is different from her supervisors' is clearly insufficient under the standard articulated by the Supreme Court in Swierkiewicz. See, e.g., George v. New York City Health and Hosp. Corp., 2003 U.S. Dist. LEXIS 1927, at *6 (S.D.N.Y. Feb. 11, 2003) reconsideration den'd, 2003 U.S. Dist. LEXIS 9817 (S.D.N.Y. June 11, 2003) (pre-answer motion to dismiss granted - mere fact that plaintiff and supervisor were of different race, color, and national origin does not in itself indicate conduct motivated by discrimination); Valle v. Bally Total Fitness, 2003 U.S. Dist. LEXIS 17093 (S.D.N.Y. Sept. 30, 2003) (pre-answer dismissal of complaint which contained no factual allegations indicating how employee's race, gender, age or national origin played role in

3

decision to terminate); <u>Marshall v. National Assoc. of Letter Carriers</u>, 2003 U.S. Dist. LEXIS 19918 (S.D.N.Y. Nov. 7, 2003) (employee failed to state race discrimination claim even though he described defendant's actions, because he failed to draw a connection between his disciplinary suspension and his race); <u>Whyte v. Contemporary Guidance Services</u>, 2004 U.S. Dist. LEXIS 12447 (S.D.N.Y. June 30, 2004) (pre-answer dismissal of race, age and national origin discrimination claims where plaintiff merely alleged that white, younger employees received raises and promotions).

## ARGUMENT

### POINT I

### PLAINTIFF'S TITLE VII & ADEA CLAIMS ARISING BEFORE DECEMBER 21, 2005 ARE TIME BARRED

It is respectfully submitted that plaintiff's October 16, 2006 EEOC filing date renders any claims premised on acts which occurred prior to December 21, 2005 untimely under Title VII and the ADEA.  The only pled allegations that are not time-barred are plaintiff's claim that her May 2006 termination was improper, and her allegations regarding: the alleged elimination of acupuncture and free breakfast services for patients in April 2006; Mr. Esteves' alleged refusal to say hello to plaintiff in February 2006 and refusal to acknowledge her at a March 2006 meeting; Mr. Esteves' alleged increased monitoring of her whereabouts between March through May 2006; the alleged unrealistic timeframe given to close inactive files in April 2006; and, plaintiff's hearsay claim that defendant Esteves referred to her as a  "black ass" to another employee in April 2006.

Dismissal of all of plaintiff's pre December 21, 2005 claims (her allegations of:

3124538.1

harassment to fabricate a justification for computers purchased with grant money in February 2005; harsh, threatening and condescending tones directed at her during meetings throughout 2005; monitoring of her whereabouts, "abusive tirade", and threats to transfer her in September 2005; and, the reference to her as a "black ass" and being stripped of hiring and firing responsibilities in October 2005) is required at this juncture as time-barred.  See, Exhibit "A", plaintiff's complaint, ¶¶ 27, 33-40, 42-43; Tewksbury v. Ottaway Newspapers, Inc., 192 F.3d 322, 328-29 (2d Cir. 1999); 42 U.S.C. § 2000e-5(e) (1) (2000); Gueye v. Air Afrique, 917 F.Supp. 1024 (S.D.N.Y. 1996) ("complainant seeking relief under Title VII . . . must file a complaint with the EEOC within 300 days of the alleged discriminatory act"); Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74 (2d Cir. 2003) (same); see also National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002); Elmennayer v. ABF Freight Sys., 318 F.3d 130, 133-134 (2d Cir. 2003). Failure to timely file a charge with the EEOC bars any subsequent civil action. Ledbetter v. Goodyear Tire & Rubber Co., 127 S.Ct. 2162 (U.S. 2007); Mei-Lin Chen v. N.Y. City Transit Auth., 2003 U.S. Dist. LEXIS 16016 (E.D.N.Y. Sept. 15, 2003) (dismissing Title VII claims for failure to timely file EEOC Charge within 300 days); Contes v. City of New York, 1999 U.S. Dist. LEXIS 10634 (S.D.N.Y. July 13, 1999); Figueroa v. The City of New York, Dep't of Sanitation, 198 F. Supp. 2d 555, 562 (S.D.N.Y. 2002), quoting Briones v. Runyon, 101 F. 3d 287, 290 (2d Cir. 1996).

For the foregoing reasons, it is respectfully requested that the Court dismiss as time barred all of plaintiff's pre-December 21, 2005 Title VII and ADEA claims identified in Counts I, II, III, and V of her complaint as outlined in paragraphs 20, 27, 33-40, 42-43 of her complaint.

## POINT II

### PLAINTIFF'S DISCRIMINATION CLAIMS FAIL
### BECAUSE HER CONCLUSORY ALLEGATIONS ARE
### INSUFFICIENT TO STATE A LEGALLY COGNIZABLE CLAIM

Plaintiff has failed to identify any qualifying discriminatory act under either Title VII, the ADEA, or § 1981, and her first, second, third, fifth, sixth and seventh causes of action should be dismissed now.[1]   Plaintiff's wrongful termination claim must be dismissed because the plaintiff has failed to identify any similarly situated employee who was treated differently than her.  Plaintiff's remaining claims must be dismissed because they are clearly deficient as a matter of law; she has failed to identify how she was discriminated against because of her race, color, age, or her gender.   It is respectfully submitted that plaintiff's vague and conclusory allegations are simply insufficient as a matter of law.  Chan v. NYU Downtown Hospital, 2005 U.S. Dist. LEXIS 40243 (S.D.N.Y. Feb. 14, 2006) (conclusory allegations of disparate treatment are insufficient to state a claim); Carey v. Reed Elsevier, Inc, 1998 U.S. Dist. LEXIS 6834, at 14 (S.D.N.Y. 1998) (isolated, hearsay comments are insufficient to prove discrimination).

### A.    Plaintiff's Wrongful Termination Claim Is Precluded By Her Pleading Admissions And Pleading Deficiencies

Plaintiff's wrongful discharge allegations are insufficient because she has failed to identify any similarly situated employee who committed the same infraction who was

---

[1] Plaintiff's Title VII and ADEA claims against the individual defendants, Esteves and Evdokas should also be dismissed because individual defendants are not proper defendants under Title VII and the ADEA. Tomka v. The Seiler Corporation, et al., 66 F.3d 1295, 1313 (2d Cir. 1995); Ngwu v. Salvation Army, 1998 U.S. Dist. LEXIS 20367, 1999 WL 2873, at *2 (S.D.N.Y. Jan. 4, 1999) (dismissing Title VII claims against individual director and supervisor in their official capacities); Seres v. Liberty Chevrolet, Inc., 1999 U.S. Dist. LEXIS 128, 1999 WL 11779, at *1 (S.D.N.Y. Jan. 12, 1999) (same); Brooks v. Hevesi, 1998 U.S. Dist. LEXIS 730, 1998 WL 32712, *1 (S.D.N.Y. Jan. 29, 1998) (same).

6

treated any differently than her.   Plaintiff has conceded that she was hired, promoted and given salary increases while in the protected age, race and sex categories. Further, plaintiff has not disputed: the unauthorized telephone usage[2] from her telephone extension nor the cost to the Hospital; that three other employees were terminated for the same infraction, two of whom were male, and two in their thirties; that the Director of Labor Relations, Jasen Nhambiu, who investigated and approved the decision to terminate plaintiff's employment was the same race as she; that plaintiff's supervisors, the two named defendants herein, are both over forty; and, that following her termination, plaintiff's duties were assumed by a white female and a black male. (See Exhibit "A", plaintiff's complaint, ¶¶ 4, 5, 6, 16; Exhibit "B", plaintiff's EEOC Charge and the Hospital's position statement in response thereto).

Plaintiff's pleading concessions and the incorporated documentary evidence establishes that the Hospital had a legitimate, nondiscriminatory business reason to terminate plaintiff's employment, i.e., plaintiff's unauthorized long distance telephone calls.   Plaintiff and three other employees were terminated after the Hospital investigated and confirmed that these four employees had violated Hospital policy by using the Hospital's phones for long distance personal telephone calls. This policy violation was only discovered after the Hospital installed a new telephone system which tracked and accounted for telephone calls.   The new tracking system revealed that nearly $6,000.00 in calls were placed from plaintiff's extension over a two month time period, of which more than $3,000.00 were long distance calls placed mostly to Nevis

---

[2] Plaintiff, interestingly, does not deny making the calls.  Instead, plaintiff claims that others had access to her telephone extension, that she used her telephone only for business related matters, and, that no one had previously accused her of unauthorized phone usage.  (Exhibit "A", plaintiff's complaint, ¶¶ 55-60, 62).

and St. Kitts, plaintiff's home country.   (See Exhibit "B", Hospital's position statement, copy of Hospital's telephone policy and telephone logs annexed thereto as Exhibits "A" and "F" respectively).   Plaintiff was <u>not</u> disciplined more severely than any younger, male, or non-black employees and her failure to identify any such employee reinforces this fact.

Plaintiff's failure to identify any similarly situated male, white, or younger employees who committed the same infraction and were allegedly treated differently to her is fatal to her termination claim.  <u>Shumway v. UPS</u>, 118 F.3d 60 (2d Cir. 1997) (failure to allege facts sufficient to prove that similarly situated employees were treated differently was fatal to plaintiff's claim); <u>Rowe Entmt, Inc. v. William Morris Agency, Inc.</u>, 2005 U.S. Dist. LEXIS 75 (S.D.N.Y. Jan. 4, 2005) (same); <u>Allen v. St. Cabrini Nursing Home, Inc.</u>, 198 F. Supp. 2d 442 (S.D.N.Y. 2002) (failure to identify similarly situated employee who was treated differently prevents plaintiff from relying on the comparison of her situation to that of any other employee); <u>Walter v. Westdeutscher Rundfunk</u>, 2004 WL 1052776 (S.D.N.Y. 2004) (dismissal granted where conclusory allegations of disparate treatment did not give "fair notice" of claim).

Plaintiff's complaint fails to allege any act that gives rise to an inference of discrimination nor could one exist given the Hospital's undisputed employee statistics. At plaintiff's termination, approximately 88.7% of the Hospital's employee population was non-white, approximately 64.6% were female, and approximately 60.3% were within the protected age group.   The Hospital's CEO is Hispanic, its Chief Medical Officer is black, and both were well over the age of forty.  The Clinical Advisor of the program where plaintiff was employed, Dr. Osei-Tutu, is black and over forty; plaintiff's

3124538.1

former supervisors, Raymond Esteves and Andreas Evdokas, are both over 40; and, Jason Nhambiu, the Director of Labor Relations who approved the decision to terminate plaintiff, is black.   See, Exhibit "B", Hospital's position statement; Noyer v. Viacom, Inc., 1998 WL 774606, *6 (S.D.N.Y. 1998), citing Morrissey v. Symbol Technologies, Inc., 910 F. Supp. 117, 121 (E.D.N.Y. 1996) ("[A]n overall employee composition and record of non-discrimination strongly negates any claim of a climate of discrimination"); Mathurin v. Consilvio, 2002 U.S. Dist. LEXIS 26441, 8-9 (S.D.N.Y. Nov. 25, 2002); Carr v. WestLB, 171 F.Supp.2d 302, at *307 (S.D.N.Y. 2001) (fact that 50% of co-workers were over 40 evidence of lack of discrimination).

**B.    Plaintiff's Non-Termination Claims Are Insufficient As a Matter of Law**

Plaintiff's allegations of isolated comments are insufficient to state a discrimination claim and should be dismissed at this preliminary juncture.   Ortega v. New York City Off-Track Betting Corp., 1999 U.S. Dist. LEXIS 7948 (S.D.N.Y. May 24, 1999) (pre-answer dismissal granted where complaint failed to specify how statements and/or actions were motivated by, or give rise to an inference of discrimination based on protected category); Santos v. Costco Wholesale, Inc., 271 F. Supp. 2d 565, 574 (S.D.N.Y. 2003) (dismissal granted where no factual allegations linked remarks to decisions regarding promotion and termination); Prince v. Cablevision Systems Corporation, 2005 U.S. Dist. LEXIS 8147 (S.D.N.Y. May 6, 2005) (pre-answer dismissal granted because allegation of a single incident is insufficient); Cicotto v. LCOR, 2001 U.S. Dist. LEXIS 1125 (S.D.N.Y. Jan. 31, 2001) (Title VII is not a general civility code, it requires more than simple teasing, offhand comments and isolated incidents).

Not only are plaintiff's allegations of isolated events insufficient, but plaintiff has also failed to plead any facts to even suggest that the Hospital's alleged actions were motivated by discriminatory animus or ill will.   Plaintiff's pleadings are simply insufficient as a matter of law.   Stern v. Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997); Pagan v. New York State Division of Parole, 2001 U.S. Dist. LEXIS 2629 (S.D.N.Y. Mar. 13, 2001) (pre-answer dismissal granted where complaint had no factual allegation to support inference that termination was based on impermissible racial motives); Lediju v. New York City Dep't of Sanitation, 173 F.R.D. 105, 114 (S.D.N.Y. 1997) (plaintiff's speculations, generalities, and gut feelings, however genuine, when not supported by specific facts, do not allow for an inference of discrimination to be drawn); Jenkins v. NYDOCS, 2002 U.S. Dist. LEXIS 1997 (S.D.N.Y. Feb. 8, 2002) (pre-answer dismissal where no allegations that employment actions occurred under circumstances giving rise to an inference of discrimination); Johnson v. The Reuben H. Donnelly Corp., 1997 U.S. Dist. LEXIS 13972 (S.D.N.Y. Sept. 16, 1997) (mere fact that employee is member of protected class is insufficient to sustain a lawsuit); Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir. 2004) (motions to dismiss would lie to permit each defendant to dismiss causes of action as to which no set of facts are identified to support a claim against him).

Plaintiff's claims of racial discrimination are patently insufficient.   Plaintiff attempts to premise her non-termination claims on allegations that defendant Esteves allegedly referred to her as a "black ass" and allegedly used harsh tones to her in 2005. These allegations simply do not rise to the level of an actionable adverse employment action. See, Exhibit "A", plaintiff's complaint, ¶¶ 20, 33, 37, 39, 43, 49; Katz v. Beth

10

Israel Med. Ctr., 2001 U.S. Dist. LEXIS 29 (S.D.N.Y. 2001)) (being yelled at, receiving unfair criticism or unfavorable schedules or work assignments do not rise to the level of adverse employment action); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57 (1986) ("mere utterance of an . . . epithet [does] not . . . violate Title VII"); Thomas v. N.Y. City Health & Hosps. Corp., 2004 U.S. Dist. LEXIS 17694 (S.D.N.Y. Sept. 2, 2004) (stray epithets, such as being called a "black bitch", are insufficient to support a discrimination claim); Khan v. Abercrombie & Fitch Inc., 2003 U.S. Dist. LEXIS 16329 (S.D.N.Y. Sept. 17, 2003) (same); Pagan v. New York State Division of Parole, 2001 U.S. Dist. LEXIS 2629 (S.D.N.Y. Mar. 13, 2001) (pre-answer dismissal granted because one racist comment that plaintiff was "a fat Puerto Rican" is insufficient); Flynn v. Goldman Sachs & Co., 836 F. Supp. 152 (S.D.N.Y. 1993) (dismissing claim where plaintiff alleged she was called a "treacherous bitch").

Plaintiff's age and sex discrimination claims are similarly deficient. Plaintiff has failed to allege even a single age or gender related act or comment was ever directed towards her at any time during her entire employment tenure at the Hospital. (See, Exhibit "A", plaintiff's complaint, particularly ¶¶, 50-51). Plaintiff's allegations are not only clearly insufficient but they are also directly refuted by the documents plaintiff incorporated by reference and her pleading admissions; plaintiff was hired and promoted while she was in the protected age and gender categories. Plaintiff's pleading admissions directly negate any inference of discrimination. See, Exhibit "A", plaintiff's complaint, ¶¶ 4, 5, 6, 16; Exhibit "B", Hospital's position statement with plaintiff's relevant salary history annexed thereto as Exhibit "C"; Speigler v. Israel Discount Bank of N.Y., 2003 U.S. Dist. LEXIS 10854, at *31-32 (S.D.N.Y., June 24, 2003) (fact that

11

plaintiff was in protected age category when hired contradicted inference of discrimination); Byrne v. CNA Ins. Cos., 2001 U.S. Dist. LEXIS 12975, at *26 (N.D.N.Y., Aug. 29, 2001) (willingness to hire plaintiff when in protected age category and promote him twice thereafter "creates strong presumption against age discrimination"). Hauptman v. Concord Fabrics, Inc., 1999 WL 527970, at * 7 (S.D.N.Y., July 22, 1999), aff'd, 210 F.3d 354 (2$^d$ Cir. 2000) (supervisor member of ADEA class evidence of lack of discriminatory intent); Goodman v. New York Off-Track Betting Corporation, 1999 U.S. Dist. LEXIS 6291 (S.D.N.Y. Apr. 30, 1999) (pre-answer dismissal granted where no pled facts suggested that employer's actions had anything to do with plaintiff's gender).

Plaintiff's attempt to allege a hostile work environment claim also fails. Plaintiff's third and seventh causes of action attempt to plead a hostile work environment claim by alleging, inter alia, that her responsibility decreased, her supervisor was not friendly toward her, she was given a difficult deadline, and, her supervisor allegedly made a racially derogatory comment to and about her twice, once in October 2005 and once in April 2006. These allegations, of which there are only two alleged isolated hearsay incidents of race based comments, are clearly insufficient to constitute the severe and pervasive conduct necessary to rise to an actionable hostile work claim. To state a hostile work environment, a plaintiff must plead facts sufficient to show: "conduct (1) that is 'objectively' severe or pervasive-that . . . creates an environment that a reasonable person would find hostile or abusive . . ." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).

Not only is plaintiff's hostile work environment claim time-barred, but even if her allegations were timely and were all accepted as true for purposes of this motion, they

3124538.1

are insufficient to establish a hostile work environment claim as a matter of law. Isolated incidents of discriminatory comments or conduct are simply not sufficient to establish a hostile work environment. Brightman v. Prison Health Service, Inc., 2007 U.S. Dist. LEXIS 23724 (E.D.N.Y. Mar. 30, 2007) (pre-answer dismissal granted because a few incidents occurring over a four year period were not severe or pervasive enough to provide a basis for relief); Harris v. Forklift Sys., Inc., 510 U.S. 17, 20, 114 S. Ct. 367, 370 (1993). ("Mere utterance of an . . . epithet which engenders offensive feelings in an employee . . . does not sufficiently affect the conditions of employment to implicate Title VII."); Kotcher v. Rosa and Sullivan Appliance Center, Inc., 957 F.2d 59 (2d Cir. 1992) (incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief); Legnani v. Alitalia Linee Aeree Italinae, 1997 U.S. Dist. LEXIS 16151 (S.D.N.Y. Oct. 14, 1997) (four to five instances of disputed behavior over a two month period did not establish pervasiveness).   In fact, the Supreme Court specifically held that ordinary workplace tribulations such as abusive language are not enough to satisfy the hostile work environment standard. See Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998).[3]

---

[3] Plaintiff's hostile work environment allegation is also undermined by her failure to utilize the Hospital's comprehensive anti-discrimination and harassment policy at anytime during her employment tenure. The only pre-termination internal complaint plaintiff ever made about either of her two supervisors, which is referenced in her complaint, had nothing to do with harassment but rather concerned her supervisor's management style; on October 18, 2005, plaintiff wrote a memo complaining about Mr. Esteves' September 2005 denial of her request to go to Mexico on "business" and about her disagreement with him regarding the best use of grant funds, i.e., Mr. Esteves chose to purchase computers for departmental employees and grant participants. See, Exhibit "A", plaintiff's complaint, ¶ 42; Exhibit "B", Hospital's position statement and copy of plaintiff's complaint memo annexed thereto as Exhibit "D". Bryant v. Begin Manage Program, 281 F. Supp. 2d 561, 573 (E.D.N.Y. 2003) (no inference of discrimination where plaintiff's first complaint of discrimination was not until after she discovered she was being terminated); Luxenberg v. Guardian Life Ins. Co., 2004 U.S. Dist. LEXIS 3121 *17-18 (S.D.N.Y. Mar. 2, 2004) (no inference of discrimination where adverse employment action began before plaintiff filed a complaint of discrimination, even where plaintiff was subsequently terminated).

13

Accordingly, it is respectfully requested that plaintiff's discrimination claims, her first, second, fifth, and sixth causes of action, and her harassment claims, her third and seventh causes of action, be dismissed in their entirety.

