UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PEARLINE O. LIBURD,

                             Plaintiff,

          -v-

BRONX LEBANON HOSPITAL CENTER,
ANDREAS EVDOKAS individually and as
Administrative Director, RAYMOND ESTEVES
individually and as Assistant Vice President of
Clinical Services,

                          Defendants.

07 CV 11316 (HB)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S 12(B)(6) MOTION TO DISMISS

**Gregory Smith & Associates**
225 Broadway
Suite 3601
New York, NY 10007
212 267-2042

*Attorney for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................ii

PRELIMINARY STATEMENT ..........................................................................1

BACKGROUND AND PROCEDURAL HISTORY ............................................1

STANDARD FOR MOTION TO DISMISS .........................................................3

ARGUMENT ......................................................................................................5


I       PLAINTIFF ALLEGED FACTS SUFFICIENT TO PROVIDE FAIR
        NOTICE OF THE APPLICATION OF THE CONTINUING VIOLATION
        DOCTRINE AND IT SHOULD BE APPLIED TO HER
        DISCRIMINATION CLAIMS

        ...................................................................................................5

II      PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO STATE
        A LEGALLY COGNIZABLE CLAIM OF DISCRIMINATION

        .....................................................................................7


            A.  Plaintiff has alleged a hostile work environment

        ....................................................................................14


III     PLAINTIFF HAS ESTABLISHED A SECTION 1983 CLAIM

        ....................................................................................10


CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

## Federal Cases

Aman v. Cort Furniture Rental Corp.,
85 F.3d 1074, 1081-1083 (3rd Cir. 1996) .................................................................14,17

Bell Atlantic Corp. v. Trombly, 127 S. Ct. 1955, 1964 (2007) ...............................10,13

Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) ..................................................4

Brentwood Academy v. Tennessee Secondary School Athletic Association,
531 U.S. 288 (2001) ..................................................................................................19,20

Brightman v. Prison Health Service,
2007 U.S. Dist. Lexis 23724, *12 (E.D.N.Y. Mar. 30, 2007) ...............................7

Burlington Indus., Inc. v. Ellerth,
524 U.S. 742, 753, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998) .............................17

Burton v. Wilmington Parking Authority,
365 U.S. 715 (1961) ..................................................................................................19

Carrero v. New York City Housing Auth.,
890 F.2d 569, 579 (2d Cir. 1989) ...........................................................................7,17

Chambers v. Time Warner, Inc.,
282 F.3d 147, 154 (2d Cir. 2002) ...........................................................................4

Conley v. Gibson,
355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) .............................................4

Daval Steel Prods v. M/V Fakredine,
951 F.2d 1357, 1367 (2d Cir. 1991) ........................................................................13

Feingold  v. New York, 366 F.3d 138, 149-150 (2d Cir. 2004) .............................16

Fitzgerald v. Henderson, 251 F.3d 345, 362 (2d Cir.2001) ...........................................5,6

Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir.2000) ..................................4

Gregory v. Daly, 243 F.3d 687, 692 (2d Cir.2001) .................................................9,18

Harris v. Forklift Systems,
510 U.S. 17 ,21 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993) ....................................15,18

Horvath v. Westport Library Ass'n, 362 F3d 147, 151 (2nd Cir. 2004) ................20

Howley v. Town of Stratford, 217 F.3d 141, 154-56 (2d Cir. 2000) ....................16

Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.,
32 F.3d 697, 699 (2d Cir. 1994) ...........................................................................3

Johnson & Johnson v. Guidant Corp.,
No. 06 Civ. 7685, 2007 WL 2456625, at *4-*5(S.D.N.Y. Aug, 29 2007) ............10,13,14

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
507 U.S. 163 (1993) ..............................................................................................4,8

Merrill Lynch & Co., Inc., 32 F.3d 697, 699 (2d Cir. 1994) .................................3

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ...................................8

National R.R. Passenger v. Morgan,
536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ....................................5,6,7,18

Oncale v. Sundowner Offshore Servs., Inc.,
523 U.S. 75, 80, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998) ...................................15

Ortega v. New York City Off-Track Betting Corp.,
1999 U.S. Dist. LEXIS 7948 (S.D.N.Y. May 24, 1999) .........................................10

Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998) ..................5,16

Reeves v. Sanderson Plumbing Prods. Inc,
530 U.S. 133, 142-43 120 S.Ct. 2097, 2105-06, 147 L.Ed.2d 105 (2000) ............9

Richardson v. New York State Dep't of Corr. Serv.,
180 F.3d 426, 440 (2d Cir. 1999) .........................................................................7

Shah v. Meeker, 435 F.3d 244, 248 (2d Cir. 2006)    4

Svenningsen v. College of Staten Island,
Not Reported in F.Supp.2d, 2003 WL 21143076 (E.D.N.Y) ................................7

