UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
            :
PEARLINE O. LIBURD,            :
            :
          Plaintiff,    :
            :    07 Civ. 11316 (HB)
     - against -       :
            :    **OPINION & ORDER**
BRONX LEBANON HOSPITAL CENTER, ANDREAS:
EVDOKAS, individually and as Administrative  :
Director, RAYMOND ESTEVES, individually and as :
Assistant Vice President of Clinical Services,  :
            :
         Defendants.   :
            :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

       Defendants Bronx Lebanon Hospital Center ("Hospital"), Hospital Administrative Director Andreas Evdokas ("Evdokas") and Assistant Vice President of Clinical Services Raymond Esteves ("Esteves") move to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), the Complaint filed December 17, 2007 by Plaintiff Pearline O. Liburd ("Liburd"). Liburd presses seven claims against each of the Defendants, for discrimination based on her race, color, sex, and age, the creation of a hostile work environment, and retaliation for complaining about it. For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

## I.  FACTUAL BACKGROUND

       Liburd, a black woman of African-Caribbean descent, was hired by the Hospital on October 24, 1994 to implement its federally funded Harm Reduction Program ("HRP"), which provided counseling on harm reduction, recovery readiness, and HIV treatment options for substance-abuse HIV patients. Compl. ¶¶ 4, 6, 16-17. Liburd was employed as the HRP's Administrative Director until the Hospital terminated her employment on May 12, 2006, when she was fifty-nine years old. *Id.* ¶¶ 5-6. Esteves was Liburd's supervisor from May 1, 2002 to December 9, 2005, followed by Evdokas until her termination. *Id.* ¶ 20.

    **A.**    **Alleged Discrimination During 2005**

       The Complaint alleges that in February 2005 Esteves pressured Liburd to lie to the HRP's federal funding agency about his purchase of computers with HRP's grant money. *Id.* ¶ 27. He ordered the computers, billed them to the HRP and told Liburd to "come up with a creative

1

justification for the computers for the funding agency." She objected but ultimately complied with his request. Liburd's Oct. 16, 2006 Charge of Discrimination ("Charge") at 1, Ex. B to Defs.' Mem. Supp. Mot. Dismiss. ("Defs.' Mem."). Liburd claims that from that point on Esteves and Evdokas discriminated against her on account of her race, color, gender and age.

Liburd alleges that from June 2005 until her termination, Esteves called the HRP office daily to harass her. Charge ¶ 6. Throughout 2005 she asserts that Esteves used a harsh and condescending tone of voice toward her at monthly departmental meetings and that at a September 2005 meeting he "verbally abused" her because she asked to attend a professional conference. Compl. ¶¶ 33-34. She claims that Esteves had no reason to deny her request to attend the conference because it had already been funded and she had attended in previous years. She alleges that Evdokas was present but said nothing on her behalf. *Id.* ¶ 34. In front of her staff, Esteves threatened to transfer her to another department. *Id.* ¶ 35.

According to the Complaint, Liburd overheard Esteves tell Evdokas in September 2005: "I want her ass out of here." Esteves started calling other HRP employees to monitor her whereabouts and again told Liburd she would be transferred. *Id.* ¶¶ 36-38. The next month, Liburd alleges that Esteves and Evdokas, with no explanation, stripped her of key executive responsibilities, including hiring and firing. *Id.* ¶ 39. Liburd asked Evdokas for a transfer to escape Esteves' continued harassment, but she alleges Evdokas refused her request because he and Esteves were conspiring to terminate her employment. *Id.* ¶¶ 40-41. Consequently, on October 18, 2005, Liburd wrote a memorandum to Dr. Levine, Chairman of the Psychiatry Department and Esteves' and Evdokas' supervisor, to complain about the "harassment." She asserts that Dr. Levine failed to intervene. *Id.* ¶ 42. In October 2005, Liburd claims she heard Esteves refer to her as a "black ass." *Id.* ¶ 43.

B.   **Alleged Discrimination During 2006**

In February 2006 Liburd complained to Evdokas that Esteves refused to say "hello" to her and would fix her with a "vicious stare." *Id.* ¶ 45. In March 2006 she alleges that at a meeting presided over by Esteves, Esteves ignored her in front of other employees whenever she directed a question to him. *Id.* ¶ 46. From March to May 2006, Esteves increased his monitoring of Liburd by calling the HRP every morning to ask other employees for her whereabouts. *Id.* ¶ 47. In April 2006, Esteves and Evdokas eliminated certain HRP programs that she had implemented—acupuncture, the Friday free breakfast program and the Saturday program—even though these programs had been successful with HRP patients and the Friday

and Saturday programs were already fully funded by federal grants, she alleges. *Id.* ¶ 48.