## POINT III

### PLAINTIFF CANNOT PLEAD A VIABLE CONSTITUTIONAL OR § 1983 CLAIM BECAUSE NONE OF THE DEFENDANTS ARE STATE ACTORS

Plaintiff's attempt to proffer a claim under 42 USC § 1983 is insufficient as a matter of law and her fourth cause of action should be dismissed as a result. The *sine qua non* of a §1983 action is a violation of the Fourth or Fourteenth Amendment, which requires "state action"; private persons or entities <u>cannot</u> violate an individual's Fourth or Fourteenth Amendment rights. None of the defendants herein are state actors capable of abridging any of the plaintiff's constitutional or civil rights and therefore, plaintiff cannot establish the requisite element of a state action. <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 73 L. Ed.2d 418, 102 S. Ct. 2764 (1982); <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 73 L. Ed. 2d 484, 102 S.Ct. 2744 (1982; <u>See also</u>, <u>Jane Doe v. Harrison</u>, <u>NYLJ</u> (April 1, 2003). <u>Flagg Bros. Inc. v. Brooks</u>, 436 U.S. 149, 156-157, 56 L. Ed. 2d 185, 98 S. Ct. 1729 (1978).

Neither the Hospital nor the individually named defendants are state actors for the purposes of 42 U.S.C. §1983. Private hospitals, such as Bronx-Lebanon, as well as its employees, are not state actors capable of violating an individual's first and fourteenth Amendment Rights as a matter of well established law. <u>Kia P. v. McIntyre</u>, 235 F.3d 749, 756 (2d Cir. 2000)(indicating that if a hospital is "owned and administered by a private corporation, it is not the state or municipal facility"); <u>Thomas v. Beth Israel</u>

14

Hosp., Inc., 710 F. Supp. 935, 940 (S.D.N.Y. 1985) (private hospitals do not act under color of state law for §1983 purposes); Okunieff v. Rosenberg, 996 F. Supp. 343, 357 (S.D.N.Y. 1998) (indicating that defendant, a doctor in the hospital, could not be deemed a state actor since he is a private individual working for a private institution); Stork v. Suffolk County Department of Social Services, 62 F. Supp. 2d 927, 938 (E.D.N.Y. 1999) (§1983 excludes private conduct no matter how discriminatory or wrongful it is); Archer v. Economic Opportunity Commission of Nassau County, Inc., 30 F. Supp. 2d 600, 604 (E.D.N.Y. 1998) (finding that in order for private individuals to be liable for violations of §1983, the plaintiff must show that the actions complained of are attributable to the government). Indeed, there is no dispute over the private status of the Hospital or of the two individual defendants. (See Exhibit "A", Plaintiff's Complaint at ¶ 7). If there is no "state action" there is no basis for judicial intervention under §1983.

Plaintiff's allegation that the Hospital receives substantial state and federal funds is not sufficient to transform the Hospital or the individual defendants into state actors. Even if the defendants received some government funding, government funding of a private entity, no matter how extensive, is insufficient to transform otherwise private conduct into state action. Young, et al. v. Halle Housing Associates, et al., 2001 U.S. Dist. LEXIS 5820 (S.D.N.Y. 2001). Indeed, the United States Supreme Court has confirmed that a private entity's receipt of direct or significant funding is not a sufficient basis for a 42 U.S.C. §1983 claim. Blum v. Yaretsky, 457 U.S. 991, 1008, 73 L. Ed. 2d 534, 102 S.Ct. 2777 (1982).

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court grant defendants Rule 12(b) (6) motion to dismiss plaintiff's complaint in its entirety, and for such other and further relief that this Court deems proper.

Dated:    New York, New York
          March 10, 2008

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**

By: _____
    **Ricki E. Roer [RER-9393]
    Nancy V. Wright [NVW-7834]**
    Attorneys for Defendants
    **BRONX LEBANON HOSPITAL CENTER,
    ANDREAS EVDOKAS, & RAYMOND
    ESTEVES**
    150 East 42nd Street
    New York, NY 10017-5639
    (212) 490-3000
    File No. 08981.00035

TO:    **Gregory G. Smith, Esq.
       GREGORY SMITH & ASSOCIATES**
       Attorneys for Plaintiff
       **PEARLINE LIBURD**
       225 Broadway, Suite 3601
       New York, NY 10007-1901

3124538.1

# EXHIBIT A

Judge Pauley

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

# 07 CV 11316

-------------------------------------------x
Pearline O. Liburd,                          :

                              Plaintiff,     : **COMPLAINT**

                                             : **JURY TRIAL DEMANDED**

          -against-                          :

                                             :
BRONX LEBANON HOSPITAL CENTER,               :
ANDREAS EVDOKAS individually and as          :
Administrative Director,                     :
RAYMOND ESTEVES individually and as          :
Assistant Vice President of Clinical         :
Services,                                    :
                              Defendants.    :
-------------------------------------------x



    Plaintiff by her attorneys Gregory Smith & Associates,
complaining of defendants, allege:


## PRELIMINARY STATEMENT

1. Plaintiff brings this action for remedies under Title VII of
   the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et
   seq. ("Title VII"), and the Age Discrimination in Employment
   Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"), 42 U.S.C.
   §§ 1983, 1981, First and Fourteenth Amendments to the United
   States Constitution.

## JURISDICTION

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.
   Sec. 1331, 28 U.S.C. Sec. 1343(3)and(4), 29 U.S.C. § 621 et
   seq. and 29 U.S.C. § 626(c), 28 U.S.C. Sec. 1367 which
   provides supplemental jurisdiction over state claims which

                                1

arise from the same common nucleus of operative facts as the federal claim, and 42 U.S.C. Sec. 2000(e)-(5)f Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e et seq., and its pendent jurisdiction over state claims. Declaratory, injunctive, and equitable relief are sought pursuant to 42 U.S.C. §§ 2000e-(f) and (g) and 29 U.S.C. § 626(b).

## VENUE

3. Venue in the Southern District of New York is proper under Section 1391 of Title 28 and each claim for relief stated herein arises within this District.

## PARTIES

4. Plaintiff, PEARLINE O. LIBURD (hereinafter "Plaintiff"), is a black woman with brown skin of African-Caribbean decent, a citizen of the United States over the age of 55 at the time of the adverse actions against her and she falls within the group protected by the ADEA and Title VII.

5. Plaintiff was born on April 12, 1947 and was 59 years of age when she was terminated.

6. Plaintiff began her employment as Administrative Director of the Hospital's Harm Reduction Program on October 24, 1994 and maintained this position until she was terminated on May 12, 2006 (approximately 12 years later).

2

7. Defendant, BRONX LEBANON HOSPITAL CENTER, located at 1276 Fulton Avenue Bronx, New York, is a not-for-profit health care system serving the South and Central Bronx organized under the laws of the State of New York and upon information and belief, at all material times alleged herein the hospital received substantial federal and state funds.

8. Defendant, BRONX LEBANON HOSPITAL CENTER is an employer within the meaning of the ADEA and Title VII and has been at all material times herein.

9. Defendant, ANDREAS EVDOKAS, a white male, (hereinafter "defendant Evdokas") is an Administrative Director in the Department of Psychiatry at the BRONX LEBANON HOPSITAL CENTER.

10. Defendant Evdokas treated Plaintiff discriminatorily because of her race, color, sex and age.

11. Defendant, RAYMOND ESTEVES, a white male of Hispanic origin, (hereinafter "defendant Esteves") is and was at all relevant times the Assistant Vice President of Clinical Services in the Department of Psychiatry of BRONX LEBANON HOPSITAL CENTER.

12. Defendant Esteves treated Plaintiff discriminatorily and harassed her because of her race, color, sex and age.

13. At all times material hereto, defendants Evdokas and Esteves acted within the scope of their employment as employees of defendant BRONX LEBANON HOSPITAL CENTER.

3

14. Defendants Evdokas and Esteves are being sued in their individual and official capacities.

15. Plaintiff filed a timely charge of discrimination with the EEOC and received a "right to sue letter" dated September 21, 2007 and brings this complaint within 90 days of receiving her "right to sue letter."

## STATEMENT OF THE CLAIM

16. On or about October 24, 1994, Plaintiff began her employment as Administrative Director of the Hospital's Harm Reduction Program (hereinafter "HRP"). Plaintiff was hired specifically to develop and implement the then new federally funded program.

17. The HRP, under the auspices of the hospital's psychiatry department, is a federal grant funded program developed to provide counseling and education on harm reduction, recovery readiness, and HIV treatment options for substance abuse HIV patients.

18. Plaintiff secured funding for this program year after year and successfully managed the program throughout her tenure.

19. Plaintiff was efficient and effective in managing and operating the HRP, as a result, it was annually approved for renewal and funding.

4

20. Plaintiff's supervisors were defendants Evdokas and Esteves. Defendant Esteves was her direct supervisor from on or about May 1, 2002 until on or about December 9, 2005; then defendant Evdokas was assigned on or about December 2005 until her termination.

21. Plaintiff always performed her job duties and responsibilities at least satisfactorily.

22. Upon information and belief defendant Esteves had a pattern and practice of discriminating against females employees over the age of 40 and black employees.

23. Since defendant Esteves began supervising Plaintiff, he has treated Plaintiff differently and more severely than non-African American females under the age of 45 and white males.

24. As an example, but not the sole example of discriminatory treatment, defendant Esteves has unlawfully and unfairly criticized Plaintiff's performance, has subjected her to a hostile work environment and has denied her due process, equal protection under the laws and equal employment opportunities. All of this has been on-going activities.

25. As an example, but not the sole example of discriminatory treatment, upon information and belief, defendant Esteves conspired with defendant Evdokas and others to dismantle the HRP and thereby terminate Plaintiff's employment.

5

26.  Upon information and belief, defendant Esteves conspired with others not to renew the grant that funds the HRP.

27.  As an example, but not the sole example of discriminatory harassment, at a meeting, on or about February 2005, defendant Esteves harassed Plaintiff when he pressured her to fabricate a justification to the HRP's grant funding agency to justify his purchase of twelve (12) computers with HRP's grant money.

28.  Upon information and belief, defendant Esteves knew that Plaintiff must provide an accounting to the funding agency for the HRP or its funding could be jeopardized.

29.  Upon information and belief, defendant Esteves told Plaintiff that the monies should be justified with the implementation of a computer lab. To date, defendant Esteves has not established a computer lab.

30.  Upon information and belief, defendant Esteves has not treated other similarly situated male employees like Plaintiff when he suggested that she fabricate a false justification for the computer purchase.

31.  Upon information and belief, defendant Esteves has not treated other similarly situated non black employees like Plaintiff when he ordered her to fabricate a justification for the computer purchase.

6

32. Upon information and belief, defendant Evdokas knew that defendant Esteves harassed Plaintiff by asking her to fabricate the above-described justification.

33. As another example, but not the sole example of discriminatory treatment and harassment, at monthly departmental meetings throughout 2005, in the presence of 15 - 20 departmental managers, defendant Esteves treated Plaintiff differently by using harsh, sharp and condescending tones when addressing Plaintiff.

34. As another example, but not the sole example of discriminatory treatment, at a meeting, on or about September 13, 2005, defendant Esteves verbally abused Plaintiff because she requested to attend a conference that Plaintiff regularly attended in prior years that provides valuable information in her professional responsibility as Project Administrator/Director of HRP.   Defendant Esteves stated that he would not pay for an international conference as his purported reason, even though this was a domestic conference that had already been funded. Defendant Evdokas was present at this meeting and acquiesced to this harassment.

35. On or about September 13, 2005, at this same meeting, and during defendant Esteves' abusive tirade toward Plaintiff, he threatened to transfer her from the program that she developed

7

and managed for twelve years to another department in the hospital.

36. As evidence of his unlawful ill-will, Plaintiff heard defendant Esteves call her a "black ass" as he walked past her leaving defendant Evdokas' office. Prior to this ill-willed statement, on or about September 14, 2005, Plaintiff was standing outside of defendant Evdokas's office and she heard defendant Esteves say to defendant Evdokas, "I want her ass out of here. I want to get rid of her. I want her ass out of here."

37. As another example, but not the sole example of discriminatory treatment and harassment, on or about September 20, 2005, defendant Esteves damaged her reputation and adversely affected her ability to manage when he called employees of the HRP to monitor Plaintiff's whereabouts.

38. On or about September 13, 2005, as part of an on-going harassment campaign against plaintiff, defendant Esteves told Plaintiff that she would be transferred.

39. As another example, but not the sole example of discriminatory treatment and harassment, after nearly 12 years effectively managing HRP, on about October 12, 2005, defendant Esteves and defendant Evdokas, without justification, stripped Plaintiff of key executive responsibilities, specifically hiring and firing.

8

40.  In order to avoid the on-going discriminatory harassment, in or about, October 2005, Plaintiff asked defendant Evdokas about the transfer from his department. Plaintiff was under extreme stress and wanted to escape the continued harassment by defendant Esteves.

41.  Upon information and belief, defendant Evdokas did not transfer Plaintiff because he and defendant Esteves were conspiring to wrongfully terminate her employment.

42.  On or about October 18, 2005, Plaintiff wrote a memorandum to Dr. Levine, Chairman of the Psychiatry Department, supervisor of both defendants Esteves and Evdokas, to complain about defendants Esteves and Evdokas' harassment.  Upon information and belief, Dr. Levine acquiesced to the harassment by not intervening after he received the memorandum.

43.  In another example of color, race, gender and age animus toward Plaintiff, defendant Esteves called Plaintiff a "black ass" this took place on or about October 21, 2005 between 12:00 noon and 1:00 p.m. when Plaintiff left a meeting held in the boardroom to obtain lunch to bring back to the meeting; defendant Esteves confronted Plaintiff in the hallway demanding to know where she was going and when told defendant Esteves replied "make sure you come right back."

9

44.  Upon information and belief, defendant Esteves retaliated against Plaintiff for reporting him to Dr. Levine by creating a hostile environment through harassment; accusing Plaintiff of making unauthorized phone calls; conspiring to terminate her from her employment; and conspiring to dismantle the HRP program.

45.  As another example, but not the sole example of discriminatory treatment and harassment defendant Esteves stopped speaking to Plaintiff on or about February 14, 2006. Plaintiff complained to defendant Evdokas that defendant Esteves does not say hello when she addresses him, instead he directs a vicious stare in her direction.

46.  As another example, but not the sole example of discriminatory treatment, harassment and retaliation, on or about March 29, 2006, at a field day meeting presided over by defendant Esteves, with Plaintiff's colleagues in attendance, defendant Esteves ignored her whenever she directed a question and a suggestion to him.

47.  As another example, but not the sole example of discriminatory treatment, harassment and retaliation, upon information and belief, from on or about March 2006 until May 2006, defendant Esteves increased his monitoring of Plaintiff by calling HRP each morning at or between 8:45 a.m. to 9:00 a.m. asking for the whereabouts of Plaintiff.

48. As another example, but not the sole example of discriminatory treatment, harassment and retaliation, upon information and belief, on or about April 6, 2006, defendants Esteves and Evdokas, as part of their conspiracy to terminate Plaintiff through the dismantling of the HRP, informed Plaintiff that acupuncture will be eliminated from HRP. Acupuncture was a very successful feature of HRP. They also eliminated the Friday free breakfast program and Saturday program for patients. Upon information and belief, both program features were fully funded by grants, thus there was no legitimate reason for their discontinuance.

49. On numerous occasions defendant Esteves asked Tina F. Goldman, a white female, formerly the Office Manager of the Department of Psychiatry, to help him to "nail" Plaintiff and on or about April 12, 2006 Defendant Esteves stated to Ms. Goldman that he needed to get rid of her "black ass" referring to Plaintiff.

50. Upon information and belief, in or about the years 2004 through 2006, defendant Esteves either terminated or forced numerous employees to resign either because they were female employees over the age of 40 or black male employees.

51. Upon information and belief, defendants have developed a pattern and practice of wrongfully terminating more experienced female employees over the age of 40 and replacing

11

them with younger less experienced female or non-African American male employees.

52. Upon information and belief, defendants have developed a pattern and practice of wrongfully terminating more experienced black employees and replacing them with non black, less experienced employees.

53. As another example, but not the sole example of discriminatory treatment, harassment and retaliation, on or about April 6, 2006, upon information and belief, defendants Esteves and Evdokas, in continuance of their plan to justify a termination of Plaintiff, set an unrealistic timeframe to complete the closing of inactive case files.

54. Upon information and belief, closing inactive case files was an on-going problem with all grant based programs; yet, Plaintiff was given only one week to accomplish this task.

55. As another example, but not the sole example of discriminatory treatment and harassment in or about May 2006 defendants Esteves and Evdokas selectively disciplined Plaintiff for an alleged unauthorized use of the hospital's telephone.

56. Upon information and belief, at the time these alleged unauthorized phone calls were made there was no special code to track who made a call at a specific phone extension.

57. Upon information and belief, at the time these alleged unauthorized calls were made, Plaintiff's telephone was accessible to all HRP employees.

58. Upon information and belief, Plaintiff was accused of making some of the alleged unauthorized calls at times when she was out of the office.

59. Upon information and belief, some of the calls claimed to be made by Plaintiff were made while she was absent from work.

60. Upon information and belief, in the twelve years HRP has been in existence, there have not been any allegations against Plaintiff or any other HRP employees regarding unauthorized phone usage.

61. As another example, but not the sole example of harassment on or about May 8, 2006, Jason Nhambiu, Director of Labor Relations, informed Plaintiff that she must repay $5,942.74 in unauthorized phone calls for the period of February 9, 2006 to March 31, 2006. He then stated that the money would be deducted from Plaintiff's vacation pay. The money was never deducted.

62. On or about May 8, 2006, at this same meeting, which also included defendants Esteves and Evdokas, Plaintiff explained that she used her business phone extension only for HRP business.

13

63. On or about May 8, 2006, at this same meeting, Jason Nhambiu, ordered Plaintiff to account for nearly 300 phone calls and to provide this accounting within 24 hours.

64. As another example, but not the sole example of discriminatory treatment and harassment, on or about May 8, 2006, only fifteen minutes after Plaintiff was asked to account for these phone calls, defendant Evdokas came to Plaintiff's office and told Plaintiff that defendant Esteves wanted the accounting right away. He then harassed Plaintiff by following her around the office, including to the ladies room.

65. On or about May 12, 2006, Jason Nhambiu, informed Plaintiff that defendants Esteves and Evdokas were dissatisfied with her management of the program.

66. On or about May 12, 2006, shortly after the discussion with Jason Nhambiu, Defendants terminated Plaintiff.

67. Upon information and belief, defendants did not state the reason for Plaintiff's termination.

68. Upon information and belief, Defendants terminated Plaintiff and replaced her with Jennifer Marciano, a younger, less experienced, white Italian female. Upon information and belief, Ms. Marciano was paid more than Plaintiff. Upon information and belief, when Plaintiff was terminated her salary was approximately $77,000.00 per year.

14

69. Upon information and belief, in 2007 the HRP was disbanded as a separate program, a wellness program was created in its stead and Defendant Esteves promoted Jennifer Marciano to the position of co-director of psychiatry with Ibet Hernandez, a white Hispanic female within the psychiatric department.

70. As a result of her termination, Plaintiff suffered a loss of income and fringe benefits.

71. As a result of her termination, harassment, hostile work environment and discrimination, Plaintiff suffered emotional harm, and harm to her reputation.

72. By failing to follow its own personnel policies and procedures on evaluating and providing equal employment opportunity to its employees and by selectively disciplining Plaintiff, Defendants have violated the First and Fourteenth Amendments to the United States Constitution.

73. Defendants' acts of discrimination, and harassment were performed with malice and reckless indifference to Plaintiff's protected civil rights and her rights under the United States Constitution.

74. The foregoing actions of defendants' discrimination against Plaintiff was because of her age, race, color, and sex in violation of 29 U.S.C. § 621 et seq. and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2, 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

15

75. Defendants have discriminated against Plaintiff with respect to the terms, wages, conditions, privileges, advantages and benefits of employment. Specifically, defendants have developed a pattern and practice of terminating older (above the age of forty) more experienced female staff members and black people from their employment.

76. Defendants have discriminated against Plaintiff with respect to the terms, wages, conditions, privileges, advantages and benefits of employment. Specifically, defendants either directly engaged in intentional discrimination or acquiesced to the discriminatory and wrongful acts (based on race, color, sex, age and harassment) described in this complaint.

77. Defendants Esteves and others have discriminated against and harassed Plaintiff and created a hostile working environment by conspiring to terminate Plaintiff and to dismantle the HRP; directing racial slurs toward Plaintiff; selectively disciplining Plaintiff; demeaning Plaintiff and carrying on a continuous pattern of work place harassment culminating in her termination from employment.

78. Defendants' acts of discrimination and harassment were performed intentionally.

79. By subjecting Plaintiff to inferior compensation, terms and conditions of employment than it provided to similarly-

16

situated younger Caucasian male employees, by subjecting Plaintiff to a lesser ability to earn money than it provided to similarly-situated younger Caucasian male employees, defendants violated section 296 of the New York State Executive Law, as made actionable against the defendants by and through section 297.

80. As a proximate result of the discriminatory and harassing acts of defendants, Plaintiff has suffered a loss of status, title, job experience, income, retirement benefits and other fringe benefits that she would have received absent defendants' discrimination.

## FIRST CAUSE OF ACTION

81. The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

82. By the above acts, including the decision to terminate Plaintiff defendants have violated Title VII by discriminating against Plaintiff because of her race and color.

83. Defendants' acts were with malice and reckless disregard for plaintiff's federally protected civil rights.

84. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of

17

defendants' discriminatory and wrongful individual acts and patterns and practices unless and until this Court grants relief.