Swierkiewicz v. Sorema N.A.,

*534* U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) .....................................4,7-10,14

Texas Dept. of Community Affairs v. Burdine,
450 U.S. 248, 253---254 (1981) .............................................................................8

Thomas v. City of New York, 143 F.3d 31, 36-37 (2d Cir. 1998) ........................3

Torres v. Pisano, 116 F.3d 625, 631 (2d Cir. 1997) ..............................................9

West v. Atkins, 487 U.S. 42, 52 (1988) ..................................................................20

Wynder v. McMahon,  360 F.3d 73, 77 (2nd Cir.2004) ..........................................10

## PRELIMINARY STATEMENT

Plaintiff submits this Memorandum of Law in Opposition to Defendants' motion seeking to dismiss the complaint. Defendants argue for a motion to dismiss based upon the pleadings, yet the pleadings sufficiently set forth viable claims of violations of civil rights as against Defendants.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, a black woman, 61 years of age, with brown skin and of African Caribbean decent commenced her employment with defendant Bronx-Lebanon Hospital on October 24, 1994. She was employed as the Administrative Director of the Hospital's Harm Reduction Program until she was terminated on May 12, 2006.

After exhausting required administrative remedies, on or about December 17, 2007, Plaintiff filed her lawsuit for violations of her civil rights. Without answering the Complaint, the Defendants served by mail a motion to dismiss the case on or about March 13, 2008.

Plaintiff was hired to develop and implement a government funded program providing counseling and education regarding harm reduction, recovery readiness and HIV treatment for substance abusing HIV patients. Plaintiff's immediate supervisors at relevant time periods were Defendant Raymond Esteves, a white male of Hispanic origin and next Defendant Andreas Evdokas, a white male.

Plaintiff did very well in her employment and received annual pay increases until she did not accede to Defendant Esteves' request that she (unlike her non-African-Caribbean American, non-brown skin, male and younger colleagues), fabricate a

1

justification  to account for twelve computers purchased with grant money.  Subsequent to the decision not to accede to a fabrication of the use of government funds, from on or about February, 2005, Plaintiff was subjected to and was the subject of a continuous pattern of racist, sexist and derogatory remarks, was harassed and discriminated against and subjected to extra-supervision and scrutiny in her employment.

Plaintiff complained to her supervisors' supervisor about the harassment in October, 2005.  Instead of the situation being addressed and corrected, Plaintiff was subject to further and additional harassment, mistreatment and derogatory remarks in her employment.

In May, 2006 Plaintiff was terminated without reason and replaced with a young, less experienced, higher paid white female.  Plaintiff sets forth the painful information about the hostile, derogatory and discriminatory treatment by Defendants in factual statements entailing approximately 70 paragraphs of her Complaint.  She sets forth causes of action under the Age Discrimination in Employment Act, Title VII and 42 U.S.C. Sections 1981 and 1983.

To summarize the Complaint, Plaintiff was treated differently than other employees by Defendants.  She was terminated based upon her race, national origin, color and age and replaced by a less qualified young, white person.

Defendants did not answer the Complaint.  They instead seek to dismiss the complaint.  They seek to do this pre-discovery, and with the utilization of non-pleading, partial records in their exclusive control and possession.  It is clear that these records are improperly submitted for a pre-answer motion to dismiss because the lawsuit has not reached the period in the process that allows the content of those records to be subjected

2

to cross-examination or other scrutiny. The motion is especially egregious in that, almost all of the documents submitted as attachments to the motion are either Defendants' developed self serving documents or incomplete records of documents solely in Defendants' possession (see, *i.e.,* Exhibit F to Defendants motion: telephone records of Defendant Bronx-Lebanon Hospital's telephone system for one extension of the Hospital's telephone system covering the limited period of January 1, 2006 until March 31, 2006).

The Motion to Dismiss should be denied because the Complaint sets out more than enough information to satisfy the short, plain generalized statement of a claim that is required to be sufficient for Defendants to state their Answer as required by Rule 8 of the Federal Rules of Civil Procedure's pleading mandates. The Plaintiff has met the pleading stage requirement of setting forth claims for which there is a remedy and relief may be granted. Accordingly, this pre-answer motion should be denied in its entirety.

## STANDARD OF REVIEW

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept "as true the facts alleged in the complaint," Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc., 32 F.3d 697, 699 (2d Cir. 1994), and may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Thomas v. City of New York, 143 F.3d 31, 36-37 (2d Cir. 1998) (citations omitted). Furthermore, on a motion to dismiss, the Court's analysis is limited to information contained within the four corners of the

Complaint.[1] See Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002). The question for the Court "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotation marks and citations omitted). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. Id. In addition, the standard is applied with even greater force where the plaintiff alleges civil rights violations." Id. All reasonable inferences are to be drawn in the plaintiff's favor. Shah v. Meeker, 435 F.3d 244, 248 (2d Cir. 2006).