Liburd's Charge claims that in April 2006 Esteves told another employee that he wanted to fire Liburd, explaining, "I have a problem with black people and I don't like her. I want her black ass out of here." Charge ¶ 7. The Complaint asserts that around this time Esteves asked Tina Goldman, a white female Hospital employee and the Department of Psychiatry Office Manager, to help him "nail," or fire, Liburd and get rid of her "black ass." Compl. ¶ 49. In April 2006 Esteves and Evdokas allegedly set an unrealistic time frame of one week for Liburd to close the HRP's inactive case files. *Id.* ¶¶ 53-54.

Liburd asserts that in May 2006 Esteves and Evdokas "selectively" disciplined her for making allegedly unauthorized telephone calls, even though all HRP employees had access to her telephone and some of the unauthorized calls took place when she was out of the office. *Id.* ¶ 55. During a meeting on May 8, 2006, Jason Nhambiu ("Nhambiu"), the Hospital's Director of Labor Relations, ordered Liburd to repay $5,942.74 of unauthorized charges for calls made in February and March 2006 and to account for nearly 300 calls within the next twenty-four hours. *Id.* ¶¶ 62-63. Fifteen minutes later, Liburd alleges, Evdokas told her that Esteves wanted the accounting immediately, and then followed her through the office, including to the ladies' room. *Id.* ¶ 64. On May 12, 2006, Nhambiu told Liburd that Esteves and Evdokas were dissatisfied with her management, and shortly thereafter Defendants fired her. *Id.* ¶¶ 65-66.

Liburd alleges that Defendants replaced her with Jennifer Marciano ("Marciano"), a younger, less experienced, white female who was paid more than Liburd. *Id.* ¶ 68. In 2007, one year after her termination, the Hospital replaced the HRP with a wellness program, and Esteves promoted Marciano to the position of Co-Director of Psychiatry along with Ibet Hernandez, a white Hispanic female. *Id.* ¶ 69.

## II. DISCUSSION

Liburd contends that her Complaint states claims for race and color discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count I); age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 ("ADEA") (Count II); hostile work environment under Title VII (Count III); discrimination and retaliation in violation of 42 U.S.C. § 1983 ("§ 1983") (Count IV); sex discrimination under Title VII (Count V); color and race discrimination under 42 U.S.C. § 1981 ("§ 1981") (Count VI); and hostile work environment based on race under § 1981 (Count VII).

### A. Standard of Review

To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (*Twombly*); *see also Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (applying *Twombly* standard to motion to dismiss Title VII claims). The factual allegations "must be enough to raise a right to relief above the speculative level." 127 S. Ct. at 1974. The court must accept all the well-pleaded allegations of the claim as true and must draw all reasonable inferences in the claimant's favor. *Id.* at 1965. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [the counterclaimant's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly,* 127 S. Ct. at 1974).

In assessing the legal sufficiency of a claim, the court may consider facts alleged in the complaint, as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Patane*, 508 F.3d at 111 (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)). Therefore, in addition to the Complaint, I consider the Charge that Liburd filed with the Equal Employment Opportunity Commission ("EEOC") and referenced in her Complaint. *See* Compl. ¶ 15. I do not consider the position statement submitted by the Hospital to the EEOC, *see* Defs.' Mem. Ex. B, nor do I consider the other Hospital documents that Defendants appended to their Motion to Dismiss, *see* Defs.' Mem. Exs. B-G, because there is no indication in the Complaint or elsewhere that Liburd relied on these documents in bringing suit.

### B. Title VII and ADEA Claims against Individual Defendants

"[I]ndividuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000). Similarly, "[i]t is well established that '[i]ndividual supervisors are not "employers" amenable to suit under . . . the ADEA.'" *Tishman v. Associated Press*, No. 05 Civ. 4278, 2005 WL 3466022, at *2 (S.D.N.Y. Dec. 16, 2005) (quoting *Bailey v. Synthes,* 295 F. Supp. 2d 344, 354 (S.D.N.Y. 2003)). Therefore, Liburd's Title VII and ADEA claims against her individual supervisors, *i.e.*, Defendants Esteves and Evdokas, are dismissed. Specifically Counts I, II, III and V of Liburd's Complaint are hereby dismissed as to Defendants Esteves and Evdokas.