## SECOND CAUSE OF ACTION

85. The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

86. The decision to terminate Plaintiff was based on her age in violation of the ADEA. Defendant knew or recklessly disregarded that its conduct violated the ADEA. Defendant's violation of the ADEA is willful within the meaning of that statute.

87. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's purposeful discriminatory individual acts and patterns and practices unless and until this Court grants relief.

## THIRD CAUSE OF ACTION

88. The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

89. Defendants by their conduct including harassing Plaintiff, creating a hostile work environment have violated Title VII.

18

90. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's individual acts and purposeful discriminatory policies and practices unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION

91. The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

92. By failing to follow its own personnel policies and procedures on evaluating and providing equal employment opportunity to its employees and by selectively disciplining Plaintiff by terminating her from her employment in retaliation for Plaintiff drafting a memorandum dated October 18, 2005 that stated to Dr. Levine the wrongful conduct of defendant Esteves, Defendants have violated 42 U.S.C. § 1983 and Plaintiff's Constitutional and statutory rights, by treating Plaintiff differently, unequally and less favorably than Defendants treat their other similarly situated employees.

## FIFTH CAUSE OF ACTION

93. The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

19

94. By the above acts, including the decision to terminate Plaintiff, Defendants have violated Title VII by discriminating against Plaintiff because of her sex.

95. Defendants' acts were with malice and reckless disregard for plaintiff's federally protected civil rights.

96. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' individual acts and discriminatory patterns and practices unless and until this Court grants relief.

<u>SIXTH CAUSE OF ACTION</u>

97. The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

98. By the above acts, including the decision to terminate Plaintiff defendants have violated 42 U.S.C. § 1981 by discriminating against Plaintiff because of her color and race.

99. Defendants' acts were with malice and reckless disregard for plaintiff's federally protected civil rights.

100. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' individual acts and discriminatory patterns and practices unless and until this Court grants relief.

<u>SEVENTH CASUE OF ACTION</u>

101. The Plaintiff incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

102. Defendants by their conduct including harassing Plaintiff, creating a hostile work environment based on Plaintiff's race and color have violated 42 U.S.C. § 1981.

103. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's purposeful discriminatory and wrongful individual acts and patterns and practices unless and until this Court grants relief.

**WHEREFORE**, Plaintiff, Pearline O. Liburd, requests that this Court:

(1) Accept jurisdiction over the parties;

(2) Empanel and charge a jury with respect to this action;

(3) Award to Plaintiff, Pearline O. Liburd, pay, title and status that she would have had, had she not been subject to discrimination and harassment, with pre and post-judgment interest;

(4) Issue declaratory, injunctive and other equitable relief to Plaintiff from the discrimination and direct Defendants to cease the discriminatory, harassing and

21

retaliatory conduct and to retroactively restore Plaintiff to her job;

(5) Award Plaintiff, Pearline O. Liburd compensatory and punitive damages with pre and post-judgment interest to compensate her for the injuries she has suffered and to deter defendants from discriminating, harassing and retaliating in their employment practices;

(6) Order Defendants to pay the reasonable attorneys fees and other costs incurred by Plaintiff as provided by Section 1988 of Title 42 and the Civil Rights Acts; 29 U.S.C. § 621 et seq. and Fed. R. 54.

(7) Award Plaintiff, Pearline O. Liburd, any other relief deemed necessary, just and proper.

Dated: New York, New York
       December 17, 2007

                              Respectfully submitted,


                              Gregory G. Smith (GS-9900)
                              GREGORY SMITH & ASSOCIATES
                              225 Broadway, Suite 3601
                              New York, New York 10007-1901
                              *Counsel for Plaintiff*

22

# EXHIBIT B

EEOC FORM 131 (5/01)

# U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| **BRONX LEBANON HOSPITAL**<br>**Personnel Director**<br>**1276 Fulton Avenue**<br>**Bronx, NY 10456** | **Pearline Liburd** |
| | THIS PERSON (check one or both) |
| | [X] Claims To Be Aggrieved |
| | [ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**520-2007-00239** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act          [ ] The Americans with Disabilities Act

[X] The Age Discrimination in Employment Act   [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **19-DEC-06** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by **12-DEC-06** to **Michael Bertty, ADR Coordinator, at (212) 336-3646**
If you <u>DO NOT</u> wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| **Michael Bertty,**<br>**ADR Coordinator**<br>*EEOC Representative*<br><br>*Telephone* **(212) 336-3646** | **New York District Office - 520**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE  [X] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN  [X] AGE  [ ] DISABILITY  [ ] RETALIATION  [ ] OTHER

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **November 28, 2006** | **Spencer H. Lewis, Jr.,**<br>**Director** | |

## INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14  Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | 520-2007-00239 |
| ☒ EEOC | |

_____ and EEOC

*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Pearline Liburd | (718) 543-1799 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 5715 Mosholu Avenue, Apt. 4G, Bronx, New York 10471 | | 1/16/47 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Bronx Lebanon Hospital | 1000+ | (718) 590-1800 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1276 Fulton Avenue, Bronx, New York 10456 | | Bronx |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☒ RACE  ☒ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☒ AGE  ☐ DISABILITY  ☒ OTHER *(Specify)* harassment

DATE DISCRIMINATION TOOK PLACE EARLIEST/LATEST

February 2005

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

*See annexed Complaint

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

NOTARY - *(When necessary for State and Local Requirements)*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

*Pearline Liburd*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Day, month, and year)*
1/10/06

Date _____   Charging Party *(Signature)*

Notary Public, State of New York
No. 02SM5058626
Qualified in New York County
Commission Expires March 11, 2010

EEOC FORM 5 (REV. 3/01)

## **CHARGE OF DISCRIMINATION**

1.  Pearline Liburd a black women of African-Caribbean descent, age 59, brings this
    complaint against Bronx Lebanon Hospital Center, Raymond Esteves and
    Andreas Evdokas on the basis of age, race, gender and harassment for wrongful
    termination and the wrongful taking of claimant's vacation pay. Claimant was
    employed by Bronx Lebanon Hospital Center from October 24, 1994 until she
    was terminated May 12, 2006.

2.  Claimant was replaced that same day by a younger white female named Jennifer
    Marciano. At the time of claimant's termination she was responsible for the
    management of the Harm Reduction Program hereinafter, ("HRP"), a program
    that claimant developed to assist in alleviating the hardships of HIV-infected
    patients afflicted with substance abuse problems. Claimant has always performed
    her job duties in a conscientious and satisfactory manner. Claimant has never
    received a below average performance rating.

3.  At the time of claimant's termination her supervisor was Andreas Evdokas a
    male/white. His title was and still is Administrative Director. Claimant's previous
    supervisor was Raymond Esteves a male/white of Hispanic origin. His title was
    and still is Assistant Vice President of Clinical Services.

4.  In February 2005, claimant scheduled a meeting with Raymond Esteves the
    purpose of the meeting was to inform him that claimant had unused money on the
    HRP budget and that claimant needed to spend it. This money was part of the
    enhancement HRP received from the funding agency "MHRA-Ryan White" for
    always performing at ninety (90%) percent or higher of the projected patient
    services. Claimant proposed overtime for Saturdays, however, Raymond Esteves
    wanted twelve (12) computers. Claimant objected by asking him how could
    claimant justify twelve computers with a staff of only five persons excluding
    claimant. Claimant told him that she would rather spend the money on patient
    services, as required in the contract with MHRA-Ryan White. The computers
    were ordered anyway by Esteves and billed to HRP. Esteves instructed claimant
    to come up with a creative justification for the computers for the funding agency.
    Claimant was directed by Esteves to inform the funding agency that HRP wanted
    to establish a computer lab. Here Esteves directed claimant to fabricate a lie.
    Claimant did so because she was ordered by her supervisor Estevez to do so. The
    HRP office received four (4) of the desk top computers. Esteves refused to tell
    claimant the serial numbers of the other eight computers. Although, Esteves
    ordered the computers for the HRP offices claimant has never seen the other eight
    (8) computers. In reality, HRP was not and has not (to the date of this Charge)
    developed a computer lab. On October 18, 2005, claimant complained about
    Esteve's behavior to Dr. Levine the Chair in the Psychiatry Department.

5.    On or about September 14, 2005, claimant overheard Raymond Esteves telling Andreas Evdokas, "I want her ass out of here. I want her ass out of here. I want to get rid of her." When it was announced by Andreas Evdoka's secretary that claimant was standing outside of his office door for a conference, claimant again heard Esteves say to Evdokas, "I want her ass out of here." As Esteves walked past claimant he stated "black ass." After this incident the claimant wrote a memo dated October 18, 2005 to the Chairman of the Psychiatry Department and requested a transfer saying that "I clearly heard Mr. Esteves giving Dr. Evdokas directives of how to deal with me that was not positive." Respondents did not answer claimant's request for a transfer, instead, respondents terminated her.

6.    During monthly meetings throughout 2005 Raymond Esteves used harsh, sharp tones, when addressing claimant. Raymond Esteves was abrupt, rude and displayed no tolerance toward claimant when addressing her in monthly meetings before 15-20 other department heads in attendance. Beginning in June 2005 until her termination Raymond Esteves called the HRP Office daily in the morning to harass claimant. As of October 2005 through the date of her termination Raymond Esteves gave claimant extra reporting duties such as: quality improvement reports, reports of staff meetings and hiring reports.

7.    Upon information and belief, Esteves told another employee in April 2006 that he wanted to get rid of claimant. When ask why, Esteves replied in sum and substance "I have a problem with black people and I don't like her. I want her black ass out of here."

8.    On or about May 8, 2006, respondents including Jason Nanbugi (Human Resources Department) Andreas Evdokas, Raymond Esteves and others conspired to wrongfully accuse plaintiff of running up a large telephone bill in the HRP from March 1, 2006 to March 31, 2006 of approximately five thousand ($5000.00) dollars. The wrong decision was made to deduct approximately five thousand ($5000.00) dollars from claimant's vacation pay. Although wrong, to date respondents have not paid claimant for her wrongfully taken vacation pay. Claimant was not given notice or an opportunity to be heard before she was reprimanded and her pay taken. Upon information and belief, respondents have policies and procedures in place to handle work place disagreements. Over the course of claimant's employment with respondents she has never been accused or found to have participated in any impropriety.

9.    Upon information and belief, Respondents through Raymond Esteves have developed a pattern and practice of terminating older (above the age of 40) more experienced female staff members from their employment. Upon information and belief, the witnesses in payroll have knowledge that such a course of conduct has taken place since at least 2004.

## Document Retention Notice Pursuant to Charge Of Discrimination

YOU ARE HEREBY GIVEN NOTICE NOT TO DESTROY, CONCEAL OR ALTER ANY PAPER DOCUMENTS OR ELECTRONIC DATA INCLUDING DATA GENERATED BY OR STORED ON ANY COMPUTER OR COMPUTER STORAGE MEDIA (E.G., HARD DISKS, FLOPPY DISKS, BACKUP TAPES), THAT RELATE TO THE CLAIMS AND DEFENSES IN THE ACCOMPANYING CHARGE OF DISCRIMINATION. FAILURE TO COMPLY WITH THIS NOTICE, EITHER THROUGH INTENTIONAL ACTS OR NEGLIGENCE, CAN RESULT IN SANCTIONS FOR SPOLIATION OF EVIDENCE. SANCTIONS COULD INCLUDE MONETARY PENALTIES AND OTHER COURT-IMPOSED ACTION.

A.     Paper Documents to be Preserved:  Hard-copy information which should be preserved includes, but is not limited to:

1. Personnel files;
2. Employee data;
3. Payroll information;
4. Personnel policies, procedures, and regulations;
5. Letters, memoranda and notes;
6. All complaints of discrimination or unfair treatment;
7. All documents related to internal investigations; and
8. All other documents containing information relevant to the subject matter of the charge of discrimination.

Note that even where hard-copy documents exist, the Commission may still seek the same information in an electronic format simultaneously.

B.     Electronic Data to be Preserved:  Electronic information which should be preserved includes but is not limited to:

1. Electronic mail (e-mail) and information about e-mail (including message contents, header information and logs of e-mail system usage) sent or received which is relevant to the subject matter of the charge of discrimination;
2. Databases (including all records and fields and structural information in such databases), containing any reference to or information about the human resources or personnel information of your employees;
3. Word processing files, including prior drafts, "deleted" files and file fragments, containing information about or relevant to the subject matter of the charge of discrimination;
4. Electronic data files and file fragments created or used by electronic spreadsheet programs, where such data files contain information relevant to the subject matter of the charge of discrimination; and
5. All other electronic data containing information relevant to the subject matter of the charge of discrimination.

C. **Additional Procedures**: The following procedures should be observed or undertaken to further maintain potentially relevant electronic data:

1. **Online Data Storage on Mainframes and Minicomputers:** With regard to online storage or direct access storage devices attached to your mainframe computers or minicomputers: you should not modify or delete any electronic data files, "deleted" files, or file fragments existing at the time of the filing of this charge, unless a true and correct copy of each such electronic data file has been made and steps have been taken to assure that such a copy will be preserved and accessible.

2. Offline Data Storage, Backups and Archives, Floppy Diskettes, Tapes and Other Removable Electronic Media: With regard to all electronic media used for offline storage, including magnetic tapes and cartridges and other media that, at the time of the filing of the charge, contained any electronic data meeting the criteria listed in paragraph 1 above. You should stop any activity that may result in the loss of such electronic data, including rotation, destruction, overwriting or erasure of such media in whole or in part. This request is intended to cover all removable electronic media used for data storage in connection with your computer systems, including magnetic tapes and cartridges, magneto-optical disks, floppy diskettes and all other media, whether used with personal computers, minicomputers or mainframes or other computers, and whether containing backup or archive data sets and other electronic data, for all of your computer systems.

3. Retention of Data Storage Devices: You should not to dispose of any electronic data storage devices or media that may contain electronic data meeting the criteria listed in paragraph 1 above.

4. Fixed Drives on Stand-Alone Personal Computers and Network Workstations: With regard to electronic data meeting the criteria listed in paragraph 1 above, which existed on fixed drives attached to stand-alone microcomputers or network workstations at the time of the filing of the charge. You should not alter or erase such electronic data, and should not perform other procedures (such as data compression and disk de-fragmentation or optimization routines) that may impact such data, unless a true and correct copy has been made of such active files and of completely restored versions of such deleted electronic files and file fragments, copies have been made of all directory listings (including hidden files) for all directories and subdirectories containing such files, and arrangements have been made to preserve copies.

5. **Programs and Utilities:** You should preserve copies of all application programs and utilities, which may be used to process electronic data described herein.

6. Evidence Created Subsequent to This Notice: With regard to electronic data created subsequent to the date of delivery of this letter, relevant evidence is not be destroyed and you should take whatever steps are appropriate to avoid destruction of evidence.

# AGREEMENT TO MEDIATE

**Charge Number:** _520-8007-00239_

This is an agreement by the parties to participate in a mediation concerning the charge of:

_____ **v.** _____
**Charging Party**                              **Respondent**

We understand that mediation is voluntary and can be terminated at any time.

The parties, and if they desire, their representatives are invited to attend the mediation sessions. No one else may attend without the permission of the parties and the consent of the mediator.

The mediator will not function as the representative of either party. However, the mediator may assist the parties in understanding their rights and the terms of any proposed settlement agreement.
Each party acknowledges having been informed of the right to consult with an attorney of his or her choosing prior to signing any agreement.

We agree that the mediator has the discretion to terminate the mediation at any time if he or she believes that the case is inappropriate for mediation or that an impasse has been reached.

We hereby affirm that we will come to the EEOC with the authority to enter into a binding agreement and that we will enter the mediation process with a good faith intent to settle this dispute during the EEOC mediation session.

We recognize that the mediation process is a confidential proceeding.

The parties acknowledge that if a settlement is reached as a result of the mediation, the assigned mediator is required to report to EEOC of any benefits received. This information is reported only for purposes of providing aggregate data to the EEOC for the Mediation Program evaluation purposes, and the individual terms of the agreement will not be disclosed to the public.

_____  _____        _____  _____
 **Charging  Party**            **Date**               **Respondent**               **Date**


_____  _____        _____  _____
 **Charging Party's Representative**   **Date**      **Respondent's Representative**   **Date**

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 E. 42nd Street, New York, New York 10017   Tel: (212) 490-3000   Fax: (212) 490-3038

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • McLean
Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Munich • Paris*

——

www.wilsonelser.com

January 18, 2007

**VIA OVERNIGHT MAIL**

Equal Employment Opportunity Commission
Enforcement Unit
New York District Office
33 Whitehall Street - 5th Floor
New York, NY 10004

Attention:      John Douglass
                Intake Supervisor

            **Re:   Pearline Liburd   v. Bronx Lebanon Hospital Center**
            **EEOC Charge No.      :    520-2007- 00239**
            **Our File Number       :    08981.00035**

Dear Mr. Douglass:

     Respondent, Bronx Lebanon Hospital Center (hereinafter "the Hospital"), respectfully submits this position statement in response to the captioned Charge. There is absolutely no meritorious basis for Claimant's age, race, and gender claims. Claimant was terminated for her clear misconduct; she incurred over $3,000.00 in long distance charges in direct violation of the Hospital's telephone policy. Claimant's Charge is untimely and without merit, and the Hospital respectfully requests that a finding of "no probable cause" be issued and this Charge be dismissed in its entirety.

## POSITION STATEMENT

     Bronx Lebanon Hospital Center is a 614[1] bed voluntary, not-for-profit Hospital serving the largely minority communities of the central and southern portions of the Bronx.  The Hospital prides itself on its diversity and is committed to fostering and providing equal opportunity to all its employees and maintaining a professional work environment wherein discrimination is not tolerated.  Accordingly, the Hospital maintains well established and long standing anti-discrimination and prevention policies published and distributed to all its employees.  (Annexed hereto as Exhibit "A" are copies of the

---

[1] Bronx Lebanon Hospital Health Care System (which includes the Special Care Center) has a combined total of 854 beds.

Hospital's EEO and Anti-Discrimination and Discrimination Complaint Policies, and annexed as Exhibit "B", Claimant's signed acknowledgement of receipt of same).

It is respectfully submitted that the demographics of the Hospital's employee population negate <u>any</u> inference of discrimination. The Hospital employs thousands of physicians, nurses, support staff and clerical staff whose races, genders and ages reflect both the Hospital's commitment to its EEO policies and the diversity of the population which it serves, i.e., approximately 88.7% of the Hospital's employee population is non-white, approximately 64.6% are female, and approximately 60.3% are within the protected age group. The Hospital's CEO is Hispanic, its Chief Medical Officer is black, and both are well over the age of forty. The Clinical Advisor of the program where Claimant was employed, Dr. Osei-Tutu, is black and over forty; Claimant's former supervisors, Raymond Esteves and Andreas Evdokas, are both over 40; and, Jason Nhambiu, the Director of Labor Relations who made the decision to terminate Claimant, is black.

Not only do the Hospital's well-established employment policies and diverse employee population negate any inference of discrimination, but Claimant's employment history reflects a work environment free of any age, race, or gender discrimination. Claimant began her employment as Administrative Director of the Hospital's Harm Reduction Program[2] ("HRP") on October 24, 1994. The Hospital not only hired but re-hired[3] Claimant knowing she was black and over forty. Additionally, Claimant was given numerous salary increases during her tenure, and she was promoted to the position of Project Administrator/Director of the HRP effective February 3, 1997. (Annexed hereto as Exhibit "C" are Claimant's relevant employment records). Following her termination, Claimant's duties were undertaken by Ms. Marciano, a white female, and by Mr. Asidu, a black male.

Claimant's allegation that her May 12, 2006 termination was discriminatory is directly undermined by her admission that Mr. Esteves, one of her supervisors at the time she was fired, consistently gave her good to excellent performance evaluations, and by the fact that he consistently obtained raises on her behalf. Claimant's allegation are further undermined by the fact that prior to her termination, Claimant <u>never</u> filed a discrimination complaint about any of the individuals overseeing her employment at the time of her discharge, i.e. about either of her two supervisors (Mr. Evdokas and Mr. Esteves) or Mr. Nhambiu, who made the decision to terminate her employment. Contrary to Claimant's post-discharge allegations, the only pre-termination complaint she filed regarding any of these individuals had nothing whatsoever to do with discrimination; on October 18, 2005, Claimant wrote a memo complaining about Mr. Esteves' September 2005 denial of her request to go to Mexico on "business" and about her disagreement with him regarding the best use of grant funds, i.e. Mr. Esteves chose to purchase computers for departmental employees and grant participants. (Copy of Memo annexed hereto as Exhibit "D"). Claimant has severely undermined her

---

[2] The Harm Reduction Program is a federal grant funded program developed to provide counseling and education on harm reduction, recovery readiness and HIV treatment options. The program has to be renewed annually and is currently under the auspice of the Hospital's Psychiatry Department.
[3] Claimant was previously employed by the Hospital's Special Care Center.

2607171.1

credibility by so dramatically altering her version of the September 2005 incident in her present Charge.