An employment discrimination complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). In order to survive a motion to dismiss, an employment discrimination plaintiff need not plead a prima facie case of discrimination, but must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512 (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993).

---

[1] Defendants are apparently proceeding under the mistaken belief that they filed a summary judgment motion pursuant to FED. R. CIV.P.56. Throughout Defendants memorandum they use extrinsic evidence. Plaintiff respectfully requests that the exhibits attached to defendant's memorandum not be considered in determining the sufficiency of this complaint. We have not had discovery and 12(b)(6) should be limited to the four corners of the complaint. For example, see Def.'s Mot. Dismiss 7-8 regarding the topic of unauthorized phone calls and the allegation that three people were fired; hospital employee statistics; id. at 8 and salary information, id. at 11 are not part of the complaint. See Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir.2000)(Court will not consider materials outside of the pleadings). Further, Defendants used 56 (c) cases to support their arguments. A close reading of the cases will likely lead this Court to conclude that they are not helpful in deciding this 12(b)(6) motion to dismiss.

## ARGUMENT

## POINT I

## PLAINTIFF ALLEGED FACTS SUFFICIENT TO PROVIDE FAIR NOTICE OF THE APPLICATION OF THE CONTINUING VIOLATION DOCTRINE AND IT SHOULD BE APPLIED TO HER DISCRIMINATION CLAIMS

Plaintiff has given *"fair notice"* of the facts or circumstances that support a continuing violation. Defendant's claim that all of Plaintiff's Title VII claims that arose from events prior to December 21, 2005 are time-barred is incorrect. Plaintiff maintains that the actions of Defendants constitute a "continuing violation," and therefore are not barred by the statutory time limitation.

The continuing violation doctrine is applicable, and the limitations period may be amended, when the alleged acts are attributable to a specific discriminatory policy or practice. Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2d Cir.1998). "[E]ven where there is no formal policy, the continuing violation theory may be used where there have been specific and related instances of discrimination and the employer has permitted them to continue un-remedied. Fitzgerald v. Henderson, 251 F.3d 345, 362 (2d Cir.2001). In National R.R. Passenger v. Morgan, the Supreme Court limited the continuing violation doctrine, holding that Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." Morgan, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Morgan also held that hostile work environment claims were not subject to the 300 day time limitation "so long as any act contributing to that hostile environment takes place within the statutory time period." Id. at 117.

Here, Plaintiff filed her charge of discrimination with the EEOC on or about October 16, 2006; thus, the limitations period in her case began 300 days earlier, on or

about December 21, 2005. However, under Fitzgerald, since Plaintiff alleged specific and related instances of discrimination that the employer permitted to continue un-remedied, each of the allegations supports a continuing violation. See Fitzgerald, 251 F.3d at 362. Defendants claim that Plaintiff's allegations in paragraphs 20, 27, 33-40, and 42-43 are time-barred. But, Plaintiff clearly says that, for reasons of unlawful discrimination, these acts were part of a conspiracy perpetrated by her supervisors, Esteves and Edvokas, to dismantle the HRP and to terminate Plaintiff. Pl's 1st Compl. ¶26. The harassment was reported, but, the employer permitted it to continue un-remedied. Id. at ¶42. Plaintiff maintains that the defendants directed racial epithets toward Plaintiff (id. at ¶¶ 36, 43, 49); throughout 2005 Esteves verbally abused Plaintiff (id. at ¶¶33, 34, 35); denied her training (id. at ¶ 34); threatened her career (id. at ¶ 35); undermined her authority (id. at ¶¶ 33, 37, 43);  ignored her presence (id. at ¶¶ 45, 46); unjustified monitoring and investigation (id. at ¶¶ 43, 47); stripped of specific executive duties (id. at ¶ 39) ; set unrealistic deadlines (id. at ¶ 53) and selectively disciplined her (id. at ¶¶ 55). Therefore, as instructed in Fitzgerald, these are the type of specific, related acts invoking the continuing violation doctrine. Fitzgerald, 251 F.3d at 362.

Morgan further held that "hostile work environment" claims were not subject to the statutory limitations period, and here Plaintiff clearly alleges facts sufficient to sustain a claim of hostile work environment under Title VII. See Morgan, 536 U.S. at 117. Plaintiff alleges that the hostile conduct began on or about February of 2005, which is a date outside the limitations period, and that this "continuous pattern of work place harassment [continued into the limitations period] culminating in her termination from employment" on May 12, 2006. Morgan instructs that under these facts, and under the

6

inference that these acts, described supra, were motivated by unlawful discrimination, the entire period should be analyzed for Plaintiff's hostile environment claim under Title VII, including conduct that occurred outside the 300 day time period [before December 21, 2005]. See Morgan, 536 U.S. at 117; See also Svenningsen v. College of Staten Island, Not Reported in F.Supp.2d, 2003 WL 21143076 (E.D.N.Y.); see also Brightman v. Prison Health Service, 2007 U.S. Dist. Lexis 23724, *12 (E.D.N.Y. Mar. 30, 2007)(because all inferences are to be drawn in Plaintiff's favor on a 12(b)(6) motion, the Court will, for the purposes of analyzing plaintiff's hostile environment claim under Title VII, consider the entire time period of her claim). Further, Plaintiff has alleged that defendants Esteves and others were responsible for the discriminatory conduct throughout the entire time period.[2] Pl.'s 1st Compl. ¶¶ 23, 77.