## C. Significance of Alleged Facts Prior to December 21, 2005

Defendants argue that any claims premised on acts that occurred prior to December 21, 2005 are time-barred under Title VII and the ADEA. Liburd may not base her lawsuit on any discriminatory employment practice that took place before December 21, 2005. However, the Court may consider events prior to this date as background to any alleged discrimination after it.

Under the statute, Liburd was required to file her Charge with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(l); *see Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 326-27 (2d Cir. 1999). If an employee fails to submit a timely EEOC charge with respect to an employment practice, the employee may not challenge that practice in court. 42 U.S.C. § 2000e-5(f)(l); *see Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2166-67 (2007). The 300-day statute of limitations also applies to ADEA claims. 29 U.S.C. § 626(d)(2); *see Reinhard v. Fairfield Maxwell, Ltd.,* 707 F.2d 697, 700 (2d Cir. 1983).

Here, Liburd filed her Charge with the EEOC on October 16, 2006. Defs.' Mem. Ex. B. Therefore, for purposes of her Title VII and ADEA claims, this Court may not consider as an unlawful employment practice any alleged discriminatory act that took place prior to December 21, 2005, which is 300 days before the date of Liburd's Charge. "Employment practice" "generally refers to 'a discrete act or single occurrence' that takes place at a particular point in time." *Ledbetter*, 127 S. Ct. at 2169 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-11 (2002) (*Morgan*)). Termination, failure to promote, denial of transfer, and refusal to hire each constitutes such a discrete act. *Id.* Thus here, for example, Liburd may not challenge Defendants' denial of her October 2005 request for a transfer as an unlawful employment practice because such denial occurred outside the statutory period.

However, Liburd may allege facts before December 21, 2005 to show the background that allegedly led up to the later act. The Supreme Court acknowledged in *Ledbetter* that

> there may be instances where the elements forming a cause of action span more than [300] days. . . . Say, for instance, an employer forms an illegal discriminatory intent towards an employee but does not act on it until [301] days later. The charging period would not begin to run until the employment practice was executed on day [301] because until that point the employee had no cause of action. The act and intent had not yet been joined.

*Id.* at 2171 n. 3; *see also Morgan*, 536 U.S. at 113 (employee may use "past acts" taking place before the 300-day time period as "background evidence in support of a timely claim").

Additionally, for purposes of Liburd's hostile work environment claim in Count III of her

5

Complaint, this Court may consider all of her allegations; the 300-day time period does not apply. *See Morgan*, 536 U.S. at 115 ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct.").

### D. Race, Color and Sex Discrimination under Title VII (Counts I and V)

Title VII makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has held that, faced with a Rule 12(b)(6) motion, a court must evaluate complaints of discrimination under the standard in Fed. R. Civ. P. 8(a)(2), which requires of pleadings "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). *Swierkiewicz* established that "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." 534 U.S. at 513; *see also Boykin v. Keycorp*, 521 F.3d 202, 212 (2d Cir. 2008) (decided after *Twombly*). In *Swierkiewicz*, the Court held that the complaint "easily satisfied the requirements of Rule 8(a)" because it "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." 534 U.S. at 514.

In contrast, a complaint that "provides no . . . detail manifesting any form of racial animus, discriminatory words, prior incidents or other indications that [the plaintiff's protected class] race played a role in [the employer's] decision to dismiss him" is insufficient to satisfy the minimum pleading standards of Rule 8(a)(2). *Perry v. Sony Music*, 462 F. Supp. 2d 518, 520 (S.D.N.Y. 2006); *see, e.g.*, *Watts v. Servs. for the Underserved*, No. 06 Civ. 2156, 2007 WL 1651852 (E.D.N.Y. June 6, 2007) (dismissing complaint because it "fail[ed] to allege even one fact tending to show that [defendant] took her religion or color into account").