Claimant was terminated for one reason and one reason only. Claimant and three other employees were terminated after the Hospital investigated and confirmed that these four employees had violated Hospital policy and used Hospital phones for long distance personal telephone calls. Claimant's unauthorized use of the Hospital's telephone exceeded $3,000.00 and was only discovered after the Hospital installed a new telephone system which tracked and accounted for telephone calls. The tracking system revealed that the Claimant and three other employees had egregiously taken advantage of the Hospital's phone system, and that nearly $6,000.00 in calls were placed from Claimant's extension over a two month time period; of the nearly $6,000.00 total cost of the calls placed, more than $3,000.00 were long distance calls placed from Claimant's telephone extension mostly to Nevis and St. Kitts, her home country.[4] (Annexed hereto as Exhibit "E" is the Hospital's telephone policy which mandates that telephone usage is limited to the Hospital's business use and makes violation of this policy a terminable offence and as Exhibit "F", copies of the telephone logs).

Claimant's attempt to claim that her termination was discriminatory lacks any factual or legal basis. She was not disciplined more severely than any younger, male employees. Following its investigation, the Hospital terminated all four employees, two of whom were in their thirties, and two of whom were male. No other employee was treated differently than Claimant, and Hospital policy and practice is clear that any employee who violates the Hospital's telephone usage policy will be similarly disciplined. Indeed, the Hospital viewed the Claimant's violation the most egregious of all not only because of the sheer volume and cost of her long distance calls, but her position of trust as Director of a grant funded program and her abuse was a misappropriation of HRP grant funds.

Post-discharge, Claimant has, for the first time, proffered baseless allegations[5] in an attempt to avoid the effects of her wrongdoing, i.e., Claimant has offered the following baseless allegations: (1) She was given "extra" reporting duties; (2) Mr. Esteves made racially derogatory comments to and about her on two occasions, October 2005 and April 2006; and, (3) the Hospital had a pattern of discriminating against older, female employees. Her claim regarding "extra" reporting duties is baffling since the duties described are and have always been part of Claimant's job. Likewise,

---

[4] Upon realizing that the Hospital had discovered her telephone calls and she was facing termination, Claimant came up with a series of excuses including (1) that the calls were made as part of a worldwide promotional outreach effort, and, (2) that some calls were made on behalf of four identified patients. Claimant was unable to explain why: (1) Nevis and St. Kitts were the only parts of the world she "reached out" to; (2) the charts of the patients she identified contained none of the requisite activity logs indicating such calls had been placed on the patients' behalf; and, (3) three of the patients' files were inactive during the time period when the calls were made and one or two of the patients were not even HIV positive. Realizing these excuses were not true or credible, Claimant offered to reimburse the Hospital the cost of the calls in lieu of termination.

[5] Claimant also alleges the "wrongful taking of her vacation pay"; Claimant failed to pick up her "vacation pay check" for a number of months or to provide instructions as to how to remit the monies to her. These monies have been fully paid. (Copies of correspondence, paychecks, and certified receipts annexed hereto as Exhibit "G").

3

her hearsay claim of two isolated, allegedly racially derogatory comments and a pattern and practice of discrimination are utterly unsupported by any admissible, probative evidence and are insufficient to establish a discrimination claim. The Hospital's extraordinary race, gender, and age demographics, and her supervisors' unfettered support of her through raises and promotions utterly refute these unfounded allegations.

## DISCUSSION

## 1.    Claimant's Charge Is Untimely

Claimant's October 16, 2006 EEOC filing date renders any claims premised on acts which occurred prior to December 21, 2005 untimely under Title VII, i.e., all of Claimant's allegations regarding alleged harassment and racially derogatory comments in 2005 are time-barred.    42 U.S.C. § 2000e-5(e) (1) (2000); Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74 (2d Cir. 2003) (Title VII claims must be filed with the appropriate administrative agency within 300 days).  Claimant concedes that she was aware of alleged disparate treatment as early as February 2005 yet she failed to file her Charge until over twenty months later.  Her claims are therefore time barred. Riedinger v. D'Amicantino, et al., 974 F. Supp. 322 (SDNY 1997).

Claimant attempts to avoid the untimeliness of her claims with her assertion that the discrimination is "continuing" and that the Hospital had a pattern and practice of terminating older female employees.  The Hospital's employee statistics show that over 60% of its employee population is within the protected age group and over 64% are female.  Conclusory claims such as these are legally insufficient to avoid the statutes of limitations. Bembry v. Darrow, 97 F. Supp. 2d 281, 288 (N.D.N.Y. 2000);Ghosh v. New York Univ. Med. Ctr., 576 F. Supp. 86, 93 n.24 (S.D.N.Y. 1983) (simply "cit[ing] a number of instances in which [plaintiff] was allegedly discriminatorily treated" will not suffice to salvage untimely claims); Boxill v. Brooklyn College, 115 Fed. Appx. 516, 517 (2d Cir. 2004) (affirming summary judgment where there was no evidence of a specific discriminatory policy or program); Samuel v. Merrill Lynch Pierce Fenner & Smith, 771 F. Supp. 47, 49 (S.D.N.Y. 1991) (finding no policy of discrimination where plaintiff merely alleged specific unrelated instances of discrimination).

## 2.    Claimant's Conclusory Allegations Are Insufficient
## To Prove A Discrimination Claim As A Matter Of Law

Claimant has failed to identify any qualifying discriminatory act under Title VII. Claimant's claims are deficient because she has not identified how she was discriminated against because of her age, race, or gender, and her vague, conclusory, inaccurate, and inconsistent allegations are insufficient to establish a disparate treatment claim. See Johnson v. Lord & Taylor, 25 A.D.3d 435; 807 N.Y.S.2d 367 (1st Dep't 2006) (conclusory allegations of disparate treatment are insufficient to state a claim); Chan v. NYU Downtown Hospital, 2005 U.S. Dist. LEXIS 40243 (S.D.N.Y. Feb. 14, 2006) (same); Lloyd v. WABC-TV, 879 F. Supp. 394 (S.D.N.Y. 1995) (finding no inference of discrimination where, inter alia, plaintiff had received good performance evaluations); Carey v. Reed Elsevier, Inc, 1998 U.S. Dist. LEXIS 6834, at 14 (S.D.N.Y. 1998) (isolated, hearsay comments are insufficient to prove a discrimination).

4

Claimant's failure to identify any similarly situated younger and non-black male employees who were treated differently than her is fatal to her claim. <u>Washington County v. N.Y. State Div. of Human Rights</u>, 7 A.D. 3d 895, 896 (3d Dept. 2004) (no inference of discrimination arises where plaintiff could not demonstrate that similarly situated male employees benefited from terms and conditions of employment which were denied her); <u>Arendt v. GE</u>, 305 A.D. 2d 762 (3d Dept. 2003) (proof offered showed plaintiff was treated no differently in comparison to similarly situated peers and this negated inference of age discrimination).

### 3.    The Hospital's Legitimate Basis For Its Employment Decision And Its Employee Demographics Negate Any Inference Of Discrimination

Claimant's documented violation of the Hospital's telephone policy establishes that the Hospital had a legitimate, nondiscriminatory business reason to terminate her employment. The overwhelming evidentiary record in this regard negates any inference of discrimination. <u>See</u> <u>Scaria v. Rubin</u>, 117 F.3d 652 (2d Cir. 1997) (court does not sit as super-personnel department that reexamines business decisions). Further, the Hospital's employee statistics and the timing of Claimant's complaint of discrimination negate any inference of discrimination. <u>Noyer v. Viacom, Inc.</u>, 1998 WL 774606, *6 (S.D.N.Y. 1998), <u>citing</u> <u>Morrissey v. Symbol Technologies, Inc.</u>, 910 F. Supp. 117, 121 (E.D.N.Y. 1996) ("[A]n overall employee composition and record of non-discrimination strongly negates any claim of a climate of discrimination"); <u>Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.</u>, 2005 U.S. Dist. LEXIS 12582 (E.D.N.Y. 2005) (statistical evidence precluded finding of discrimination); <u>Bryant v. Begin Manage Program</u>, 281 F. Supp. 2d 561, 573 (E.D.N.Y. 2003) (no inference of discrimination where Claimant's first complaint regarding the alleged discrimination was not until after she discovered she was being terminated); <u>Luxenberg v. Guardian Life Ins. Co.</u>, 2004 U.S. Dist. LEXIS 3121 *17-18 (S.D.N.Y. Mar. 2, 2004) (no inference of discrimination where the adverse employment action began before Claimant filed a complaint of discrimination, even where Claimant was subsequently terminated).

### CONCLUSION

In summary, Claimant's Charge is premised on nothing more than her dissatisfaction with being appropriately disciplined for her egregious unauthorized use of the Hospital's telephone. This is not a claim about discrimination; the Hospital's statistics, along with its uniform implementation of its policies and Claimant's employment history, preclude such a finding. The statistical evidence is clear; the Hospital proudly maintains a rich and diverse employee population. Accordingly, for the foregoing reasons, the Hospital respectfully requests that the Commission dismiss this Charge in its entirety.

2607171.1

Dated:        New York, New York
              January 18, 2007

                                    YOURS, etc.,

                                    WILSON, ELSER, MOSKOWITZ,
                                    EDELMAN & DICKER LLP

                          By:       _____
                                    Ricki E. Roer
                                    Nancy V. Wright
                                    Attorneys for Respondents
                                    **BRONX LEBANON HOSPITAL
                                    CENTER**
                                    150 East 42nd Street
                                    New York, New York 10017-5639
                                    (212) 490-3000
                                    File No.: 08981.00035

cc:     Pearline Liburd
        c/o Gregory Smith, Esq.
        225 Broadway, Suite 3901
        New York, New York 10007

6

# EXHIBIT A

# THE BRONX-LEBANON HOSPITAL

# HUMAN RESOURCES

| |
|---|
| **Manual Code: HR - 100 - A**<br>**Page No:  1    of    2**<br>**Function: Human Resources** |

| |
|---|
| **TITLE:    GENERAL STATEMENT OF POLICY** |
| **ISSUED BY: DIVISION OF HUMAN RESOURCES** |
| **EFFECTIVE DATE: 10/4/82** **LAST REVIEW DATE:  3-06-06** |
| **DISTRIBUTION:   All Authorized Manual Holders   (see Policy HR - 110 - A)** |

**POLICY:**   It is the policy of the Bronx-Lebanon Hospital Center to recognize the importance of each employee to the successful operation of the Hospital. To promote this end, the Board of Trustees declares that The Bronx-Lebanon Hospital Center will:

- provide equal employment opportunity at its facilities to all individuals without unlawful discrimination as to *race, creed, color, national origin, sex, age, disability, marital status, sexual orientation, or citizenship status* in all employment decisions, including but not limited to recruitment, hiring, compensation, training and apprenticeship, promotion, upgrading, demotion, downgrading, transfer, lay-off and termination, and all other terms and conditions of employment.

- promote from within wherever possible and offer opportunities to qualify for promotion

- maintain a competent and skilled staff

- maintain fair salary levels

- provide a clean, healthy, and safe place to work, including making accommodations in the workplace which permit the disabled to function as employees

**GENERAL STATEMENT OF POLICY**
**HR-100-A**
**Page 2**

- provide steady employment so far as practical

- provide such other benefits as are in line with current practices and business conditions

- discuss with employees matters of interest or concern to them

- inform employees of developments in the Hospital which affect them

- expect each employee to show a genuine interest in his/her job and to be productive each day

- insist on its right to manage its own affairs, but shall be willing to negotiate with recognized bargaining groups and abide by the terms of labor contracts to which it is a party

Nothing contained in this manual is intended to create an employment contract between the Hospital and any employee, either for employment or regarding any particular term or condition of employment. No Executive, Director, Manager, or Supervisor of the Hospital, other than the President, has any authority to enter into any agreement with an employee for employment for any specified period of time, or to make any agreement contrary to the foregoing or altering the employment at will relationship in any manner.

# THE BRONX-LEBANON HOSPITAL

## HUMAN RESOURCES

| | |
|---|---|
| **Manual Code:** HR-700-G | |
| **Page No:** 1 of 2 | |
| **Function:** Human Resources | |

| | |
|---|---|
| **TITLE:** EQUAL EMPLOYMENT OPPORTUNITY POLICY STATEMENT | |
| **ISSUED BY:** DIVISION OF HUMAN RESOURCES | |
| **EFFECTIVE DATE:** 2/1/80 | **LAST REVIEW DATE:** 7/30/04 |
| **DISTRIBUTION:** All Authorized Manual Holders (see Policy HR - 110 - A) | |

**INTENT:** It is the Bronx-Lebanon Hospital Center's legal obligation and duty to the community it serves to with comply with all equal employment opportunity laws.

**POLICY:** The administration of the Bronx-Lebanon Hospital Center reaffirms its commitment to provide equal opportunity at its facilities to all employees and applicants for employment without regard to race, creed, color, national origin, gender, age, disability, status as a disabled veteran or veteran of the Vietnam era, sexual orientation, citizenship status, or marital status. Employees, agents, and contractors are prohibited from discriminating against persons having or suspected of having HIV infection. The Center will take affirmative action to ensure the fulfillment of this policy.

**RESPONSIBILITIES:**

A. The Bronx-Lebanon Hospital Center's equal employment opportunity commitment refers to recruitment, advertising, and/or offers of employment; hiring, placement, promotion, demotion, and transferring of employees; rates of pay and other forms of compensation; layoff and recall and/or termination of employees; and all other terms and conditions of employment and personnel action.

B. The objective of the Bronx-Lebanon Hospital Center is to employ and promote individuals qualified and/or trainable for its positions of employment by virtue of job-related standards of education, training, experiences, and personal

EQUAL EMPLOYMENT OPPORTUNITY
POLICY STATEMENT
HR-700-G
Page 2

capabilities.  Decisions will be made so as to
further the principle of equal employment
opportunity.  The procedures of the Human
Resources Division will be periodically reviewed to
ensure continued compliance with that principle.

C.    The Assistant Vice President of Human Resources
will have overall responsibility for the
establishment, development, implementation, and
monitoring of the equal employment program.  The
Assistant Vice President of Human Resources  will
report directly to the Vice President of Human
Resources.

# THE BRONX-LEBANON HOSPITAL

## HUMAN RESOURCES

| | |
|---|---|
| **Manual Code: HR-710-G** | |
| **Page No: 1 of 2** | |
| **Function: Human Resources** | |

| | |
|---|---|
| **TITLE:      DISCRIMINATION COMPLAINTS** | |
| **ISSUED BY:      DIVISION OF HUMAN RESOURCES** | |
| **EFFECTIVE DATE: 8/8/80** | **LAST REVIEW DATE:   7/30/04** |
| **DISTRIBUTION:      All Authorized Manual Holders    (see Policy HR - 110 - A)** | |

**INTENT:**   In its commitment to equal employment opportunity, the Bronx-Lebanon Hospital Center provides employees with a means to express concerns when they feel discriminated against and an internal complaint procedure to have those concerns objectively heard and corrective action taken when appropriate or necessary.

**POLICY:**   Bronx-Lebanon Hospital Center has a discrimination complaint mechanism available to all employees, union and nonunion.  The Bronx-Lebanon Hospital Center's Assistant Vice President of Human Resources or designee is responsible for reviewing, investigating, and resolving any employee complaint of unfair treatment due to race, color, national origin, citizenship status, gender, age, disability, status as a disabled veteran or veteran of the Vietnam era, sexual orientation, or marital status.  The claim of unfair treatment must relate to employment, i.e., transfer promotion, training, demotion, discharge, benefits, lay-off, recall, harassment intermediation or job assignment., etc.

It is the right and responsibility of all employees to report possible discriminatory situations.

**PROCEDURE:**   A.   Complaint Intake Forms (Exhibit 710-1) are available in the Human Resources Division.

B.   Completed forms should be returned to the Assistant Vice President of Human Resources or the Director of Labor Relations.

C.   Complainant will be contacted to discuss complaint in detail.

DISCRIMINATION COMPLAINTS
HR-710-G
Page 2

D.     All complaints submitted will be maintained in confidence.

E.     Complaint will be investigated.

F.     If necessary, all interested parties will meet to try to resolve the problem.

G.     Written resolution of the problem will be given all parties.

H.     Any decision of the Director of Labor Relations or designee can be appealed to the Assistant Vice President of Human Resources.

If the complainant is not satisfied with the resolution, he/she can file a formal complaint with the established City, State or Federal Human Rights agencies.

Exhibit 710 - 1

## BRONX-LEBANON HOSPITAL CENTER

## COMPLAINT INTAKE FORM

Name: _____ Title: _____ Non-Union: _____

Department: _____ Division: _____ Local 1199: _____

Employment Date: _____ SNA: _____

Home Address: _____ Local 32BJ: _____

Business Telephone Number: (____)_____ Residence Telephone Number:(____)_____

**Discrimination Due to:**

| | | | | | |
|---|---|---|---|---|---|
| Race | _____ | Sex | _____ | Age | _____ |
| Sexual Orientation: | _____ | National Origin | _____ | Disability | _____ |
| Marital Status | _____ | Color | _____ | Religion | _____ |
| Veteran of Vietnam Era | _____ | Disabled Veteran | _____ | Citizenship Status | _____ |

**Nature of Discrimination:**

| | | | | | |
|---|---|---|---|---|---|
| Demotion | _____ | Benefits | _____ | Harassment | _____ |
| Discharge | _____ | Job Assignment | _____ | Intimidation | _____ |
| Layoff | _____ | Promotion | _____ | Terms/Conditions | _____ |
| Recall | _____ | Training | _____ | Unfair Treatment | _____ |
| Transfer | _____ | Compensation | _____ | Other | _____ |

Have you filed with an outside agency? _____ If so, which? _____

Do you have a union grievance on this complaint? _____

Complaint's Signature _____ Date: _____

EEO Coordinator: _____ Date Received: _____

**Your confidentiality will be protected to the extend possible. Retaliation due to filing this complaint is against the law. The filing of this complaint in no way limits or denies you the opportunity of seeking relief through any external agencies.**

**'t is your right and responsibility to report possible discriminatory situations.**

Persons who have allegedly discriminated against complainant: _____

_____

_____

_____

_____

_____


Explanation of Charges: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

# EXHIBIT B



# BRONX-LEBANON
## HOSPITAL CENTER

### <u>ANNUAL MANDATORY EDUCATION ACKNOWLEDGEMENT FORM</u>

I have received a copy of the Bronx-Lebanon Hospital Center Mandatory Education package and have reviewed the following topics with my supervisor/ Manager or through a self-directed review.

> Mission, Vision, Values
> Advance Directives
> Age Related Competencies
> Chaplain Services
> Corporate Compliance
> Cultural Diversity
> Employee Health Services
> Employee Responsibilities
> Environment of Care/Safety
> HIPAA
> Infection Control
> Language Bank
> Patients' rights/relations
> Patient Safety Goals
> Performance Improvement
> Reporting Child Abuse/Neglect
> Reporting Professional Misconduct
> Risk Management
> Sexual Harassment
> Team Work
> Workplace Violence

After you finish reading this booklet, please complete the form below and give it to your supervisor/manager to send to Human Resources for your personnel file. Thank you.

### <u>PLEASE PRINT</u>

Last Name _LIBURD_   First Name _PEARLINE_

Your signature _Pearline Liburd_

Job Title _PROGRAM DIRECTOR_ Dept. _HARM REDUCTION_

Name of Supervisor/Manager _RAYMOND ESTEVES_

**Affiliated with Albert Einstein College of Medicine**

Human Resource Division
1780 Grand Concourse, 2nd Floor
Bronx, New York 10457
Phone: (718) 466-8501

_12-28-04_

I:\HR\Training\ANNUAL MANDATORY\2003 ANNUAL MANDATORY EDUCATION ACKNOWLEDGEMENT FORM.doc

# ACKNOWLEDGMENT OF SEXUAL HARASSMENT TRAINING

I acknowledge that on _____Dec 27th,_____, 2000 I attended a sexual harassment sensitivity training, and I understand that:

1. I have the right to work in an environment free from sexual harassment;

2. I have the responsibility not to engage in behaviors that constitute sexual harassment.

3. If I feel I am being harassed, I have the right and responsibility to communicate this directly to the appropriate party; and

4. I understand my organization's policy on sexual harassment.


_____Pearline  Liburd_____
**Signature**


_____PEARLINE    LIBURD_____
**Please print your name above**


_____Dec 27th, 2000_____
**Date**

# BRONX LEBANON SPECIAL CARE CENTER

## SUMMARY OF EDUCATIONAL PROGRAMS ATTENDED IN 19 92

NAME: _Lburd, Pearline_

TITLE: _Social Worker_

DATE: _9/28/92_

| PROGRAM TITLE | SPEAKER AND/OR SPONSORING ORGANIZATION | DATE ATTENDED | SIGNATURE |
|---|---|---|---|
| Residents Rights | Geraldine Joshua | 9/28/92 | P. Lburd |
| Resident Abuse Reporting | Mrs. Fitzpatrick | 9/28/92 | P. Lburd |
| Personnel Policies | Mr. Martinez | 9/28/92 | P. Lburd |
| Needs of the Elderly | Mrs. F. Page | 9/28/92 | P. Lburd |
|  | Mrs. Thompson / Mother | 9/28/92 | P. Lburd |
| Infection Control | Dr. Cody | 9/28/92 | P. Lburd |
| Care and Treatment of Residents with AIDS | Mrs. F. Page | 9/28/92 | P. Lburd |
| Fire and Safety | Mrs. F. Page | 9/28/92 | P. Lburd |
| Accident Prevention | Mrs. Thompson | 9/28/92 | P. Lburd |
| Restraints | Mrs. F. Page | 9/28/92 | P. Lburd |



SPECIAL CARE CENTER, INC

<u>PLEASE PRINT</u>

NAME _Pauline O. Libund_

POSITION _Rec Work Asst_

DEPARTMENT _Rec. Service_

This acknowledges, that I _Pauline O. Libund_

have been given material to read prior to attending the New

Employee Orientation Meeting. This material includes information

regarding the following:

- ◆   Employee Handbook
- ◆   Holiday Schedule
- ◆   Guest Relations (Communicating with Residents & Workers)
- ◆   Fire and Safety Procedures
- ◆   Residents' Bill of Rights
- ◆   Infection Control (Hand Washing Techniques)
- ◆   Total Quality Management
- ◆   Language Bank

Please bring this package with you to the New Employee Orientation
meeting.

x_Pearline Libund_

Employee Signature

x _9/29/92_
Date

**Affiliated with**
**Bronx-Lebanon Hospital Cente**

1276 Fulton Avenue
Bronx, New York 10456
Phone (212) 901-8736

# EXHIBIT C

Date: _10/20/94_____

Dear _____ :

In consideration of employment I, PEARLINE LIBURD agree to the rules and regulations of the Bronx-Lebanon Hospital Center, (the Center) and acknowledge that my employment and compensation can be terminated for any or no reason, with or without cause, and with or without notice, at any time, at the option of either the Center or myself.