Because Plaintiff has alleged facts that support a continuing violation, Morgan and Fitzgerald directs that the Court should consider all of Plaintiff's claims, even those falling outside the 300 day time period.

## POINT II

### PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO STATE A LEGALLY COGNIZABLE CLAIM OF DISCRIMINATION

Plaintiff has alleged sufficient facts to provide the Defendants *"fair notice"*[3] of all discrimination claims. In opposition, Defendants have cited cases that are inapposite of the facts and circumstances of the Plaintiff's case. Further, Defendants are citing cases decided under Fed.R.Civ.P. 56(c), thereby, suggesting

---

[2] The Second Circuit has unambiguously stated that only conduct prompted by plaintiff's race contributes to a hostile work environment claim. See Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 440 (2d Cir. 1999) (citing Carrero v. New York City Hous. Auth., 890 F.2d 569, 580 (2d Cir. 1989)).
[3] Referring to Swierkiewicz, 534 U.S. at 512.

the use of a heightened pleading standard.[4] See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168—169 (1993)(this simplified notice pleading standard relies on [the] liberal discovery rules [as well as] summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims). Erroneously, Defendants cite cases that analyze whether or not a plaintiff achieved their evidentiary burden to support their allegations of discrimination. These decisions were relying on the United States Court of Appeals for the Second Circuit settled precedent, which requires a plaintiff in an employment discrimination complaint to allege facts constituting a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Pursuant to this framework, Plaintiffs are required to allege in their complaint: (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination. McDonnell Douglas, 411 U.S., at 802; Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253—254, n. 6 (1981). However, "the prima facie case under *McDonnell Douglas* [is an] evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N.A., *534* U.S. at 510. Further, Defendants spent a considerable amount of time arguing that "Plaintiff's wrongful termination claim should be dismissed because … [she] failed to identify any similarly situated employee who was treated like her." See Def.'s Mot. Dismiss 6-9(*See cases*). Defendants are advised that "Precise requirements of a prima facie case under *McDonnell Douglas* standard applicable to employment discrimination actions can vary depending on the context, and were

---

[4]See Def.'s Mot. Dismiss 6-13

never intended to be rigid, mechanized, or ritualistic." <u>Swierkiewicz v. Sorema</u>
<u>N.A.</u>, *534* <u>U.S.</u> at 513. For example, <u>Reeves v. Sanderson Plumbing Prods. Inc.</u>,
instructs that the evidentiary presumption of discrimination can be attained by
establishing that she was performing adequately; after discharging her, the
employer assigned someone else to do the same work. 530 <u>U.S.</u> 133, 142-43 120
S.Ct. 2097, 2105-06, 147 L.Ed.2d 105 (2000). Never the less, Plaintiff did allege
that "similarly situated male and non black employees and females over the age of
45" were not treated like Plaintiff. Pl.'s 1st Compl. ¶¶ 22, 23, 24, 30, 31, 35. She
further alleges that this has been a pattern and practice perpetrated by Esteves and
Edvokas. <u>Id.</u> at ¶¶50-52. Plaintiff has 12 years of experience with this employer, it
can be inferred that she is referring to specific individuals that were discriminated
against during this time period. "In other words, a simple declaration that
defendant's conduct violated the ultimate legal standard at issue (*e.g.*, it was
"because of sex" or "severe or pervasive") does not suffice" …"[and] it is enough
to assert facts from which, construing the complaint liberally and in the plaintiff's
favor, one could infer such a violation." <u>Gregory v. Daly</u>, 243 F.3d 687, 692 (2d
Cir.2001)(see also <u>Torres v. Pisano</u>, 116 F.3d 625, 631 (2d Cir. 1997*)* (concluding
that "general allegations of constant abuse" created a jury question as to severity
and pervasiveness, "even in the absence of specific details about each incident").

    In addition, Defendant's incorrectly premise their argument, that Plaintiff's
claim makes conclusory allegations, on a heightened pleading standard. See Def.'s
Mot. Dismiss 6-9. The cases cited by Defendants are examining the evidence
presented through a 56(c) motion when names of the *similarly situated* should have

been discovered at this stage in the litigation.  In opposing a heightened pleading standard, *Swierkiewicz*, instructs that "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily...." Swierkiewicz v. Sorema N.A., 534 U.S. at 512. In Wynder v. McMahon, the Court vacated and remanded a dismissal instructing that "legal theories, specific authority, statutory and case law, evidence ... in detail, and separate claims as to each defendant ... are not requirements imposed by *Rule 8*." 360 F.3d 73, 77 (2nd Cir.2004).