#### 1. *Race and Color Discrimination under Title VII (Count I)*

Here, Liburd's claim of race and color discrimination barely makes the cut to survive the motion to dismiss. Liburd's Complaint and Charge allege several remarks by her supervisor which, if true, would evince racial animus, *i.e.*, "I want her black ass out of here," and "I have a problem with black people." Along with the allegations that she was replaced with a white employee and that Defendants "selectively" disciplined her, these comments are sufficient to state a claim, at the pleading stage, that she was fired on account of her race and color.

6

Defendants rely on *Khan v. Abercrombie & Fitch, Inc.*, No. 01 Civ. 6163, 2003 WL 22149527 (S.D.N.Y. Sept. 17, 2003), in which Judge Pauley found that being called a "black bitch" by a *coworker* did not raise a sufficient inference of discrimination to survive the employer's motion for *summary judgment*. *Id.* at *6. In *Khan*, however, the plaintiff bore the burden to make out a *prima facie* case under *McDonnell Douglas*, which does not apply to a motion to dismiss. Further, the discriminatory remarks in that case were made by a coworker, and not a supervisor, as here. Liburd has alleged sufficient facts to nudge her race and color discrimination claim from conceivable to plausible, and therefore Liburd's Title VII claim against the Hospital in Count I will proceed and Defendants' motion is denied.[1]

### 2. Sex Discrimination under Title VII (Count V)

"The *sine qua non* of a gender-based discriminatory action claim under Title VII is that 'the discrimination must be *because of* sex.'" *Patane*, 508 F.3d at 112 (emphasis in original) (quoting *Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 189 (2d Cir. 2001)). Here, Liburd has alleged no fact which, if true, would suggest that Defendants' actions were motivated by a gender bias. Her Complaint does not, for instance, allege that any of the Defendants made remarks that could be viewed as reflecting discriminatory animus based on sex. *See, e.g.*, *Patane*, 508 F.3d at 112 (citing *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992)). Nor does the Complaint allege that any male employees were given preferential treatment. *See Patane*, 508 F.3d at 112 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981)). She alleges that she was replaced by a woman and that her supervisor confided in a woman that he wanted to fire her. That her supervisors were male is insufficient in itself to state a claim for sex discrimination. *See George v. New York City Health & Hosp. Corp.*, No. 02 Civ. 1818, 2003 WL 289617, at *3 (S.D.N.Y. Feb. 11, 2003). Her sex discrimination claim thus fails to state a facially plausible claim, and Count V is dismissed.

### E. Age Discrimination under the ADEA (Count II)

The ADEA provides that "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). For the ADEA's protection, an employee must be "at least 40 years of age." *Id.* § 631(a).

Liburd has alleged no fact which, if true, would suggest that Defendants were motivated

---

[1] As explained above, Liburd's Title VII claims against the individual Defendants are dismissed.

by an age bias. *See, e.g.*, *Wilson v. Family Dollar Stores*, No. 06 Civ. 639, 2007 WL 952066 (E.D.N.Y. Mar. 29, 2007) (dismissing complaint as conclusory where "plaintiff [did] nothing more than simply state that she was discriminated against based on her age and has failed to state any of the events or incidents that she believes form the basis of her age discrimination claim"). Liburd's conclusory allegation that the Hospital discriminated against her on account of her age is belied by her having been hired when she was forty-seven years old, and thus already a member of the protected class. *See* Compl. ¶¶ 5-6; *Hirsh v. Arthur Anderson & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("[C]onclusory allegations need not be credited . . . when they are belied by more specific allegations in the complaint."); *see also Whyte v. Contemporary Guidance Servs., Inc.*, No. 03 Civ. 5544, 2004 WL 1497560, at *3 (S.D.N.Y. July 2, 2004) (dismissing ADEA claim where plaintiff was already over forty years old when he was hired).

Although Liburd alleges that she was replaced by a younger employee, this, without more, is not enough to survive a motion to dismiss. *See Watts*, 2007 WL 1651852, at *3 ("Employment discrimination cases decided in the Second Circuit after *Swierkiewicz* . . . require a modicum of facts regarding the adverse action and the disparate treatment involved."). Therefore, Liburd's ADEA claim in Count II of her Complaint is dismissed.

### F. Hostile Work Environment under Title VII (Count III)

To state a claim for hostile work environment under Title VII, a plaintiff must plead facts that show that the complained-of conduct: "(1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected class]." *Patane*, 508 F.3d at 113 (internal citation omitted). The Second Circuit has "repeatedly cautioned against setting the bar too high" and has held that "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Id.* (internal citation omitted).