I understand and acknowledge that no policy or procedure published by the Center constitutes a contract and that the Center may, in its sole discretion, alter such policies or procedures.

I understand that all references to benefits are examples of, and are subordinate to, the various Insurance Certificates, Master Group Contracts and applicable Standard Operating Instructions. I understand and agree that the Center shall have the sole and unequivocal right to change, alter, modify, improve and/or decrease benefits or to alter the plans from non-contributory to contributory at any time.

Further, I understand and acknowledge the Center's sole and unequivocal right to change any employee's work schedule, shift and/or work station at any time, with or without notice, at any time, with or without notice, at the Center's sole discretion.

I understand that no employee, manager or other agent of the Center, other than the President of the Center, has any authority to enter into any agreement for employment for any specified period of time or to make any agreement, promise, or commitment, contrary to the forgoing. Any amendment to the foregoing shall not be enforceable unless it is in writing and signed by the President.

I have read and received the original of the foregoing and the orientation summary on the reverse side.

___10/20/94_____
Date

X _Pearline Liburd_____        _Denise Conley_____
Employee Signature                 Human Resources Division Witness


Accepted as an At-Will Employee
BRONX-LEBANON HOSPITAL CENTER

_____
Director of Staff Recruitment

☐ 1090 Grand Concourse, Bronx, NY 10457

| 002 | SOCIAL SECURITY NO. (CHANGES ONLY) |

**EFFECTIVE DATE**

| DATE | DAY | E/F |
|------|-----|-----|
| 0 2 | 0 3 | 9 7 |

HIRE  REHIRE  TERMINATE  X  REINSTATE  INACTIVATE

| 04 | NAME CHANGE | | 005 | PRINTING DATE | | 006 |

| 25 | | | 007 | | STREET |

| 08 | | CITY | 010 | 011 | 012 | | 016 | |

| 76 | DEPT | 226 | 218 | 219 | 223 |

## EMPLOYMENT INFORMATION

| 029 | 040 | 211 | 154 | 039 | 027 | 212 | 021 | 152 | 019 | 024 |

694

| 079 | 314 | | 314 | 214 | | 207 | | | 380 | 377 |

31,868

| 081 | 023 | 028 | 050 | 051 | 387 | 034 | 060 | 067 |

| 20 | 043 | 068 | 075 | 081 | 052 | 093 | 315 | 316 |

| 00 | 304 | 305 | 037 | 368 | 131 |

## SALARY CHANGE

| 47 | 048 | 049 | 067 |

020397  C  27475

## BENEFIT TIME

| 092 |

| 99 | 303 | 132 | 101 | 142 |

020397  020397

## MISCELLANEOUS INFORMATION

| 21 | 222 | 234 | 236 | 309 |

| 44 | | | | 246 |

PROCESSED

| 94 | MAE | 266 | JOB PREF | 267 | SFT PREF | 289 | PROP APPR |

| 75 | DISC OCC | 276 | SEVERITY | 277 | DISC OCC | 278 | SEVERITY | 279 | DISC OCC | 280 | SEVERITY | 281 | DISC OCC | 282 | SEVERITY |
| MONTH | YR | | | MONTH | YR | | | MONTH | YR | | | MONTH | YR |

## TERMINATION / LOA / REHIRE

| 30 | TERMINATION DATE | 031 CAUSE | 032 SPONS | 033 REHIRE | 149 LOA | 150 | DATE OF LOA | 375 | DATE RETURN LOA |

VC
2/7/97

**COMMENTS**

Employee is being upgraded from Administrative Director to Project Administrator with a salary adjustment from $50,000 to $58,000. This position is 100% grant funded.

GRANTS MANAGEMENT APPROVED

B  1/29/97  DATE

| EFFECTIVE ON | FTE HRS | DATE |

| ANNUAL/WEEKLY SALARY | Martin Gold |
| FROM 50,000 | TO 58,000 |

M Stuart  1/23/97  HUMAN RESOURCES  2/10/97
2/10/97

| | | | | | | | 002 SOCIAL SECURITY NO. (CHANGES ONLY) |
|---|---|---|---|---|---|---|---|

**EFFECTIVE DATE**

| MONTH | DAY | YEAR | ☒ NEW HIRE | ☒ REHIRE | TERMINATE | CHANGE | INACTIVE |
|---|---|---|---|---|---|---|---|
| 0 0 | 2 4 | 9 4 | | | | | |

| 4 LAST NAME | 005 FIRST NAME | 006 MI |
|---|---|---|
| LIBURD | PEARLINE | |

| 6 MAIDEN NAME | 007 STREET ADDRESS |
|---|---|
| | 8 FORDHAM HILL OVAL |

| 8 CITY | 010 ST | 031 ZIP CODE | 012 TELEPHONE | 016 EMERGENCY TELE. |
|---|---|---|---|---|
| BRONX | NY | 10468 | 7189335849 | 7186011776 |

| 6 EMERGENCY CONTACT | 226 BIRTHDATE | 218 SEX | 219 EEOC | 223 MS | 306 MISC |
|---|---|---|---|---|---|
| BERNICE LIBURD | 04/24 | F | B | S | 102495 |

**EMPLOYMENT INFORMATION** 206

| 9 DATE OF HIRE | 040 DIV | 211 DEPT | 154 EXP | 039 LOC | 027 WORK AREA | 021 F/P | 152 Sched Hrs | 019 E/S | 024 SFT |
|---|---|---|---|---|---|---|---|---|---|
| 02494 | 07 | 748 | 402 | 700 | 700 | F | 70 | E | |

| 9 UN | 314 UNION NAME | 314 UNION DATE | 214 HRLY BASE RATE | 087 PROFESSIONAL REGISTRATION NO | 380 ST | 377 T/P |
|---|---|---|---|---|---|---|
| | | | 25.747 | | | P |

| 1 EXPIR DATE | 023 PRVST | 028 JB CLASS | 050 STEP | 051 GRADE | 387 FMC | 034 FHE | 060 FTC | 067 ADD. FED. WITH |
|---|---|---|---|---|---|---|---|---|
| | | 01 | | | 8 | 08 | | |

| 05 MY2 | 043 SNE | 068 STC | 076 ADD ST. WITH | 081 CTY | 082 FICA | 083 VAC CAT | 315 REC SC. | 316 REF CK. |
|---|---|---|---|---|---|---|---|---|
| 5 | 08 | NY | | | | 8 | P | Y |

| 0 RETIRE PLAN DATE | 304 LIF | 305 LTD LIF | | 037 LIFE INS. CERT NO | 368 LIFE INS. STAT | 131 NURSES BASE SAL |
|---|---|---|---|---|---|---|
| | | | 303 4961 | | | |

**SALARY CHANGE** · **BENEFIT TIME**

| 7 EFF. DATE SAL. INC | 048 PAY CH. RSN | 049 PRIOR HRS/PTS | 087 LAST YR VAC | 092 CURRENT YR. VAC |
|---|---|---|---|---|
| | | | | |

| 9 PERFORMANCE | 303 PROMOTION DATE | 132 DATE IN JOB | 101 SICK SIC | 142 HOL BAL-PRIOR |
|---|---|---|---|---|
| | | 102494 | | |

**MISCELLANEOUS INFORMATION**

| 11 VISA NUMBER | 222 VISA TERM DATE | 234 FREE EMP. MED. DT | 236 ANNUAL MED DT | 243 ED. | 309 INTROD DATE |
|---|---|---|---|---|---|
| | | | | | |

| 4 NAME OF COLLEGE | MISCELLANEOUS | 246 DEGREE |
|---|---|---|
| | | |

| 4 HRS | 266 JOB PREF | 267 SFT PREF | 289 PROF AFFIL |
|---|---|---|---|
| | | | |

| 5 DISC OCC1 MONTH YR | 276 SEVERITY | 277 DISC OCC2 MONTH YR | 278 SEVERITY | 279 DISC OCC3 MONTH YR | 280 SEVERITY | 281 DISC OCC4 MONTH YR | 282 SEVERITY |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**TERMINATION / LOA / REHIRE**

| 10 TERMINATION DATE | 033 CAUSE | 032 MORE | 003 REHIRE | 149 LOA | 150 DATE OF LOA | 375 DATE RETURN LOA |
|---|---|---|---|---|---|---|
| | | | | | | |

COMMENTS

Re-Hire

104 in File

Proj Dr Coord.

| ANNUAL/WEEKLY SALARY | | DEPT. HEAD | DATE | HUMAN RESOURCES | DATE |
|---|---|---|---|---|---|
| FROM    TO 46,000 | | | | | |
| | | EXECUTIVE | DATE | FINANCE | DATE 11/1/94 |

101-R 3/86

| | | | | | | |
|---|---|---|---|---|---|---|

**EFFECTIVE DATE**

| MONTH | DAY | YEAR |
|---|---|---|
| 0 5 | 1 2 | 0 6 |

☐ 1650 Grand Concourse, Bronx, NY 10457

**602** SOCIAL SECURITY NO. (CHANGES ONLY)

☐ NEW HIRE  ☐ REHIRE  ☑ TERMINATE  ☐ CHANGE  ☐ INACTIVE

| LAST NAME | **005** FIRST NAME | **006** MI |
|---|---|---|

| MAIDEN NAME | **007** STREET ADDRESS |
|---|---|

| CITY | **010** ST | **011** ZIP CODE | **012** TELEPHONE | **016** EMERGENCY TELE. |
|---|---|---|---|---|

| EMERGENCY CONTACT | **226** BIRTHDATE | **218** SEX | **219** EEOC | **223** MS | MISC. |
|---|---|---|---|---|---|

## EMPLOYMENT INFORMATION

| DATE OF HIRE | **040** DIV | **211** DEPT. | **154** EXP. | **039** LOC. | **027** WORK AREA | **212** POS. | **021** F/P | **152** SCHED HRS | **019** E/S | **024** SFT |
|---|---|---|---|---|---|---|---|---|---|---|

| UN | **314** UNION NAME | **314** UNION DATE | **214** HRLY BASE RATE | **287** PROFESSIONAL REGISTRATION NO. | **386** ST | **377** T/P |
|---|---|---|---|---|---|---|

| EXPIR DATE | **023** MUST | **028** JB CLASS | **059** STEP | **051** GRADE | **387** FMC | **034** FNE | **060** FTC | **067** ADD. FED. WITH |
|---|---|---|---|---|---|---|---|---|

| SMC | **043** SNE | **068** STC | **075** ADD. ST. WITH | **081** CTC | **052** FICA | **093** VAC CAT | **315** REC SC | **316** REF CK. |
|---|---|---|---|---|---|---|---|---|

| RETIRE PLAN DATE | **304** LIP | **305** LTD I.P. | **637** LIFE INS. CERT NO. | **388** LIFE INS. AMT. | **131** NURSES BASE SAL. |
|---|---|---|---|---|---|

## SALARY CHANGE   BENEFIT TIME

| EFF. DATE SAL. INC. | **048** PAY CH. RSN | **049** PRIOR PAY RATE | **087** LAST YR. VAC. | **092** CURRENT YR. VAC. |
|---|---|---|---|---|

| PERFORMANCE | **303** PROMOTION DATE | **132** DATE ON JOB | **091** SICK BAL. | **142** HOL. BALANCE |
|---|---|---|---|---|

*RECEIVED MAY 15 2006 WAGE & SALARY*

## MISCELLANEOUS INFORMATION

| VISA NUMBER | **222** VISA TERM DATE | MED. DATE | **236** ANNUAL. MED. DT. | **243** ED | **309** INTROD. DATE |
|---|---|---|---|---|---|

| NAME OF COLLEGE | MISCELLANEOUS | **246** DEGREE |
|---|---|---|

| MRS. | **266** JOB PREF | **267** SFT PREF | **289** PROF AFFIL. |
|---|---|---|---|

| DISC OCC 1 | **276** SEVERITY | **277** DISC OCC 2 | **278** SEVERITY | **279** DISC OCC 3 | **280** SEVERITY | **281** DISC OCC 4 | **282** SEVERITY |
|---|---|---|---|---|---|---|---|
| MONTH YEAR | | MONTH YEAR | | MONTH YEAR | | MONTH YEAR | |

## TERMINATION / LOA / REHIRE

| TERMINATION DATE | **031** CAUSE | **032** CIRCUM | **033** REHIRE | **149** LOA | **150** DATE OF LOA | **375** DATE RETURN LOA |
|---|---|---|---|---|---|---|

COMMENTS

*Terminated eff 5/12/06*

*Misconduct*

| ECTIVE ON | FTE HOURS | | |
|---|---|---|---|
| NUAL / WEEKLY SALARY | | DEPT HEAD *R. Alvra* | DATE *7/15/06* | HUMAN RESOURCES | DATE |
| OM | TO | EXECUTIVE | DATE | FINANCE | DATE |



BRONX-LEBANON
HOSPITAL CENTER

**MEMORANDUM**

To:     Wanda Rodriguez
        Ass't Payroll Manager

From:   Elaine Ortiz
        Human Resources Associate II

Date:   _May 16, 2006_

RE:     **FINAL PAYROLL CHECK**

Please be advised that the following employee resigned or will be terminated effective
_____5/12/06_____. We ask that you please promptly prepare a final
payroll check for any money that we may owe the employee.

        Request # _0631_

        Name _Liburd Pearline_

        Emp. ID # _100782_

Thank you for your cooperation and immediate attention regarding this request.

Cc:File
Attachment(s)

1660 Grand Concourse, Bronx, NY 10457

**EFFECTIVE DATE**

| MONTH | DAY | YEAR |
|-------|-----|------|
| 0  3  | 0  1 | 0  2 |

NEW HIRE ☐   REHIRE ☐   TERMINATE ☐   CHANGE ✓   INACTIVE ☐

002 SOCIAL SECURITY NO. (CHANGES ONLY)

004 **LAST NAME**: ...IBURD

005 **FIRST NAME**: PERLINE

006 MI

025 MAIDEN NAME

007 STREET ADDRESS

008 CITY   010 ST   011 ZIP CODE   012 TELEPHONE   016 EMERGENCY TELE

076 EMERGENCY CONTACT   226 BIRTHDATE   218 SEX   219 EEOC   223 MS   MISC

## EMPLOYMENT INFORMATION

29 DATE OF HIRE   040 DIV   211 DEPT   154 EXP   039 LOC   027 WORK AREA   212 PCS   021 F/P   152 Sched Pmt   019 E/S   024 SFT

79 UN   314 UNION NAME   314 UNION DATE   314 HRLY BASE RATE **34505**   287 PROFESSIONAL REGISTRATION NO.   380 ST   377 T/P

81 EXPIR DATE   023 PR/ST   028 JB CLASS   050 STEP   051 GRADE   387 ST   1099/02   087 ADD. FED. WITH.

20 SMC   043 SNE   066 STC   075 ADD. ST. WITH.   081 CTC   052   315 REC SC.   316 REF CK.

86 RETIRE PLAN DATE   304 LIP   305 LTD I.P.   037 LIFE INS. CERT NO.   368 LIFE INS. AMT.   131 NURSES BASE SAL.

*PROCESSED* (stamp)   DN 8/6/02

## SALARY CHANGE

47 EFF. DATE SAL. INC. )30/02   048 PAY CH./RSN D   049 PRIOR PAY RATE 31,868

## BENEFIT TIME

087 LAST YR. VAC.   092 CURRENT YR. VAC.

69 PERFORMANCE   303 PROMOTION DATE   132 DATE ON JOB   101 SICK BAL.   142 HOL. BALANCE

## MISCELLANEOUS INFORMATION

41 VISA NUMBER   222 VISA TERM DATE   234 PREEMP. MED. DATE   235 ANNUAL MED. DT.   243 ED   309 INTROD. DATE

44 NAME OF COLLEGE   MISCELLANEOUS   246 DEGREE

44 MRS.   266 JOB PREF   267 SFT PREF   268 PROF AFFIL

5 DISC OCC 1   276 SEVERITY   277 DISC OCC 2   278 SEVERITY   279 DISC OCC 3   280 SEVERITY   281 DISC OCC 4   282 SEVERITY
MONTH  YEAR   MONTH  YEAR   MONTH  YEAR   MONTH  YEAR

## TERMINATION / LOA / REHIRE

6 TERMINATION DATE   031 CAUSE   032 SRCGM   023 REHIRE   149 LOA   150 DATE OF LOA   375 DATE RETURN LOA   ✓

OMMENTS

*Salary increase to $62,800 was previously granted approved (see attached).*

APPROVED ___ 8/7/02
ELHC GRANTS & CONTRACTS

RECEIVED AUG 14 2002 (stamp)

---

FECTIVE ON   FTE HOURS

INUAL/WEEKLY SALARY   57,999.76 to 62,800

| DEPT HEAD R. Esteves | DATE 7/31/02 | HUMAN RESOURCES Hayes | DATE 8/6/02 |
|---|---|---|---|
| EXECUTIVE | | FINANCE | DATE |

OM
101-R 3/86



# BRONX-LEBANON
HOSPITAL CENTER

## Department of Psychiatry

July 31, 2002

To:     Vincent DeCosta, Financial Analyst
        Grants Management

        Abur Khan, Accountant
        Grants Management

From:   Raymond Esteves
        Administrative Director

Subject:        Salary increase for Perline Liburd, Program Administrator for Harm Reduction
Program

As per previous memorandum from Diane Strom, Dr. Levine and I concur with the
recommendation that Ms. Liburd receive a salary increase to $62,800 effective retroactive to the
date of the current grant contract, which is 3/1/02.  Please expedite as soon as possible as the
previous memorandum was sent 4/10/02 (see attached).

Thank you.

cc:     Jeffrey M. Levine, M.D., Chairman, Department of Psychiatry
        Perline Liburd, M.H.A., Program Administrator, Harm Reduction Program



**Affiliated with Albert Einstein
College of Medicine**

1276 Fulton Avenue
Bronx, New York 10456
Phone (718) 590-1800

# MEMO

April 10, 2002

To:    Pearline Liburd, Program Administrator
Harm Reduction

From:  Diane Pincus Strom, Administrative Director
Department of Medicine/AIDS Program

Re:    Salary Adjustment

////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

    This comes to inform you that you have been approved by Human Resources to receive a salary increase. Your annual salary will change from $58,000 to $62,800. This adjustment is effective retroactive to the date of your current grant contract, i.e. 3/1/02.

    Abdur Khan of Grant Accounting informs me that your current budget does not have this amount budgeted in your salary line. Nevertheless, as soon as the current approved contract is received from MHRA, Mr. Khan has agreed to work with you on a budget modification that will make these funds available retroactive to the beginning of the contract year.

    Please be aware that any future salary issues may be brought to the attention of Raymond Esteves, Administrative Director, Department of Psychiatry, who will be taking over administration of the Harm Reduction Program effective 5/1/02. Questions regarding this current salary increase may be directed to Jasen Nhambiu, Labor Relations, Human Resources Department.

Cc:    Jasen Nhambiu
Raymond Esteves
Abdur Khan
Vincent D'Costa
Stephen Schultz, MD
Edward Telzak, MD



# EXHIBIT D

To:        Dr. Levine
           Chairman Psychiatry Department

From:      P. Liburd
           Program Director
           Harm Reduction Program

Date:      Oct. 18, 2005

Re:        Mr. Ray Esteves

On September 13, 2005, I was summoned to Mr. Esteves' office, Dr. Evdokas was present. Mr. Esteves verbally abused me, re: a travel form I had sent him to sign, to enable me to attend a conference. Mr. Esteves was extremely abusive, condescending and insulting. He told me he would not sign the form, since I did not request his permission to go to the conference. Mr. Esteves stated at the meeting that he wanted information about the conference and the organization. I provided it to Dr. Evdokas. He refuses to sign as of this date. The conference will start on October 26th.