At the case at bar, with respect to Title VII claims, it provides, in pertinent part, as follows:

[It] shall be an unlawful employment practice for an employer--

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or  ....

*42 U.S.C. § 2000e-2(a)*.

Applying the relevant standard, Plaintiff's complaint satisfies the requirements of Rule 8(a) because it alleges sufficient facts to establish liability giving Defendants fair notice of the basis for Plaintiff's claims.  Defendants cannot legitimately argue that Plaintiff's complaint resembles the unsupported, bare allegations presented in Ortega v. New York City Off-Track Betting Corp., 1999 U.S. Dist. LEXIS 7948 (S.D.N.Y. May 24, 1999).[5] In *Ortega*, to support a sex discrimination claim, the plaintiff alleges that

---

[5] Defendants cite Ortega and Cicotto to argue that "isolated comments are not sufficient" and "that simple teasing is not enough," respectively, to state a claim of discrimination.  However, these cases are inapposite to the facts of Plaintiff's case since she  has offered a myriad of details to alleged "enough facts to state a claim to relief that is plausible on its face." Johnson & Johnson v. Guidant Corp., No. 06 Civ. 7685, 2007 WL 2456625, at *4-*5(S.D.N.Y. Aug, 29 2007)(quoting Bell Atlantic Corp. v. Trombly, 127 S. Ct. 1955, 1964 (2007).  See Def.'s Mot. To Dismiss 9 for Ortega citation.

"disparaging comments" were made about her weight by executives. Id. at *9. In contrast to *Ortega*, Plaintiff's complaint provides a detailed narrative of the Defendant's discriminatory conduct. Pl.'s 1st Compl. at ¶¶ 24, 25, 33, 34, 36, 39, 43, 45-48. Plaintiff alleges that she is an African-American female over the age of 55 and has been terminated on account of her race; sex; and age in violation of Title VII and the ADEA. Id at. ¶2. Plaintiff was hired specifically to implement a federally funded program she herself developed. Id.at ¶4. Because of her effective management skills, the program was annually approved for funding. Id. In fact, Plaintiff always performed her job satisfactorily; therefore, there was never a reason to terminate her for poor performance.[6] Id. at ¶5. Defendants Edvokas and Esteves[7] were Plaintiff's supervisors and they were responsible for the discriminatory conduct and Plaintiff's termination. Id. at ¶¶8- 12, 20.

Plaintiff alleges facts and allegations that suggest that it is plausible that Defendants fired Plaintiff because of her race and sex and age. Plaintiff alleges that from the very beginning, Esteves treated her differently and more severely because she was an African-American and because she was a female over the age of 40. Id. at ¶¶20, 23. She specifically stated that, unlike other similarly situated non minorities, she was asked to fabricate a lie to justify the purchase of computers. Id. at ¶¶27, 30-31. Esteves told her to justify the purchase by fraudulently reporting on federal documents that HRP established a computer lab. Id. at ¶29. Since, Esteves, an Assistant Vice President, and Plaintiff's direct supervisor, knew that there were strict federal guidelines for reporting

---

[6] Plaintiff was hired on October 24, 1994 and terminated May 12, 2006. She was qualified to perform her responsibilities as Administrative Director of Bronx Lebanon Hospital's Harm Reduction Program ("HRP"). Pl.'s 1st Compl. ¶¶ 4, 18, 19, 21, 65.
[7] Defendant Andreas Evdokas is a white male and Raymond Esteves is a white male of Hispanic origin." Pl.'s 1st Compl. ¶¶ 9, 11.

purchases, it can be inferred that he was aware[8] that Plaintiff could be terminated or even criminally prosecuted for fabricating this lie. Therefore, Plaintiff alleges that because the computers were ordered and a lab never materialized, Esteves was conspiring to dismantle HRP[9] to justify terminating her from her job. Id. at ¶¶26, 28, 29.

The following allegations infer a discriminatory motive for Esteves and Edvokas' conduct. Plaintiff alleges that, on or about September 14, 2005, Esteves called her a "black ass" as he walked by her while leaving Edvokas' office. Id. at ¶36. Esteves was also overheard saying to Edvokas, "I want her ass out of here." Id. On or about October 21, 2005, Defendant Esteves called her a "black ass" while Plaintiff was leaving a meeting. Id. at ¶43. She further alleges that on or about April 12, 2006, he told Tina F. Goldman, a white female, formerly the office manager, that he wanted to get rid of her "black ass," referring to Plaintiff. Id. at ¶49. It is rare that a witness has heard on three occasions a statement that provides direct evidence of both racial and gender based animus towards a Plaintiff and evidence that he was "conspiring" to adversely affect the terms and conditions of her employment. Id. at ¶¶26, 77.