Here, the Complaint alleges that Esteves used a harsh tone of voice toward her at meetings, that he "verbally abused" her in front of other staff members, that he refused to permit her to attend a conference even though her participation had already been funded, that during an "abusive tirade" in front of other staff members he threatened to transfer her to another department, that he told others that he wanted "her ass out of here," that he called her subordinates to monitor her whereabouts, that Esteves and Evdokas stripped her of key executive

responsibilities, that Esteves referred to her as a "black ass," that he demanded to know where she was going when she left to get lunch, that he ignored her during meetings, that Esteves and Evdokas eliminated her successful HRP programs, that Esteves asked another employee to help him fire her, that Esteves and Evdokas set an unrealistic time frame for her to complete her work, that they "selectively" disciplined her for making allegedly unauthorized telephone calls, and that on one occasion Evdokas followed her around the office, including to the ladies' room.

A reasonable employee could find that the cumulative effect of such treatment amounted to a turn for the worse in her employment conditions, and "a jury could well conclude that Plaintiff was subject to frequent severely offensive conduct that interfered with her ability to perform her . . . function" as HRP Administrative Director. *See Patane*, 508 F.3d at 114. At this stage, Liburd has alleged sufficient facts showing that Plaintiff was subjected to a hostile work environment and that it was due at least in part to her race and color, *e.g.*, that Esteves repeatedly referred to her "black ass."[2] Therefore, Liburd's race-based hostile work environment claim survives Defendants' motion to dismiss.[3]

### G. § 1983 Claim (Count IV)

It is well-established that a § 1983 claim can be lodged only with respect to state action. *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 837-38 (1982)). The Supreme Court has identified three possible justifications for determining that particular conduct constitutes "state action." *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982). First, state action exists if there is a sufficiently close nexus between the state and the challenged action of a regulated entity such that the action may be fairly treated as that of the state; the inquiry is whether the state is responsible for the specific conduct of which the plaintiff complains. *Id.* at 1004. Second, a state may be held responsible for private conduct if it has exercised coercive power or has provided such significant encouragement that the action must in law be deemed to be that of the state. *Id.* Finally, state action may be present if the private entity has exercised powers that are traditionally the exclusive prerogative of the state. *Id.* at 1005.

Courts have held that the actions of private medical facilities are not "fairly attributable" to the government despite the presence of government regulation, funding, or both. *See, e.g.*, *id.*

---

[2] Liburd does not allege sufficient facts to suggest the hostile work environment was due to age or gender.
[3] As explained above, Liburd's Title VII claims against the individual Defendants are dismissed, and so her Title VII claim for hostile work environment survives as against the Hospital only.

9

at 1008, 1011 (although private nursing home was funded and regulated by the state, its alleged bad conduct could not be attributed to the state). In *Amofa v. Bronx-Lebanon Hospital Center*, No. 05 Civ. 9230, 2006 WL 3316278 (S.D.N.Y. Nov. 13, 2006), Judge Stein observed that "[u]nless certain rare conditions exist, private hospitals such as Bronx-Lebanon are not state actors for purposes of Section 1983." *Id.* at *4. In that case, the plaintiff argued that his § 1983 claim should proceed because the State of New York and New York State Department of Health funded the hospital projects on which he was staffed, and that in return for state funding Bronx-Lebanon was required to send a monthly report to the government. *Id.* The court nevertheless dismissed his claim and held that "even if [the plaintiff] had alleged that Bronx-Lebanon receives a considerable percentage of its funding from the government, and even if the hospital must follow government regulations that require monthly reporting, such facts would not convert [the plaintiff's] termination into state action." *Id.* Under the same reasoning, Liburd has not pled facts sufficient to show state action on the part of the same hospital here.