The conference which is sponsored in part by Stony Brook University, is on Counseling & Treating People of Colour, which is the Black and Hispanic population that the Harm-Reduction Program and Bronx-Lebanon Hospital Center serves.

On September 14, 2005, I returned to the 4th floor in Psychiatry to return the legibility signed sheet Dr. Evdokas had given me on the 13th. As I waited my turn to give the forms to Elizabeth, I clearly heard Mr. Esteves giving Dr. Evdokas directives of how to deal with me that was not positive. Mr. Esteves then left Dr. Evdokas' office and proceeded to his. He passed by me and refused to acknowledge me or say hello.

On September 20, 2005, Mr. Esteves called the Program about 9:10 a.m. he asked for me, but I was not there. He demanded of the worker to know where I was, and the worker reported to me that Mr. Esteves terrorized him.

and then asked him---Do you know who I am? In such an authoritative and condescending tone, that the worker contacted his union delegate.

On September 20, 2005, I called Mr. Esteves when I arrived. He demanded to know where I was, as he called the office and there was no answer. I informed him that I had (2) two vacancies and that he is aware of it. He hired Ms. Diaz and he knew one worker went to "Blended Case Management". One worker is on the Concourse on Tuesdays, one was doing Home Visits. The person who answered the phone was assisting a patient when he, Rav, was calling, therefore he was unable to answer the phone. As for me, I was out purchasing nutritional supplies for the Women's Group. Mr. Esteves advised me to get Voice Mail and I have done so.

Since these incidents, it is my understanding that Mr. Esteves is on a witch-hunt to get rid of me. He has actively sought co-workers out and other individuals to solicit information about me "his words" and that he does not like me.

In February 2005, I scheduled a meeting with Mr. Esteves, and Grant Accounting Vincent D'Costa. The purpose of the meeting was to inform Mr. Esteves that I had unused money on the budget and that I needed to spend it. This money was part of the Enhancement the Program received from the Funding Agency, for always performing at 90% or higher. I proposed overtime for Saturdays, however, Mr. Esteves wanted (12) twelve computers. I objected by asking him how could I justify (12) twelve computers with a staff of (5) five. I told him I would rather spend the money on patient services as required in the contract with MHRA-Ryan White. The computers were ordered by Mr. Esteves and billed to the Harm-Reduction Program. Mr. Esteves instructed me to come up with a creative justification for the computers for the Funding Agency. I was adamantly directed by Mr. Esteves to inform the Funding Agency that the Harm-Reduction Program wants to establish a computer lab. I have asked Mr. Esteves repeatedly for the serial numbers for the computers, as the Grant requires that they be reported in the year-end equipment log. To date I have not received the serial numbers for the additional (8) eight computers that he

has in his possession. The Harm-Reduction Program received (4) four computers

On September 13, 2005, when I met with Mr. Esteves and Dr. Evdokas, Mr. Esteves stated that he is planning to transfer me to Larry Watts Dept. of Addictive Services

I have requested to know the status of that transfer from Dr. Evdokas when I met with him on October 12, 2005. This is my twelfth year of running this Program, my evaluation from Mr. Esteves has always been positive, however I cannot expect this to continue under the present stated circumstances. The established Policy from the Grants department states that if the Seminar is a budgeted item and is approved and/or required by the Funding Agency then my travel request is approved by the Grant Department

I have always done an outstanding job of managing the Program, with honesty, integrity and dedication. I would like an environment where I can continue to provide quality services in keeping with the Mission Statement of Bronx Lebanon Hospital Center.

I am asking for your intervention. I am willing to use my vacation to attend the conference; I have submitted a vacation request to Dr. Evdokas.

Cc    Jasen Nhambiu, Labor Relations-Director
       Kwadwo Opoku, Esq.

# EXHIBIT E

# HUMAN RESOURCES

| | |
|---|---|
| **Manual Code: HR - 357- C** | |
| **Page No: 1    of    3** | |
| **Function: Human Resources** | |

| |
|---|
| **TITLE:  POLICY FOR USE OF COMPUTER AND OTHER ELECTRONIC EQUIPMENT** |

| |
|---|
| **ISSUED BY: DIVISION OF HUMAN RESOURCES** |

| | |
|---|---|
| **EFFECTIVE DATE:   3/2/01** | **LAST REVIEW DATE: 3/06/06** |

| |
|---|
| **DISTRIBUTION:   All Authorized Manual Holders** |

## GENERAL POLICY:

Computer and other electronic equipment may only be used for Bronx Lebanon Hospital Center business or for purposes authorized by Administration. All electronic communications created, stored or communicated using Bronx Lebanon Hospital Center equipment are the property of the Hospital. Bronx Lebanon may access documents or communications stored on its property or in its systems (with or without advance notice) whenever warranted by business need or legal requirements and reserves the right to monitor its systems for accounting purposes, to ensure proper use, and to detect security violations. Bronx Lebanon reserves the right to monitor use of Hospital equipment.

## E-MAIL POLICY:

Employees are hereby advised that no e-mail message sent or received on the Hospital's e-mail system is "private", even if the employee labels the message as such and/or the employee uses a password or other security measure regarding the message. In addition, deletion of e-mail messages or files will not truly eliminate the messages from the system because they are stored on a central back-up system in the normal course of data management. However, users should routinely delete outdated or otherwise unnecessary e-mails and computer files in order to keep the system running smoothly and minimize maintenance costs.

Because personal messages can be accessed by the Hospital without prior notice, employees should not use e-mail to transmit any message that they would not want a third party to read. For example, employees should not use Hospital e-mail to discuss personal information about themselves or others, to forward messages under circumstances likely to embarrass the sender or for emotional responses to business correspondence or work situations.

Personal use of Bronx Lebanon computing equipment requires the approval of administration and will only be approved if such use is clearly insignificant, does not interfere with Hospital interests and does not involve incremental costs. Downloading games or non-business programs onto Hospital systems is specifically prohibited.

In addition, personal use activities may never include: solicitation of Hospital associates, providing information about, or lists of, Hospital associates or patients to others; commercial, political or religious solicitations; exchange of threatening, hostile, inappropriate or offensive communications; sending or replying to "chain letters". Anyone who receives an e-mail message that violates this policy should immediately contact the Assistant Vice President of Human Resources. Abuse of the e-mail or Internet systems, through excessive personal use or use in violation of law or our policies, will result in disciplinary action, up to and including termination from employment.

## INTERNET POLICY:

Certain employees are provided with access to the Internet to assist them in performing their jobs. Use of the Internet is governed by this policy (and by the e-mail policy).

Employees may not illegally copy from the Internet material protected under copyright law or make that material available to others for copying. Employees are responsible for complying with copyright laws and with the licenses that may apply to software and other material that they wish to download or copy. Employees may not agree to a license or download any material for which a registration fee is charged without the express prior written permission of the Director of Management Information Systems.

**Disclaimer of liability for Internet use.** The Hospital is not responsible for material that employees view or download from the Internet. The Internet is a worldwide computer network that contains millions of pages of information. Users are cautioned that these pages may contain offensive material that is inappropriate for the workplace. Searches may inadvertently lead to sites with offensive and inappropriate content. In addition, having an e-mail address on the Internet can result in receipt of unsolicited e-mail containing offensive and inappropriate content.

**Responsible Use of Computer Resources.** Employees are not to waste computer resources and valuable employee time. Specifically, employees may not spend work time on the Internet playing computer games, participating in online chat groups or online auction sites such as e-Bay, viewing sites that are not related to work or printing multiple copies of documents. Please note that audio, video, and picture files require significant storage space; therefore, you may not download these or other files onto your computer hard drive at work unless they are business-related.

**Monitoring Computer Usage.** The Hospital has the right (but not the duty) to monitor all aspects of its computer system, including monitoring Internet sites, chat groups and news groups visited by employees, reviewing material downloaded or uploaded by Internet users, and reviewing e-mail sent and received by users.

**Blocking Inappropriate Content.** The Hospital may, in its sole discretion, use software to identify and block inappropriate sites from employee access on our computers.

**Prohibited Activities.** Employees may not download from the Internet, or display on or store in the Hospital's computers, any material that violates our policy on Sexual and Other Unlawful Harassment, nor may employees use our Internet connection to download games or other entertainment software or play games over the Internet.

Virus Detection. Files obtained from sources outside of the Hospital, including diskettes, files downloaded from the Internet, files attached to e-mail, and files provided by third parties such as vendors may contain computer viruses that may damage our computer network. Employees should never download files from the Internet, open e-mail attachments from unknown sources or use disks from non-Hospital sources without first scanning the material with approved virus checking software. If you suspect that a virus has been introduced to our computer network, you must contact the Bronx-Lebanon Hospital help desk at (718) 920-4554 and report the problem.

## PASSWORD SECURITY:

Anyone who has a password for any electronics must maintain the integrity of that password. A password is for exclusive use by the person to whom it is issued. It is an electronic signature; thus, a password connects computer use to the person it identifies. Each employee is responsible for computer use and information accessed with his/her password. A password must not be shared, and must be guarded to prevent inadvertent disclosure to and use by other person.

All systems passwords and encryption keys must be available to management, and no employee may use passwords that are unknown to the employee's supervisor, nor may employees install encryption programs without turning over the encryption key to the employee's supervisor.

## STANDARDS OF CONDUCT:

When using electronic mail:

- Do not send electronic mail so that it appears to come from someone else.
- Do not send unsolicited advertising via electronic mail.
- Do not send or store any material that would be considered threatening, inappropriate, offensive or disrespectful to others.

### When using the Internet:

- Use only services you have authorization to access. Do not attempt to get into open Internet system or server ports without prior authorization.
- Always identify yourself when accessing the Internet.
- Do not access or place any material on the Internet that would be considered inappropriate, offensive or disrespectful to others.
- Do not download any software unless approved by MIS.

Other electronic equipment, such as Voice Mail, telephones, telefax, photocopy equipment, and recording devices are also limited to business use and subject to the Standards of Conduct stated above. No employee may use any of the equipment referred to throughout in a manner that could be construed by others as harassment or offensive based on *race, creed, color, national origin, sex, age, disability, marital status, sexual orientation or citizenship status.*

Compliance with this policy is a condition of employment. Violation of this policy may result in disciplinary action, up to and including termination from employment.

# EXHIBIT F

**By NEC America**

**Call Detail by Extension**

**Extension**  7187

Date Range from 01/01/06 to 03/31/06

| Extension | 7187 | Site | 1285FULTON | Switch | | 1285FULTON |
|---|---|---|---|---|---|---|
| Name | HEALTH ED | Department | HEALTH EDHEALTH ED | TEC | 3 | Single Line |
| Location | | Station Equip | 8D | | | |
| Floor | | Floor | 3 | 3 | | |

| Date/Time | Dialed Number | Location | | Duration | Cost | Facility | Trunk | CallType | Category | CostMeter |
|---|---|---|---|---|---|---|---|---|---|---|
| 03-31 4:27 PM | 646-245-0582 | NEW YORK | NY | 0:00:26 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 03-31 4:02 PM | 718-503-7700 | BRONX NYC | NY | 0:02:36 | $0.00 | 1285FACILIT | 2/15 | Local | Hospital Cost | |
| 03-31 3:46 PM | 718-796-4772 | BRONX NYC | NY | 0:01:08 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 03-30 5:01 PM | 718-601-1776 | BRONX NYC | NY | 0:00:23 | $0.00 | 1285FACILIT | 2/9 | Local | Hospital Cost | |
| 03-30 4:19 PM | 212-435-7808 | NEW YORK | NY | 0:07:53 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 03-30 1:18 PM | 718-378-1133 | BRONX NYC | NY | 0:00:02 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 03-30 12:58 PM | 869-469-5473 | NEW CASTLE | KA | 0:13:07 | $84.62 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▬▬▬ |
| 03-30 11:29 AM | 869-469-0559 | NEW CASTLE | KA | 0:06:55 | $44.62 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬▬ |
| 03-30 11:13 AM | 718-378-1133 | BRONX NYC | NY | 0:00:14 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 03-30 10:09 AM | 869-469-5473 | NEW CASTLE | KA | 0:02:09 | $13.87 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▬ |
| 03-30 9:33 AM | 718-551-7121 | QUEENS NYC | NY | 0:01:17 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 03-29 4:35 PM | 869-469-2660 | NEW CASTLE | KA | 0:00:17 | $6.45 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▪ |
| 03-29 3:51 PM | 869-469-5473 | NEW CASTLE | KA | 0:01:40 | $10.75 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▪ |
| 03-29 3:17 PM | 869-469-0319 | NEW CASTLE | KA | 0:20:23 | $131.51 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▬▬▬▬ |
| 03-29 3:17 PM | 869-469-0319 | NEW CASTLE | KA | 0:00:06 | $6.45 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▪ |
| 03-29 10:36 AM | 869-469-5521 | NEW CASTLE | KA | 0:16:07 | $103.98 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬▬▬ |
| 03-28 3:59 PM | 869-763-8568 | BASSETERRE | KA | 0:13:34 | $87.53 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬▬▬ |
| 03-28 2:44 PM | 718-466-6058 | BRONX NYC | NY | 0:02:05 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 03-28 1:26 PM | 869-469-5521 | NEW CASTLE | KA | 0:05:04 | $32.69 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▬▬ |
| 03-28 1:23 PM | 718-584-5035 | BRONX NYC | NY | 0:01:13 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 03-28 1:06 PM | 869-469-5473 | NEW CASTLE | KA | 0:02:07 | $13.66 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▪ |
| 03-28 10:21 AM | 718-584-5035 | BRONX NYC | NY | 0:01:47 | $0.00 | 1285FACILIT | 2/12 | Local | Hospital Cost | |
| 03-27 4:34 PM | 869-469-5764 | NEW CASTLE | KA | 0:20:36 | $132.90 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬▬▬▬ |
| 03-27 2:25 PM | 869-469-5521 | NEW CASTLE | KA | 0:01:58 | $12.69 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▪ |
| 03-27 1:16 PM | 869-469-5521 | NEW CASTLE | KA | 0:01:11 | $7.63 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▪ |
| 03-27 12:41 PM | 340-719-6620 | CHAR AMALE | VI | 0:23:03 | $22.31 | 1285FACILIT | 2/9 | Int'l | Hospital Cost | ▬▬ |
| 03-27 12:02 PM | 212-683-2334 | NEW YORK | NY | 0:07:52 | $0.00 | 1285FACILIT | 2/9 | Local | Hospital Cost | |
| 03-27 11:37 AM | 340-719-6620 | CHAR AMALE | VI | 0:03:38 | $3.52 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▪ |
| 03-27 10:53 AM | 869-469-5521 | NEW CASTLE | KA | 0:03:44 | $24.09 | 1285FACILIT | 2/9 | Int'l | Hospital Cost | ▬ |
| 03-27 10:49 AM | 869-469-5764 | NEW CASTLE | KA | 0:02:27 | $15.81 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▬ |
| 03-27 10:42 AM | 869-469-5521 | NEW CASTLE | KA | 0:00:18 | $6.45 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▪ |
| 03-27 10:38 AM | 869-469-0559 | NEW CASTLE | KA | 0:03:21 | $21.61 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬ |
| 03-24 4:43 PM | 646-245-0582 | NEW YORK | NY | 0:00:36 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 03-24 2:11 PM | 869-469-0559 | NEW CASTLE | KA | 0:16:30 | $106.45 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▬▬▬ |
| 03-24 2:04 PM | 869-469-5473 | NEW CASTLE | KA | 0:00:19 | $6.45 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▪ |
| 03-24 11:39 AM | 845-258-4420 | PINE IS | NY | 0:04:38 | $1.09 | 1285FACILIT | 2/10 | Long Dist. | Hospital Cost | |
| 03-24 10:45 AM | 869-469-5222 | NEW CASTLE | KA | 0:01:11 | $7.63 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▪ |
| 03-24 10:21 AM | 869-469-5521 | NEW CASTLE | KA | 0:05:46 | $37.20 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬▬ |
| 03-24 10:13 AM | 718-601-1776 | BRONX NYC | NY | 0:01:53 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 03-24 9:58 AM | 646-245-0582 | NEW YORK | NY | 0:00:03 | $0.00 | 1285FACILIT | 2/15 | Local | Hospital Cost | |
| 03-24 9:37 AM | 869-469-5473 | NEW CASTLE | KA | 0:01:29 | $9.57 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▪ |
| 03-23 4:46 PM | 718-294-1521 | BRONX NYC | NY | 0:16:06 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 03-23 4:16 PM | 914-576-8300 | NEWROCHELI | NY | 0:00:01 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 03-23 3:04 PM | 869-469-5473 | NEW CASTLE | KA | 0:01:22 | $8.82 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▪ |
| 03-23 2:25 PM | 718-601-1776 | BRONX NYC | NY | 0:01:05 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 03-23 9:47 AM | 718-601-1777 | BRONX NYC | NY | 0:00:33 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 03-22 3:25 PM | 869-469-0287 | NEW CASTLE | KA | 0:12:24 | $80.00 | 1285FACILIT | 2/9 | Int'l | Hospital Cost | ▬▬▬ |
| 03-22 3:24 PM | 869-469-0319 | NEW CASTLE | KA | 0:00:10 | $6.45 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▪ |
| 03-22 3:19 PM | 869-668-5473 | NEW CASTLE | KA | 0:00:23 | $6.45 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▪ |
| 03-22 3:03 PM | 869-469-5764 | NEW CASTLE | KA | 0:13:41 | $88.28 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▬▬▬ |
| 03-22 3:00 PM | 869-469-5473 | NEW CASTLE | KA | 0:02:02 | $13.12 | 1285FACILIT | 2/9 | Int'l | Hospital Cost | ▪ |
| 03-22 2:37 PM | 212-435-7808 | NEW YORK | NY | 0:00:02 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 03-22 2:29 PM | 340-719-6620 | CHAR AMALE | VI | 0:00:25 | $0.97 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | |
| 03-22 2:17 PM | 914-633-5420 | NEWROCHELI | NY | 0:01:29 | $0.00 | 1285FACILIT | 2/9 | Local | Hospital Cost | |
| 03-22 2:07 PM | 869-469-5764 | NEW CASTLE | KA | 0:06:13 | $40.11 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▬▬ |
| 03-22 1:56 PM | 869-469-5521 | NEW CASTLE | KA | 0:01:03 | $6.77 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▪ |
| 03-22 11:06 AM | 718-601-1776 | BRONX NYC | NY | 0:00:23 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |

**By NEC America**

. 930 Grand Concourse, Floor 12, BRONX, ... 10450    Page 2

## Call Detail by Extension

Extension 7187

| Date/Time | Dialed Number | Location | | Duration | Cost | Facility | Trunk | CallType | Category | CostMeter |
|---|---|---|---|---|---|---|---|---|---|---|
| 03-22 10:25 AM | 718-601-1776 | BRONX NYC | NY | 0:01:09 | $0.00 | 1285FACILIT | 2/15 | Local | Hospital Cost | |
| 03-22 10:16 AM | 718-601-1776 | BRONX NYC | NY | 0:08:02 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 03-22 10:15 AM | 914-633-5420 | NEWROCHELL | NY | 0:00:23 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 03-22 9:54 AM | 869-469-5473 | NEW CASTLE | NY | 0:08:43 | $56.24 | 1285FACILIT | 2/9 | Int'l | Hospital Cost | ▬▬▬ |
| 03-22 9:52 AM | 869-469-5521 | NEW CASTLE | KA | 0:01:04 | $6.88 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▪ |
| 03-22 9:25 AM | 718-601-1776 | BRONX NYC | NY | 0:05:18 | $0.00 | 1285FACILIT | 2/9 | Local | Hospital Cost | |
| 03-21 3:27 PM | 869-465-2621 | BASSETERRE | KA | 0:04:09 | $26.77 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▬▬ |
| 03-21 2:39 PM | 869-469-5473 | NEW CASTLE | KA | 0:02:33 | $16.45 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬ |
| 03-21 2:27 PM | 869-469-5521 | NEW CASTLE | KA | 0:10:42 | $69.03 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▬▬▬▬ |
| 03-21 10:37 AM | 869-469-5521 | NEW CASTLE | KA | 0:00:34 | $6.45 | 1285FACILIT | 2/14 | Int'l | Hospital Cost | ▪ |
| 03-21 10:32 AM | 869-469-5473 | NEW CASTLE | KA | 0:04:17 | $27.63 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬▬ |
| 03-21 10:23 AM | 869-469-5521 | NEW CASTLE | KA | 0:00:38 | $6.45 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▪ |
| 03-20 4:48 PM | 869-469-2741 | NEW CASTLE | KA | 0:03:43 | $23.98 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▬▬ |
| 03-20 3:58 PM | 869-469-5764 | NEW CASTLE | KA | 0:39:22 | $253.98 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▬▬▬▬▬▬ |
| 03-20 2:50 PM | 718-693-5963 | BKLYN NYC | NY | 0:00:15 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 03-20 2:36 PM | 869-465-2621 | BASSETERRE | NY | 0:01:26 | $9.25 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▪ |
| 03-20 12:41 PM | 340-719-6620 | CHAR AMALE | VI | 0:29:29 | $28.53 | 1285FACILIT | 2/9 | Int'l | Hospital Cost | ▬▬▬ |
| 03-20 10:58 AM | 212-687-4490 | NEW YORK | NY | 0:08:52 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 03-20 10:31 AM | 869-469-5473 | NEW CASTLE | KA | 0:09:57 | $64.19 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬▬▬ |
| 03-20 9:24 AM | 703-799-0328 | ARLINGTON | VA | 0:00:12 | $0.97 | 1285FACILIT | 2/10 | Long. Dist. | Hospital Cost | |
| 03-20 9:23 AM | 540-207-4207 | FREDRCKSBG | VA | 0:00:02 | $0.97 | 1285FACILIT | 2/8 | Long. Dist. | Hospital Cost | |
| 03-17 4:44 PM | 718-503-7700 | BRONX NYC | NY | 0:00:05 | $0.00 | 1285FACILIT | 2/15 | Local | Hospital Cost | |
| 03-17 3:53 PM | 869-469-5764 | NEW CASTLE | KA | 0:00:21 | $6.45 | 1285FACILIT | 2/9 | Int'l | Hospital Cost | ▪ |
| 03-17 3:24 PM | 905-671-7412 | MALTON | ON | 0:21:05 | $38.78 | 1285FACILIT | 2/9 | Int'l | Hospital Cost | ▬▬▬ |
| 03-17 9:03 AM | 869-665-9456 | BASSETERRE | KA | 0:01:31 | $9.78 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▪ |
| 03-17 8:59 AM | 869-465-6331 | BASSETERRE | KA | 0:03:05 | $19.89 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬▬ |
| 03-17 8:56 AM | 869-663-6513 | BASSETERRE | KA | 0:02:25 | $15.59 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▬ |
| 03-17 8:53 AM | 869-469-5821 | NEW CASTLE | KA | 0:00:03 | $6.45 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▪ |
| 03-17 8:46 AM | 869-465-2325 | BASSETERRE | KA | 0:05:23 | $34.73 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▬▬▬ |
| 03-17 8:41 AM | 869-663-8986 | BASSETERRE | KA | 0:03:46 | $24.30 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▬▬ |
| 03-16 3:42 PM | 646-245-0582 | NEW YORK | NY | 0:01:00 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 03-16 1:38 PM | 869-469-5521 | NEW CASTLE | KA | 0:13:04 | $84.30 | 1285FACILIT | 2/9 | Int'l | Hospital Cost | ▬▬▬▬▬ |
| 03-16 1:38 PM | 869-469-5473 | NEW CASTLE | KA | 0:00:18 | $6.45 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▪ |
| 03-16 1:19 PM | 869-469-0559 | NEW CASTLE | KA | 0:08:08 | $52.47 | 1285FACILIT | 2/14 | Int'l | Hospital Cost | ▬▬▬ |
| 03-16 11:30 AM | 718-901-6487 | BRONX NYC | NY | 0:03:19 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 03-15 11:00 AM | 646-533-4342 | BKLYN NYC | NY | 0:03:24 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 03-15 9:12 AM | 869-469-5821 | NEW CASTLE | KA | 0:01:02 | $6.67 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▪ |
| 03-15 8:59 AM | 869-663-6513 | BASSETERRE | KA | 0:02:29 | $16.02 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬▬ |
| 03-14 4:57 PM | 646-245-0582 | NEW YORK | NY | 0:00:05 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 03-14 2:38 PM | 212-513-6396 | NEW YORK | NY | 0:00:09 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 03-14 2:37 PM | 869-469-5764 | NEW CASTLE | KA | 0:00:14 | $6.45 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▪ |
| 03-14 11:49 AM | 718-503-7788 | BRONX NYC | NY | 0:01:18 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 03-14 11:16 AM | 718-579-7300 | BRONX NYC | NY | 0:15:15 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 03-13 3:22 PM | 869-469-0559 | NEW CASTLE | KA | 0:05:08 | $33.12 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬▬▬ |
| 03-13 2:42 PM | 869-469-5473 | NEW CASTLE | KA | 0:18:20 | $118.28 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬▬▬▬▬▬ |
| 03-13 2:22 PM | 869-469-5473 | NEW CASTLE | KA | 0:00:28 | $6.45 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▪ |
| 03-13 2:22 PM | 212-513-6396 | NEW YORK | NY | 0:00:14 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 03-13 12:04 PM | 718-901-6487 | BRONX NYC | NY | 0:04:47 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 03-13 12:03 PM | 718-378-1133 | BRONX NYC | NY | 0:00:01 | $0.00 | 1285FACILIT | 2/9 | Local | Hospital Cost | |
| 03-10 1:21 PM | 631-756-0440 | FARMINGDL | NY | 0:02:58 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 03-10 12:53 PM | 718-922-2665 | BKLYN NYC | NY | 0:12:05 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 03-10 12:42 PM | 631-756-0440 | FARMINGDL | NY | 0:07:33 | $0.00 | 1285FACILIT | 2/15 | Local | Hospital Cost | |
| 03-10 12:33 PM | 718-543-1799 | BRONX NYC | NY | 0:04:22 | $0.00 | 1285FACILIT | 2/9 | Local | Hospital Cost | |
| 03-10 12:13 PM | 718-543-1799 | BRONX NYC | NY | 0:06:59 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 03-10 12:07 PM | 718-665-5216 | BRONX NYC | NY | 0:00:18 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 03-10 11:53 AM | 845-258-4420 | PINE IS | NY | 0:05:28 | $1.28 | 1285FACILIT | 2/11 | Long. Dist. | Hospital Cost | |
| 03-10 11:47 AM | 718-922-2665 | BKLYN NYC | NY | 0:05:33 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 03-10 11:46 AM | 718-960-4550 | BRONX NYC | NY | 0:00:50 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 03-09 9:49 AM | 646-533-4342 | BKLYN NYC | NY | 0:03:34 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 03-07 10:12 AM | 703-719-0046 | ARLINGTON | VA | 0:00:21 | $0.97 | 1285FACILIT | 2/12 | Long. Dist. | Hospital Cost | |
| 03-07 10:05 AM | 869-465-2621 | BASSETERRE | KA | 0:03:08 | $20.22 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▬▬ |
| 03-07 9:44 AM | 869-469-1992 | NEW CASTLE | KA | 0:10:18 | $66.45 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▬▬▬▬ |

.850 Grand Concourse, Floor 12, BRONX, .. 10456    Page 3

## Call Detail by Extension

Extension  7187

| Date/Time | Dialed Number | Location | | Duration | Cost | Facility | Trunk | CallType | Category | CostMeter |
|---|---|---|---|---|---|---|---|---|---|---|
| 03-07 9:43 AM | 869-469-5821 | NEW CASTLE | KA | 0:00:36 | $6.45 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬ |
| 03-07 9:41 AM | 869-469-1042 | NEW CASTLE | KA | 0:01:58 | $12.69 | 1285FACILIT | 2/14 | Int'l | Hospital Cost | ▬ |
| 03-07 9:37 AM | 869-469-1700 | NEW CASTLE | KA | 0:02:51 | $18.39 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬▬ |
| 03-07 9:37 AM | 869-469-1600 | NEW CASTLE | KA | 0:00:07 | $6.45 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▬ |
| 03-07 9:32 AM | 869-663-6513 | BASSETERRE | KA | 0:02:52 | $18.49 | 1285FACILIT | 2/9 | Int'l | Hospital Cost | ▬▬ |
| 03-06 4:58 PM | 869-469-2741 | NEW CASTLE | KA | 0:01:50 | $11.83 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▬ |
| 03-06 4:32 PM | 869-469-5473 | NEW CASTLE | KA | 0:00:21 | $6.45 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▬ |
| 03-06 4:31 PM | 845-258-4420 | PINE IS | NY | 0:00:06 | $0.12 | 1285FACILIT | 2/12 | Long Dist. | Hospital Cost | |
| 03-06 4:14 PM | 212-343-8200 | NEW YORK | NY | 0:03:08 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 03-06 2:52 PM | 869-469-5473 | NEW CASTLE | KA | 0:07:27 | $48.06 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬▬▬▬ |
| 03-06 1:10 PM | 718-482-0408 | QUEENS NYC | NY | 0:02:00 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 03-06 12:50 PM | 869-469-0559 | NEW CASTLE | KA | 0:04:43 | $30.43 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬▬▬ |
| 03-06 11:50 AM | 340-719-6620 | CHAR AMALE | VI | 0:00:06 | $0.97 | 1285FACILIT | 2/9 | Int'l | Hospital Cost | |
| 03-06 11:48 AM | 869-469-0559 | NEW CASTLE | KA | 0:00:52 | $6.45 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬ |
| 03-06 11:16 AM | 718-901-8040 | BRONX NYC | NY | 0:01:47 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 03-03 3:34 PM | 869-469-5473 | NEW CASTLE | KA | 0:17:27 | $112.58 | 1285FACILIT | 2/14 | Int'l | Hospital Cost | ▬▬▬▬▬▬▬ |
| 03-03 2:29 PM | 869-469-0559 | NEW CASTLE | KA | 0:28:54 | $186.45 | 1285FACILIT | 2/14 | Int'l | Hospital Cost | ▬▬▬▬▬▬▬▬ |
| 03-03 2:00 PM | 869-469-5764 | NEW CASTLE | KA | 0:17:15 | $111.29 | 1285FACILIT | 2/14 | Int'l | Hospital Cost | ▬▬▬▬▬▬▬ |
| 03-03 1:59 PM | 869-469-5473 | NEW CASTLE | KA | 0:00:03 | $6.45 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▬ |
| 03-03 1:40 PM | 869-465-2621 | BASSETERRE | KA | 0:05:02 | $32.47 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬▬▬ |
| 03-03 12:42 PM | 869-663-6513 | BASSETERRE | KA | 0:01:07 | $7.20 | 1285FACILIT | 2/14 | Int'l | Hospital Cost | ▬ |
| 03-03 12:32 PM | 869-469-0559 | NEW CASTLE | KA | 0:00:38 | $6.45 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▬ |
| 03-03 12:20 PM | 646-595-9943 | NEW YORK | NY | 0:01:55 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 03-03 12:16 PM | 718-379-1133 | BRONX NYC | NY | 0:00:01 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 03-03 10:33 AM | 646-351-9457 | NEW YORK | NY | 0:01:16 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 03-03 8:29 AM | 614-937-2472 | COLUMBUS | OH | 0:00:46 | $0.97 | 1285FACILIT | 2/15 | Long Dist. | Hospital Cost | |
| 03-02 4:36 PM | 869-763-8568 | BASSETERRE | KA | 0:05:24 | $34.84 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬▬▬ |
| 03-02 3:42 PM | 718-901-8521 | BRONX NYC | NY | 0:00:08 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 03-02 3:40 PM | 718-901-8521 | BRONX NYC | NY | 0:00:06 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 03-02 3:35 PM | 718-901-8521 | BRONX NYC | NY | 0:00:13 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 03-02 3:08 PM | 718-482-0408 | QUEENS NYC | NY | 0:05:54 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 03-02 3:05 PM | 718-482-0408 | QUEENS NYC | NY | 0:00:45 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 03-02 2:13 PM | 646-595-9943 | NEW YORK | NY | 0:00:29 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 03-02 2:09 PM | 646-351-9457 | NEW YORK | NY | 0:00:18 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 03-02 1:37 PM | 869-469-5521 | NEW CASTLE | KA | 0:06:48 | $43.87 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▬▬▬▬ |
| 03-02 1:28 PM | 718-901-8521 | BRONX NYC | NY | 0:00:20 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 03-02 10:51 AM | 340-719-6620 | CHAR AMALE | VI | 0:44:36 | $43.16 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▬▬▬ |
| 03-02 10:36 AM | 869-465-2621 | BASSETERRE | KA | 0:09:17 | $59.89 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▬▬▬▬ |
| 03-01 4:30 PM | 869-469-2363 | NEW CASTLE | KA | 0:00:10 | $6.45 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▬ |
| 03-01 3:15 PM | 212-687-4490 | NEW YORK | NY | 0:00:02 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 03-01 3:12 PM | 718-551-7121 | QUEENS NYC | NY | 0:02:19 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 02-28 4:53 PM | 718-710-1939 | BRONX NYC | NY | 0:02:51 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 02-28 4:15 PM | 212-841-5307 | NEW YORK | NY | 0:03:00 | $0.00 | 1285FACILIT | 2/12 | Local | Hospital Cost | |
| 02-28 4:02 PM | 347-645-3978 | BRONX NYC | NY | 0:01:19 | $0.00 | 1285FACILIT | 2/15 | Local | Hospital Cost | |
| 02-28 12:01 PM | 869-469-5764 | NEW CASTLE | KA | 0:49:48 | $321.29 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▬▬▬▬▬▬▬▬ |
| 02-28 11:20 AM | 869-469-0319 | NEW CASTLE | KA | 0:33:56 | $218.92 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▬▬▬▬▬▬▬▬ |
| 02-28 11:19 AM | 869-469-0319 | NEW CASTLE | KA | 0:00:14 | $6.45 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▬ |
| 02-28 11:13 AM | 646-351-9457 | NEW YORK | NY | 0:04:34 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 02-27 4:59 PM | 869-469-2741 | NEW CASTLE | KA | 0:12:02 | $77.63 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▬▬▬▬▬ |
| 02-27 4:57 PM | 869-469-5473 | NEW CASTLE | KA | 0:00:05 | $6.45 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬ |
| 02-27 12:33 PM | 646-351-9457 | NEW YORK | NY | 0:01:19 | $0.00 | 1285FACILIT | 2/15 | Local | Hospital Cost | |
| 02-24 4:32 PM | 718-294-1521 | BRONX NYC | NY | 0:20:12 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 02-24 4:31 PM | 718-292-2421 | BRONX NYC | NY | 0:00:08 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 02-24 4:25 PM | 869-469-2603 | NEW CASTLE | KA | 0:04:53 | $31.51 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬▬▬ |
| 02-24 2:37 PM | 646-351-9457 | NEW YORK | NY | 0:03:44 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 02-24 2:30 PM | 718-710-2147 | BRONX NYC | NY | 0:01:03 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 02-24 2:14 PM | 869-469-5473 | NEW CASTLE | KA | 0:13:49 | $89.14 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬▬▬▬▬▬ |
| 02-23 4:50 PM | 869-763-8568 | BASSETERRE | KA | 0:21:18 | $137.42 | 1285FACILIT | 2/14 | Int'l | Hospital Cost | ▬▬▬▬▬▬▬ |
| 02-23 4:36 PM | 646-351-9457 | NEW YORK | NY | 0:02:31 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 02-23 3:09 PM | 869-469-5473 | NEW CASTLE | KA | 0:25:38 | $165.38 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬▬▬▬▬▬▬▬ |
| 02-23 3:01 PM | 869-469-5473 | NEW CASTLE | KA | 0:02:31 | $16.24 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▬▬ |
| 02-23 2:38 PM | 718-579-7300 | BRONX NYC | NY | 0:21:32 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |

**By NEC America**

1650 Grand Concourse, Floor 12, BRONX, N... 1040...

## Call Detail by Extension

**Extension** 7187

| Date/Time | Dialed Number | Location | | Duration | Cost | Facility | Trunk | CallType | Category | CostMeter |
|---|---|---|---|---|---|---|---|---|---|---|
| 02-23 10:19 AM | 347-728-1497 | BRONX NYC | NY | 0:06:11 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 02-23 10:15 AM | 347-728-1497 | BRONX NYC | NY | 0:01:00 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 02-22 4:47 PM | 347-728-1497 | BRONX NYC | NY | 0:04:59 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 02-22 4:08 PM | 869-469-1439 | NEW CASTLE | KA | 0:04:22 | $28.17 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▬▬ |
| 02-22 4:07 PM | 869-469-5764 | NEW CASTLE | KA | 0:00:26 | $6.45 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▪ |
| 02-22 3:34 PM | 869-469-5473 | NEW CASTLE | KA | 0:32:08 | $207.31 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▬▬▬▬ |
| 02-21 5:08 PM | 212-683-2334 | NEW YORK | NY | 0:00:57 | $0.00 | 1285FACILIT | 2/12 | Local | Hospital Cost | |
| 02-21 4:47 PM | 718-294-1521 | BRONX NYC | NY | 0:12:06 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 02-21 3:10 PM | 869-469-0559 | NEW CASTLE | KA | 0:13:45 | $88.71 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▬▬▬▬ |
| 02-21 2:52 PM | 869-465-2621 | BASSETERRE | KA | 0:07:58 | $51.40 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▬▬▬ |
| 02-21 1:23 PM | 212-683-2334 | NEW YORK | NY | 0:01:12 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 02-21 11:04 AM | 869-469-5764 | NEW CASTLE | KA | 0:17:11 | $110.86 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬▬▬▬▬ |
| 02-17 4:26 PM | 704-882-4927 | HEMBY BDG | NC | 0:00:16 | $0.97 | 1285FACILIT | 2/15 | Long Dist. | Hospital Cost | |
| 02-17 4:19 PM | 718-294-1521 | BRONX NYC | NY | 0:02:30 | $0.00 | 1285FACILIT | 2/12 | Local | Hospital Cost | |
| 02-17 3:51 PM | 718-294-1521 | BRONX NYC | NY | 0:27:38 | $0.00 | 1285FACILIT | 2/15 | Local | Hospital Cost | |
| 02-17 3:45 PM | 869-469-5764 | NEW CASTLE | KA | 0:05:29 | $35.38 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▬▬ |
| 02-17 3:43 PM | 869-469-5473 | NEW CASTLE | KA | 0:00:32 | $6.45 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▪ |
| 02-17 3:40 PM | 869-469-5473 | NEW CASTLE | KA | 0:01:44 | $11.18 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬ |
| 02-17 3:11 PM | 869-469-5473 | NEW CASTLE | KA | 0:22:51 | $147.42 | 1285FACILIT | 2/14 | Int'l | Hospital Cost | ▬▬▬▬▬ |
| 02-17 2:58 PM | 869-469-5473 | NEW CASTLE | KA | 0:00:23 | $6.45 | 1285FACILIT | 2/11 | Int'l | Hospital Cost | ▪ |
| 02-17 1:57 PM | 718-960-2004 | BRONX NYC | NY | 0:01:11 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 02-17 1:33 PM | 718-710-1939 | BRONX NYC | NY | 0:01:21 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 02-17 12:55 PM | 718-960-2004 | BRONX NYC | NY | 0:00:19 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 02-17 12:32 PM | 718-601-1776 | BRONX NYC | NY | 0:13:50 | $0.00 | 1285FACILIT | 2/9 | Local | Hospital Cost | |
| 02-17 11:40 AM | 869-763-8568 | BASSETERRE | KA | 0:06:40 | $43.01 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬▬▬ |
| 02-17 11:27 AM | 718-601-1776 | BRONX NYC | NY | 0:07:17 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 02-17 11:07 AM | 718-601-1776 | BRONX NYC | NY | 0:06:31 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 02-16 4:48 PM | 212-435-7808 | NEW YORK | NY | 0:02:42 | $0.00 | 1285FACILIT | 2/15 | Local | Hospital Cost | |
| 02-16 4:10 PM | 917-684-5467 | NEW YORK | NY | 0:03:50 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 02-16 4:09 PM | 718-551-7121 | QUEENS NYC | NY | 0:00:14 | $0.00 | 1285FACILIT | 2/15 | Local | Hospital Cost | |
| 02-16 3:52 PM | 869-469-5473 | NEW CASTLE | KA | 0:09:57 | $64.19 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▬▬▬ |
| 02-16 3:16 PM | 340-692-6503 | CHAR AMALE | VI | 0:33:21 | $32.27 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▬▬ |
| 02-16 3:14 PM | 615-473-6571 | NASHVILLE | TN | 0:00:27 | $0.97 | 1285FACILIT | 2/9 | Long Dist. | Hospital Cost | |
| 02-16 2:54 PM | 718-601-1776 | BRONX NYC | NY | 0:00:20 | $0.00 | 1285FACILIT | 2/9 | Local | Hospital Cost | |
| 02-16 2:52 PM | 718-901-8040 | BRONX NYC | NY | 0:00:21 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 02-16 12:25 PM | 718-379-1133 | BRONX NYC | NY | 0:00:03 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 02-16 12:15 PM | 718-901-8040 | BRONX NYC | NY | 0:01:07 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 02-16 10:37 AM | 718-960-2004 | BRONX NYC | NY | 0:00:07 | $0.00 | 1285FACILIT | 2/9 | Local | Hospital Cost | |
| 02-16 10:03 AM | 869-465-2621 | BASSETERRE | KA | 0:04:40 | $30.11 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▬▬ |
| 02-16 10:02 AM | 718-960-2004 | BRONX NYC | NY | 0:00:12 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 02-15 4:12 PM | 212-687-4490 | NEW YORK | NY | 0:08:28 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 02-15 3:46 PM | 869-664-1877 | BASSETERRE | KA | 0:01:05 | $6.99 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▪ |
| 02-15 3:07 PM | 869-469-5473 | NEW CASTLE | KA | 0:37:23 | $241.18 | 1285FACILIT | 2/9 | Int'l | Hospital Cost | ▬▬▬▬▬ |
| 02-15 1:57 PM | 718-601-1776 | BRONX NYC | NY | 0:01:00 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 02-15 1:56 PM | 340-719-6620 | CHAR AMALE | VI | 0:41:35 | $40.24 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▬▬▬ |
| 02-15 1:50 PM | 869-469-5473 | NEW CASTLE | KA | 0:00:31 | $6.45 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▪ |
| 02-15 1:33 PM | 718-601-1776 | BRONX NYC | NY | 0:09:17 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 02-15 11:26 AM | 646-413-1026 | NEW YORK | NY | 0:03:03 | $0.00 | 1285FACILIT | 2/15 | Local | Hospital Cost | |
| 02-15 11:23 AM | 917-684-5467 | NEW YORK | NY | 0:04:04 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 02-14 4:27 PM | 347-728-1497 | BRONX NYC | NY | 0:07:55 | $0.00 | 1285FACILIT | 2/11 | Local | Hospital Cost | |
| 02-14 12:41 PM | 646-260-2176 | BRONX NYC | NY | 0:05:49 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 02-14 11:34 AM | 869-664-1877 | BASSETERRE | KA | 0:00:15 | $6.45 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▪ |
| 02-14 11:32 AM | 869-465-2621 | BASSETERRE | KA | 0:00:03 | $6.45 | 1285FACILIT | 2/10 | Int'l | Hospital Cost | ▪ |
| 02-14 11:22 AM | 718-868-4266 | QUEENS NYC | NY | 0:00:32 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 02-14 11:21 AM | 718-601-1776 | BRONX NYC | NY | 0:07:08 | $0.00 | 1285FACILIT | 2/12 | Local | Hospital Cost | |
| 02-13 4:26 PM | 718-503-7788 | BRONX NYC | NY | 0:00:24 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 02-13 4:25 PM | 718-960-2004 | BRONX NYC | NY | 0:00:30 | $0.00 | 1285FACILIT | 2/13 | Local | Hospital Cost | |
| 02-13 3:54 PM | 718-519-9821 | BRONX NYC | NY | 0:00:59 | $0.00 | 1285FACILIT | 2/12 | Local | Hospital Cost | |
| 02-13 3:44 PM | 347-728-1497 | BRONX NYC | NY | 0:00:17 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 02-13 3:27 PM | 869-469-5764 | NEW CASTLE | KA | 0:13:39 | $88.06 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬▬▬▬ |
| 02-13 3:05 PM | 718-519-9821 | BRONX NYC | NY | 0:00:08 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 02-13 3:01 PM | 718-551-7121 | QUEENS NYC | NY | 0:03:28 | $0.00 | 1285FACILIT | 2/15 | Local | Hospital Cost | |