Plaintiff alleges that Esteves is responsible for implementing a pattern and practice of wrongly terminating employees based on race, age and gender. Id. at ¶¶22, 23, 75. She specifically alleges that between the years 2004 and 2006, Esteves unlawfully terminated or forced non black employees and female employees over the age of 40 to resign. Id. at ¶51. Specifics will be detailed following the receipt through the liberal rules of the

---

[8] Pl.s 1st Compl. at ¶¶ 25, 26, 28, 32, 41 (Esteves and Edvokas conspired to dismantle the program and to fire Plaintiff).

[9] Plaintiff alleges that even though HRP was annually renewed and she was an effective manager for 12 years, Esteves and Edvokas stripped her of key executive responsibilities and key program features. Id.at ¶¶39, 48.

discovery process[10] of the documentation now in defendants' possession. Plaintiff relies on the discovery the data comprising the employers pattern and practice of the discriminatory conduct alleged in the complaint.

Plaintiff specifically alleges the discriminatory conduct used by Esteves to carry out her termination and the subsequent hiring of a non black with less experience. Plaintiff alleges that Esteves continuously harassed Plaintiff to either make her quit or to justify her termination because she is a black female over the age of forty. Id. at ¶¶24, 50, 77. Esteves, as soon as he became her supervisor, on or about December 2005 until her termination, unjustifiable criticized her performance, conspired to sabotage her employment, treated her harshly in meetings, denied her request to a conference she annually attended, initiated unwarranted investigations of her attendance, selectively disciplined her for use of the phones, and used racist language towards Plaintiff. Id. at ¶¶24, 26-29, 33, 34, 37, 44, 47, 51, 67, 68.

Plaintiff alleges conspiracies in her complaint and was careful to state "enough facts to state a claim to relief that is plausible on its face." Johnson & Johnson v. Guidant Corp., No. 06 Civ. 7685, 2007 WL 2456625, at *4-*5(S.D.N.Y. Aug, 29 2007)(quoting Bell Atlantic Corp. v. Trombly, 127 S. Ct. 1955, 1964 (2007)). Plaintiff alleges that as part of the pattern and practice, stated *supra*, Esteves solicited the help of others to implement his discriminatory conduct. She alleges that Esteves conspired with Edvokas and others to dismantle the HRP and thereby terminate Plaintiff's employment. Id. at

---

[10] Discovery of matters "relevant to the subject matter involved in the action" is appropriate. *See Fed. R. Civ. P. 26(b)(1)*. Relevance for discovery purposes means information that is reasonably calculated to lead to the discovery of admissible evidence. *See Daval Steel Prods v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991)*.

¶25. As part of this plan he tried to convince Plaintiff to fabricate lies about purchases to jeopardize the program's funding and her employment. Id. at ¶¶26-31. Esteves asked Tina F. Goldman to help him implement his scheme to terminate the Plaintiff's employment. Id. at ¶49. Then, as part of their conspiracy to dismantle the HRP, Esteves and Edvokas, armed with administrative decision making authority, eliminated key features of the program. Id. at ¶48. Finally, on or about May 2006, Esteves and Edvokas accused Plaintiff of making unauthorized phone calls. Id. at ¶55. Plaintiff has vehemently denied making these calls but was forced to pay $5,942.74 for this phone bill. Id. at ¶¶56-61. In summary, on or about May 12, 2006, Esteves and Edvokas completed their conspiracy when they terminated the Plaintiff. Id. at ¶66.  Defendants followed by disbanding the HRP. Id. at ¶69.  Plaintiff was replaced by Jennifer Marciano, a younger, less experienced white woman. Id. at ¶68.

Similar to the analysis in Swierkiewicz, "applying the relevant standard, petitioner's complaint easily satisfies the requirements of Rule 8(a) because it gives respondent fair notice of the basis for petitioner's claims." See Swierkiewicz v. Sorema N.A., 534 U.S. at 514. The allegations, *supra*, provides Defendants fair notice of Plaintiff's discrimination claims and the facts sufficiently allege that the conduct was because of Plaintiff's race, sex and age.[11]  Further, Plaintiff alleged *sufficient facts*, [12]enough facts to state a claim to relief that is *plausible on its face*.[13]  For the foregoing reasons, Defendants motion to dismiss must be denied.

### A. Plaintiff has alleged a hostile work environment

---

[11] Plaintiff must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512.
[12] Amron, *464 F 3d at 343-344*
[13] Johnson, 2007 WL 2456625, at *4-*5.