In her memorandum in opposition to the motion to dismiss, Liburd explains that her § 1983 claim "is based upon the authorizing and continuously regulating state and federal funding regulations creating the entwinement with the state and Bronx Lebanon Hospital." Pl.'s Mem. Opp. 19. However, the Supreme Court has cautioned that a predominance of public funding is not conclusive evidence of state action. *Rendell-Baker*, 457 U.S. at 841 (holding that a school was not a state actor for purposes of the petitioners' employment claims, even though public funds accounted for more than 90% of the school's operating budget). The Court emphasized that "the decisions to discharge the petitioners were not compelled or even influenced by any state regulation." *Id.*

Liburd does not plead that the Hospital's employment practices were influenced by the state. Neither does she allege that the Hospital exercises powers that are traditionally the prerogative of the state, or that the Hospital's governing body was comprised of individuals appointed or influenced by the state. *Cf. Horvath*, 362 F.3d at 152 (finding that public library was state actor where half its governing trustees were appointed by the town). Therefore, Liburd's § 1983 claim is dismissed.

### H.   § 1981 Claims: Counts VI and VII

Count VI asserts that Defendants violated § 1981 by discriminating against Liburd because of her color and race, and Count VII claims that Defendants violated § 1981 by creating a hostile work environment based on her race and color. Section 1981 guarantees in relevant

10

part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" A § 1981 claim for employment discrimination does not require state action. *Phillip v. Univ. of Rochester*, 316 F.3d 291, 292 (2d Cir. 2003) ("[W]e hold that plaintiffs may sustain a claim for breach of the equal benefit clause [of § 1981] without making a traditional state action showing.").

To survive a motion to dismiss, the complaint must allege a deprivation of civil rights that occurred due to racial discrimination. *See, e.g.*, *Guardians Ass'n of New York City Police Dep't., Inc. v. Civil Serv. Comm'n of City of New York*, 633 F.2d 232 (2d Cir. 1980), *aff'd*, 463 U.S. 582 (1983); *Powell v. Jarvis*, 460 F.2d 551 (2d Cir. 1972). This Court must apply the legal standard under Title VII to § 1981 discrimination and hostile work environment claims. *See Choudhury v. Polytechnic Inst. of New York*, 735 F.2d 38, 44 (2d Cir. 1984) ( "same elements constitute a claim for employment discrimination under § 1981 as under Title VII"). However, unlike a Title VII claim, a § 1981 claim may be brought against individual defendants. "In order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action[.]" *Patterson v. County of Oneida,* 375 F.3d 206, 229 (2d Cir. 2004) (internal quotation and citation omitted).

As explained above, Liburd has pled sufficient facts for her race- and color-based Title VII claims against the Hospital to survive the motion to dismiss. Therefore, the § 1981 claims in Counts VI and VII of the Complaint should not be dismissed as to the Hospital. The issue remains whether Liburd has pled facts sufficient to state a claim of racially motivated behavior by Esteves or Evdokas that was linked to her termination. Because nearly all of Liburd's allegations concern Esteves, Liburd's § 1981 claim survives as against him.

Liburd alleges fewer facts concerning Evdokas. The Complaint asserts that Evdokas was silent on various occasions when Esteves harassed Liburd, that he heard Esteves refer to Liburd as a "black ass," that he conspired with Esteves to strip her of key executive responsibilities and to eliminate certain of her programs, that he denied her request for a transfer, that he gave her an unrealistic time frame in which to close inactive case files and that he followed her around the office, demanding an accounting of her allegedly unauthorized phone calls. While these allegations may suggest harassment, no allegation suggests a race-based motivation. Therefore, Liburd's § 1981 claim against Evdokas is dismissed.

## III. CONCLUSION

For the reasons stated, Defendants' motion is GRANTED as to Counts II, IV, and V, which are DISMISSED in their entirety. Liburd's causes of action against the individual Defendants, Esteves and Evdokas, in Counts I and III, and against Defendant Evdokas in Counts VI and VII, are also DISMISSED. Defendants' motion to dismiss Counts I and III is DENIED with respect to Defendant Hospital, and Defendants' motion to dismiss Counts VI and VII is DENIED with respect to the Hospital and the individual Defendant, Esteves (but the claims in Counts VI and VII are dismissed with respect to the individual Defendant, Evdokas, as explained above). Therefore, the claims that survive the motion to dismiss are as follows: (1) Liburd's Title VII claim of race and color discrimination against the Hospital in Count I, (2) Liburd's hostile work environment claim based on race and color discrimination against the Hospital in Count III, and (3) Liburd's § 1981 claims based on race and color discrimination against the Hospital and Defendant Esteves in Counts VI and VII.

The Clerk of the Court is instructed to close this motion.

**IT IS SO ORDERED.**
New York, New York
August , 2008

_____
U.S.D.J.