By NEC America    1085 Grand Concourse, Floor 12, BRONX, K . 10456    Page 5

## Call Detail by Extension

Extension 7187

| Date/Time | Dialed Number | Location | | Duration | Cost | Facility | Trunk | CallType | Category | CostMeter |
|-----------|---------------|----------|----|----------|------|----------|-------|----------|----------|-----------|
| 02-13 2:59 PM | 718-519-9821 | BRONX NYC | NY | 0:00:54 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |
| 02-13 2:34 PM | 917-684-5467 | NEW YORK | NY | 0:01:13 | $0.00 | 1285FACILIT | 2/15 | Local | Hospital Cost | |
| 02-13 2:10 PM | 646-595-9943 | NEW YORK | NY | 0:00:05 | $0.00 | 1285FACILIT | 2/10 | Local | Hospital Cost | |
| 02-13 1:06 PM | 646-595-9943 | NEW YORK | NY | 0:00:30 | $0.00 | 1285FACILIT | 2/9 | Local | Hospital Cost | |
| 02-13 12:44 PM | 718-518-3736 | BRONX NYC | NY | 0:01:34 | $0.00 | 1285FACILIT | 2/8 | Local | Hospital Cost | |
| 02-13 11:24 AM | 869-469-5473 | NEW CASTLE | KA | 0:20:34 | $132.69 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▬▬▬ |
| 02-13 11:22 AM | 869-665-9834 | BASSETERRE | KA | 0:00:01 | $6.45 | 1285FACILIT | 2/14 | Int'l | Hospital Cost | ▬ |
| 02-13 11:21 AM | 869-469-5764 | NEW CASTLE | KA | 0:00:30 | $6.45 | 1285FACILIT | 2/13 | Int'l | Hospital Cost | ▬ |
| 02-13 11:15 AM | 869-469-1439 | NEW CASTLE | KA | 0:00:13 | $6.45 | 1285FACILIT | 2/12 | Int'l | Hospital Cost | ▬ |
| 02-13 10:35 AM | 869-465-2621 | BASSETERRE | KA | 0:06:21 | $40.97 | 1285FACILIT | 2/8 | Int'l | Hospital Cost | ▬▬ |
| 02-10 9:54 AM | 718-601-1776 | BRONX NYC | NY | 0:03:27 | $0.00 | 1285FACILIT | 2/12 | Local | Hospital Cost | |
| 02-09 4:52 PM | 718-901-8040 | BRONX NYC | NY | 0:00:37 | $0.00 | 1285FACILIT | 2/12 | Local | Hospital Cost | |
| 02-09 2:42 PM | 869-469-5764 | NEW CASTLE | KA | 0:30:32 | $196.99 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▬▬▬ |
| 02-09 2:40 PM | 869-469-0559 | NEW CASTLE | KA | 0:01:08 | $7.31 | 1285FACILIT | 2/14 | Int'l | Hospital Cost | ▬ |
| 02-09 2:29 PM | 718-901-6487 | BRONX NYC | NY | 0:00:22 | $0.00 | 1285FACILIT | 2/12 | Local | Hospital Cost | |
| 02-09 2:14 PM | 869-465-2621 | BASSETERRE | KA | 0:02:07 | $13.66 | 1285FACILIT | 2/15 | Int'l | Hospital Cost | ▬ |
| 02-09 2:13 PM | 718-901-8070 | BRONX NYC | NY | 0:00:21 | $0.00 | 1285FACILIT | 2/14 | Local | Hospital Cost | |

|  | | 260 calls | | 24:19:08 | 5942.74 | | | | | |
|  | | Fixed Cost | | | 0.00 | | | | | |
|  | | Total Charges | | | $5,942.74 | | | | | |

The statement of Ms Pearline Lib. l, on May 8, 2006. Ms. Liburd is the project coordinator for Harm Reduction Program

I have 4 patients who are from St. Kitts, Nevis and I have to call the hospital in New Castle and the Ministry of Health. I am calling patients and the doctors and sometimes I can be on the phone for a long time without being connected to the patients. Dr. Hall gave me the impression that I could call.

The patient come to me for the I.D. clinic, we don't have a primary physician that sees the patient. I document all calls in our program charts and logs.

**From:**      Jennifer Marciano
**To:**        Esteves, Ray
**Date:**      5/10/06 4:12PM
**Subject:**   Harm reduction

Hi. Just to let you know, I reviewed the URS data for Harm Reduction for the months of Feb'06 to 4'06. The 3 patients that were identified as having international calls placed showed no activity for the period in question. URS data revealed that all 3 clients had no activity in the Harm Reduction Program for said time. As a reminder, as an MHRA grant all activities provided under a grant must be entered in URS and reported to the funding source monthly. Therefore, these clients are actually inactive.

Jennifer

**CC:**        Evdokas, Andreas;  Hernandez, Ibet;  Telzak, Edward

# EXHIBIT G



# BRONX-LEBANON
## HOSPITAL CENTER



September 15, 2006

Mr. Jan Alex Dash
946 Fulton Street
Brooklyn, NY 11238

Dear Mr. Dash:

I am in receipt of your letter dated September 7, 2006. Please note that Ms. Liburd's paychecks have never been withheld. She simply did not make any efforts to pick them up nor give us instructions as to how to remit the monies to her. As you have been designated to represent her in this matter, I am releasing her paychecks to you.

There is a pending matter of mobile phone in Ms. Liburd's possession that is property of Bronx Lebanon Hospital Center. The telephone must be returned to the hospital immediately or a check must be issued to Bronx Lebanon Hospital in the amount of one hundred dollars ($100.00). In addition, the hospital is seeking payment for the unauthorized, non work-related phone calls made to St. Kitts/Nevis in the amount of five thousand, nine hundred and forty-two dollars ($5,942.00). It should be noted that one of the calls was made to your affiliate office of Liburd and Dash in Nevis from her office phone.

Please forward the telephone and the payment to " Jasen Nhambiu, Director, Labor Relations, 1276 Fulton Avenue, Bronx , NY 10456." Your assistance and cooperation in reaching an amicable resolution to this matter are greatly appreciated. Thank you for your attention to this matter.

Sincerely,

Jasen L. Nhambiu
Director, Labor Relations

Encl.　(1) 5/26/2006 – Scheduled hours
　　　　(2) 5/26/2006 – Accrued Leave

Cc:　　Sheldon Ortsman
　　　　Selena Griffin-Mahon

| U.S. Postal Service™ |
| --- |
| **CERTIFIED MAIL™ RECEIPT** |
| (Domestic Mail Only; No Insurance Coverage Provided) |
| For delivery information visit our website at www.usps.com™ |
| **O F F I C I A L   U S E** |

Postage | $
Certified Fee |
Return Receipt Fee (Endorsement Required) |
Restricted Delivery Fee (Endorsement Required) |
Total Postage & Fees | $

Postmark Here

Pearline Liburd.

Sent To　Jan Alex Dash
Street, Apt. No.; or PO Box No.　946 Fulton St.
City, State, ZIP+4　Brooklin NY 11238 11238

PS Form 3800, June 2002　See Reverse for Instructions

7004 1350 0002 5516 9008

Human Resource Division
1780 Grand Concourse, 2nd Floor
Bronx, New York 10457
Phone: (718) 466-8501

**BRONX-LEBANON HOSPITAL CENTER**
1276 FULTON AVENUE
BRONX, NEW YORK 10456

| Period Ending: | 05/20/2006 |
|---|---|
| Pay Date: | 05/26/2006 |

Taxable Marital Status:   Single
Exemptions/Allowances:
| Federal: | 5 |
| NY: | 5 |
| New York Cit: | 5 |

Social Security Number: XXX-XX-9320

**PEARLINE LIBURD**
**4680 LIVINGSTON AVE**
**BRONX, NY 10471**

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Holiday | 42.4730 | 42.00 | 1,783.87 | 2,846.95 |
| Personal | 42.4730 | 7.00 | 297.31 | 297.31 |
| Vacation | 42.4730 | 280.00 | 11,892.44 | 11,892.44 |
| Regular Day | | | | 26,883.56 |
| Retro Adjustmnt | | | | 2,207.94 |
| Sick | | | | 1,063.08 |
| **Gross Pay** | | | **$13,973.62** | 45,191.28 |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| G.T.L. | | 40.90 |
| Bal Holiday Hr | | 0.00 |
| Bal Personal Hr | | 0.00 |
| Bal Sick Hours | | 194.00 |
| Bal Vacation Hr | | 0.00 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -2,665.72 | 5,616.91 |
| | Social Security Tax | -866.36 | 2,746.98 |
| | Medicare Tax | -202.62 | 642.44 |
| | NY State Income Tax | -839.47 | 2,060.32 |
| | New York Cit Income Tax | -478.27 | 1,198.55 |
| | NY SUI/SDI Tax | | 13.20 |
| | **Other** | | |
| | Black Unitedfnd | | 30.00 |
| | Dental Pretax | | 50.00 |
| | Groupterm Disab | | 357.80 |
| | Medical Pretax | | 496.00 |
| | Pretax Transit | | 380.00 |
| | Tsa 1St Invest | | 5,087.00 |
| | **Net Pay** | | **$8,921.18** |

Your federal taxable wages this period are
$13,973.62

©2000 ADP, Inc.

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTEN AT BOTTO

**BRONX-LEBANON HOSPITAL CENTER**
1276 FULTON AVENUE
BRONX, NEW YORK 10456

| Payroll check number: | 0002376048 |
|---|---|
| Pay date: | 05/26/2006 |

Pay to the order of:   **PEARLINE LIBURD**

This amount:   EIGHT THOUSAND NINE HUNDRED TWENTY ONE AND 18/100 DOLLARS        **$8921.18**

CHASE
55 WATER STREET
NEW YORK, N.Y. 10041

*Vista C. D'Alamo*

⑈023760 48⑈ ⑈0 210000 21⑈ 61 6004044⑈

THE DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK  HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT

**BRONX-LEBANON HOSPITAL CENTER**
1276 FULTON AVENUE
BRONX, NEW YORK 10456

| | |
|---|---|
| Period Ending: | 05/20/2006 |
| Pay Date: | 05/26/2006 |

Taxable Marital Status: Single
Exemptions/Allowances:
Federal:  5
NY:  5
New York Cit:  5

Social Security Number: XXX-XX-9320

PEARLINE LIBURD
4680 LIVINGSTON AVE
BRONX, NY 10471

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular Day | 42.4730 | 35.00 | 1,486.56 | 26,883.56 |
| Holiday | | | | 1,063.08 |
| Retro Adjustmnt | | | | 2,207.94 |
| Sick | | | | 1,063.08 |
| Gross Pay | | | $1,486.56 | 31,217.66 |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| G.T.L. | | 40.90 |
| Bal Holiday Hr | | 0.00 |
| Bal Personal Hr | | 0.00 |
| Bal Sick Hours | | 194.00 |
| Bal Vacation Hr | | 0.00 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -98.36 | 2,951.19 |
| | Social Security Tax | -92.17 | 1,880.62 |
| | Medicare Tax | -21.55 | 439.82 |
| | NY State Income Tax | -55.01 | 1,220.85 |
| | New York Cit Income Tax | -33.78 | 720.28 |
| | NY SUI/SDI Tax | -1.20 | 13.20 |
| | **Other** | | |
| | Black Unitedfnd | | 30.00 |
| | Dental Pretax | | 50.00 |
| | Groupterm Disab | | 357.80 |
| | Medical Pretax | | 496.00 |
| | Pretax Transit | | 380.00 |
| | Tsa 1St Invest | | 5,087.00 |
| Net Pay | | $1,184.49 | |

Your federal taxable wages this period are
$1,486.56

© 2000 ADP, Inc.

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

**BRONX-LEBANON HOSPITAL CENTER**
1276 FULTON AVENUE
BRONX, NEW YORK 10456

Payroll check number: 0002376047
Pay date:  05/26/2006

Pay to the order of:  **PEARLINE LIBURD**

This amount:  ONE THOUSAND ONE HUNDRED EIGHTY FOUR AND 49/100 DOLLARS

$1184.49

CHASE
55 WATER STREET
NEW YORK, N.Y. 10041

⑈02376047⑈ ⑈021000021⑈ 61600404⑈

HOLD AT AN ANGLE TO VIEW WHEN CHECKING THIS ENDORSEMENT

COMPLETE THIS SECTION ON DELIVERY

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

A. Signature

X _Jan aK_    ☐ Agent
              ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

1. Article Addressed to:

Mr. Jan Alex Dash
946 Fulton Street
Brooklyn, NY 11238

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☒ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7004 1350 0002 5516 9808

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

UNITED STATES POST┐  SERVICE



┌─────────────────────┐
│ t-Class Mail       │
│ stage & Fees Paid  │
│ USPS                │
│ Permit No. G-10     │
└─────────────────────┘

• Sender: Please print your name, address, and ZIP+4 in this box •

*Jasen Nhambiu*
Bronx- Lebanon Hospital Center
Human Resources
1276 Fulton Ave 6th Floor
Bronx, NY 10456

*Re: Pearline Liburd*

C010

<u>AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NEW YORK )

    REBECCA B. WILK, being duly sworn, hereby deposes and says: that deponent is not a party to the action, is over 18 years of age and resides in Hudson County, New Jersey.

    That on the 18th day of January, 2007, deponent served the within POSITION STATEMENT upon:

        EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
        Enforcement Unit
        New York District Office
        33 Whitehall Street – 5th Floor
        New York, New York 10004

        Attention: John Douglass, Intake Supervisor

        PEARLINE LIBURD
        Complainant
        c/o Gregory Smith, Esq.
        225 Broadway, Suite 3901
        New York, New York 10007

at the addresses designated by said parties for that purpose by Federal Express overnight delivery of same or a true copy of same enclosed in a properly addressed wrapper to each address, with all required Federal Express billing information, within the State of New York.

                                    _Rebecca B. Wilk_
                                    REBECCA B. WILK

Sworn to before me
this _18[th]_ day of January, 2007

_Marcia Saunders_
Notary Public

MARCIA SAUNDERS
NOTARY PUBLIC, State of New York
No. 31-4717171
Qualified in New York County
Commission Expires May 31, 2010

2640210.1

## FedEx Express — US Airbill

**FedEx Tracking Number:** 8582 4800 4487

### 1 From
**Date:** 01/18/07
**Sender's FedEx Account Number:** 1003-1812-1
**Sender's Name:** Nancy V. Wright  **Phone:** (212) 490-3000
**Company:** WILSON ELSER MOSKOWITZ LLP
**Address:** 150 E 42ND ST
**City:** NEW YORK  **State:** NY  **ZIP:** 10017-5612

### 2 Your Internal Billing Reference
08981.00035

### 3 To
**Recipient's Name:** John Douglass — Intake Supervisor  **Phone:** 212 336-3646
Equal Employment Opportunity Commission
**Company:** Enforcement Unit, New York District Office
**Recipient's Address:** 33 Whitehall Street, 5th floor
**City:** New York  **State:** NY  **ZIP:** 10004

0342492743

**Indirect Signature:** 519

**Find drop-off locations at fedex.com**
Simplify your shipping. Manage your account. Access all the tools you need.

---

494

## FedEx Express — US Airbill

**FedEx Tracking Number:** 8600 6308 4163

SPH31  0215  Sender's Copy

### 1 From
**Date:** 01/18/07
**Sender's FedEx Account Number:** 1003-1812-1
**Sender's Name:** Nancy V. Wright  **Phone:** (212) 490-3000
**Company:** WILSON ELSER MOSKOWITZ LLP
**Address:** 150 E 42ND ST
**City:** NEW YORK  **State:** NY  **ZIP:** 10017-5612

### 2 Your Internal Billing Reference
08981.00035

### 3 To
**Recipient's Name:** Pearline Liburd  **Phone:** (  )
**Company:** c/o Gregory Smith, Esq.
**Recipient's Address:** 225 Broadway, Suite 3901
**City:** New York  **State:** NY  **ZIP:** 10007

0349841564

**Indirect Signature:** 519

**Ship and track packages at fedex.com**
Simplify your shipping. Manage your account. Access all the tools you need.

## DISMISSAL AND NOTICE OF RIGHTS

To: **Pearline Liburd**
**5715 Mosholu Avenue**
**Apt. 4G**
**Bronx, New York 10471**

From: **Equal Employment Opportunity Commission**
**New York District Office**
**33 Whitehall Street, 5th Floor**
**New York, New York 10004-2112**

[ ] *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2007-00239** | **Enforcement Unit** | **(212) 336-3620** |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statute(s).

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____
Spencer H. Lewis, Jr., District Director

**SEP 2 1 2007**

Enclosure(s)                                                                                    *(Date Mailed)*

cc: **Bronx-Lebanon Hospital Center**
**c/o Wilson, Elser, Moskowitz, Edelman & Dicker**
**150 East 42nd Street**
**New York, New York 10017-5639**
**Attn: Nancy V. Wright**

## DECLARATION OF SERVICE

I, Nancy V. Wright, hereby declare that on March 11, 2008, I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF AND DEFENDANTS'** **RULE 12(B) (6) MOTION TO DISMISS** captioned *Pearline O. Liburd* v *Bronx Lebanon Hospital Center, et al.,* Index No.: 07 CV 11316 (HB), to be served by depositing same, enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York, on Plaintiff's counsel at the address below, this being the address provided by him for this purpose:

**Gregory G. Smith, Esq.**
**GREGORY SMITH & ASSOCIATES**
**Attorneys for Plaintiff**
**PEARLINE LIBURD**
**225 Broadway, Suite 3601**
**New York, NY 10007-1901**

Dated:    New York, New York
          March 11, 2008

By: _____
    Nancy V. Wright (NVW7834)
    **WILSON, ELSER, MOSKOWITZ,**
    **EDELMAN & DICKER LLP**
    Attorneys for **Joint Industry Board of the**
    **Electrical Industry** and **Thomas Bush**
    150 East 42nd Street
    New York, New York 10017-5639
    (212) 490-3000
    File No. 00851.00161

16

3124538.1