Plaintiff gives Defendants fair notice of the facts or circumstances that will support a hostile work environment. Plaintiff alleges that Esteves created a racially charged hostile environment which discriminated against her with respect to her employment. Id. at ¶¶24, 102. "Harms suffered in the workplace are cognizable under Title VII, even when they are not the result of "tangible employment actions," if they arise from conduct (1) that is "objectively" severe or pervasive -- that is, if it creates "an environment that a reasonable person would find hostile or abusive" [the "objective" requirement], Harris v. Forklift Systems, 510 U.S. 17 ,21 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993), (2) that the plaintiff "subjectively perceives" as hostile or abusive [the "subjective" requirement], id., and (3) that creates such an environment because of plaintiff's race[14] (or other characteristic protected by Title VII) [the "prohibited causal factor" requirement], see Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998) (emphasizing that Title VII does not prohibit all workplace harassment, but only that which involves statutorily proscribed forms of discrimination).

Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Harris, 510 U.S. at 21-22. The effect on the employee's psychological well-being is relevant in determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into

---

[14] Defendants cite Pagan, to argue that Plaintiff has not alleged she was discriminated against because of race. See Def.'s Mot. To Dismiss 10. Defendants are wrong since Plaintiff alleges that the hostile environment and all other conduct were based on race, age, and sex. Pl.'s 1st Compl.¶¶50-52, 74.

account, no single factor is required. Id. Also, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." Feingold v. New York, 366 F.3d 138, 149-150 (2d Cir. 2004). For liability to attach, the employer must also be responsible for the conduct at issue. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998).

Defendants present an attack on the severity of Plaintiff's hostile workplace environment. Def.'s Mot. Dismiss 12. They ask the court to rely solely on three of the many allegations in the complaint to decide the sufficiency of whether Plaintiff alleged a viable hostile environment claim. Id. First, looking at the totality of the circumstances rather than to individual events in isolation,[15] Plaintiff could reasonably have found her workplace to be severely and pervasively hostile. Esteves conduct included racist and gender based verbal abuse on three or more occasions;[16] throughout 2005 he verbally abused her at peer meetings;[17] undermined Plaintiff's supervisory authority and by treating Plaintiff differently in the presence of departmental manager meetings by addressing her in harsh, condescending tones and ignoring her questions and calling Plaintiff's subordinates throughout 3 months asking for her whereabouts (see *Howley v. Town of Stratford, 217 F.3d 141, 154-56 (2d Cir. 2000)* (holding that conduct "diminishing the respect accorded [plaintiff] by subordinates and thereby impairing her ability to lead" can, in appropriate circumstances, contribute to a hostile work

---

[15] See Harris, Harris, 510 U.S. at 23.(whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances …, no single factor is required).

[16] See Pl.'s 1st Comp. ¶¶ 36, 43, 49
[17] See Id. at ¶33.

environment);[18] denied her training opportunities ( See *Carrero v. New York City Housing Auth., 890 F.2d 569, 579 (2d Cir. 1989)* (noting that denying plaintiff "adequate training" contributes to a hostile work environment in which plaintiff is deprived "of a fair and equal opportunity to succeed at her position");see also Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081-1083 (3rd Cir. 1996)(A hostile work environment claim can be established by evidence of more subtle treatment like unfair job assignments, denial of training, and unfair disciplinary action.) [19] Esteves' statement to Tina F. Goldman to help him "nail her," and statement to Evdokas "I want her black ass out of here," made it clear that he was out to terminate her employment (See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998) (distinguishing between making threats and carrying them out).[20]

Plaintiff subjectively perceived her work environment to be hostile because she alleges that Esteves, Edvokas and others conspired to dismantle the HRP for the purpose of terminating her employment. See Pl.'s 1st Comp. ¶¶ 25-26. She knew that Esteves had a reputation for terminating older female workers and black people and hiring younger female workers and non blacks. Id. at ¶75. A long time employee told her that Esteves wanted her to help him get "rid of her black ass." Id. at ¶49. Esteves ordered her to violate federal policy by fabricating a justification to use federal dollars to set up a fathom computer lab. Id. at ¶27. As part of the plan to terminate Plaintiff's employment, Esteves falsely accused her of unauthorized use of the phone system and then pressured her to pay for thousands of dollars in phone charges she vehemently denied incurring. Id. at 55-64. Plaintiff alleges that the on-going workplace harassment placed her under

---

[18] See Id. at ¶27, 33, 39, 43, 45-48.
[19] See Id. at ¶34.
[20] See Id. at ¶36.

extreme stress[21] causing her to seek a transfer[22] from the program she developed and effectively administered for 12 years, hence, "leaving no doubt that she subjectively[23] perceived the work environment to be hostile and abusive." Gregory v. Daly, 243 F.3d 687, 694 (2d Cir.2001)(conduct comprising verbal abuse, diminishing respect amongst subordinates and peers, withholding training, and references to sex could reasonable be perceived as hostile and abusive).

Finally, Defendants incorrectly claims that Plaintiff never reported the harassment "anytime during her employment." Def.'s Mot. Dismiss at 13. However, Plaintiff clearly alleges that the discriminatory conduct was reported to Esteves superiors. [24]

Plaintiff sufficiently alleged a hostile work environment under the continuing violation doctrine because a person could reasonable perceive, after the on-going cumulative weight of harassment, selective discipline, racial epithets, threats, under mind her authority, withhold training, and conspiracy to dismantle the HRP and to terminate her from a career she love, all in the context of her knowledge that Esteves has done the same to others like her in the past, this workplace to be hostile and abusive. For all the reasons foregoing, Defendant's motion to dismiss should be rejected.

---

[21] The effect on the employee's psychological well-being is relevant in determining whether the plaintiff actually found the environment abusive. Harris, 510 U.S. at 21-22.

[22] Pl.'s 1st Comp. at ¶40. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)( hostile work environment claim is based upon cumulative affect of individual acts).

[23] The applicable standard is whether "a reasonable person would find hostile or abusive -- as well as the victim's subjective perception that the environment is abusive." Harris, 510 U.S. at 21-22.

[24] On or about October 18, 2005, Plaintiff reported the harassment through a memorandum to Dr. Levine, Chairman of the Psychiatry Department. Pl's 1st Compl. ¶42. Further, on or about October 2005, she reported the harassment to defendant Edvokas. Id. at 40.

18

## POINT III

## PLAINTIFF HAS ESTABLISHED A SECTION 1983 CLAIM
## (RESPONDING TO DEFENDANTS' POINT III)

Actions of private entities can sometimes be regarded as governmental action for constitutional purposes. Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961). If an entity's regulatory activity is pervasively entertained with government policies or when government is entwined in the management or control of the entity, then the legal entity's character is not determined by its expressly private characterization in statutory law but, state action by that entity may be found when there is sufficient public entwinement in the management or control of an organization.   This is true for a defendant entity whose nominally private character is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings and there is no reason to claim unfairness in applying constitutional standards to the entity. Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288 (2001) (not for profit athletic association regulating interscholastic sports among Tennessee high schools found appropriate for suit under 42 U.S.C. Sec. 1983).

Plaintiff should be granted her day in court to demonstrate state action and, similar to Brentwood, the challenge regarding the sufficiency of proof of state action in the instant case should be decided at best by a summary judgment motion. The instant case's Section 1983 claim is based upon the authorizing and continuously regulating state and federal funding regulations creating the entwinement with the state and Bronx Lebanon Hospital. The details demonstrating that relationship is in the possession of the Defendant Bronx-Lebanon Hospital and Plaintiff should be entitled to discovery to go

forward on that claim.  See, Horvath v. Westport Library Ass'n, 362 F3d 147, 151 (2nd Cir. 2004) (Reversal of granting of a summary judgment motion on issue of whether Section 1983 claim was proper because Defendant claimed that it was not a state actor. Evidence reviewed by the Second Circuit included affidavits and the collective bargaining agreement of the Defendant.  The Second Circuit quoted *Brentwood* for the statement that: "What is fairly attributable [to the government] is a matter of normative judgment, and the criteria lack rigid simplicity.  From the range of circumstances that could point toward the State behind an individual face, no one can function as a necessary condition across the board for finding state action.... " Brentwood Academy v. Tennessee School Athletic Ass'n, 531 U.S. 388, 295-96); West v. Atkins, 487 U.S. 42, 52 (1988) (Reversal of summary judgment motion dismissing plaintiff's claim that defendant acted under color of state law, part of evidence considered was Manual governing defendant's performance requirements).  Indeed, the Defendant Bronx-Lebanon Hospital's governmentally funded Harm Reduction Program, referred to in the Complaint at paragraph 6, was the source of Plaintiff's allegation of wrongful spending that led to the individual defendants to take adverse action against her.  Accordingly, Bronx Lebanon Hospital is appropriate for suit under 41 U.S.C. Sec. 1983.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court deny Defendants Rule 12(b)(6) motion to dismiss Plaintiff's complaint.


Dated: April 15, 2008
New York, NY

Respectfully Submitted,

Gregory Smith & Associates

By: _____s_____
          Gregory G. Smith (GS9900)

On the Brief :
Gerald Graves, Esq.
Janet J. Lennon, Esq.

## CERTIFICATION OF SERVICE

I, Gregory G. Smith, certify that a copy of Plaintiff's Memorandum of Law In

Opposition to Defendant's 12(b)(6) Motion to Dismiss was served by electronic

mail on April 15, 2008 upon:

> Nancy V. Wright, Esq.
> Wilson, Elser, Moskowitz,
> Edelman & Dicker LLP
> Attorneys for Defendants
> 150 East 42nd Street
> New York, New York 10017-5639
> email address: nancy.wright@wilsonelser.com

Dated: New York, New York
     April 15, 2008

> _____s\_____
> Gregory G. Smith, Esq.